

FILED

2019 AUG -8 P 1:10

U.S. DISTRICT COURT
NEW HAVEN, CT.

| Subject Matter Jurisdiction Requirements |
| :---: |
| Ripeness |
| Abstention and Adequate State Grounds |
| Mootness |
| Political Questions |
| Standing |

**Federal Court System**

- Article III, Section 1 provides that the "judicial power of the United States shall be vested in one Supreme Court and in such inferior Courts as the Congress may from time to time ordain and establish
- Article III, Section 2 limits the jurisdiction of the federal courts to
  - Cases, in law and equity, arising under the U.S. Constitution, federal laws, and treaties
  - Cases affecting ambassadors, public ministers, and consuls;
  - Cases of admiralty and maritime jurisdiction
  - Controversies to which the United State shall be a party
  - Controversies between two or more states
  - Cases between a state and citizens of another state and
  - Cases between citizens of different states (diversity cases).
- The 11ᵗʰ amendment recognizes the states and their government immunity. It applies not only to diversity suits but to federal question cases as well
- The concept of government immunity or sovereign immunity means that the government may not be sued without its consent
- Subdivision of a state do not have immunity from suit under the 11ᵗʰ amendment
- Exceptions to the 11ᵗʰ amendment include suits against state officials for abusing their power in enforcing an unconstitutional state law; federal suits brought by one state against another state, or suits brought by the federal government against a state; and mist suits for injunctions
- A state may consent to suit in federal court if it clearly waives its 11ᵗʰ amendment immunity and does so expressly and unequivocally (or by voluntarily invoking a federal court's jurisdiction)
- Congress may abrogate a state's immunity where the act asserts that it is abrogating the state's immunity and Congress enacts the act under a grant of power that may abrogate the state's immunity.

**Limitations on Federal Jurisdiction**

- Article III, Section limits the jurisdiction of federal courts to cases and controversies
- A case or controversy is a real and substantive dispute that touches the legal relations of parties having adverse interests and that can be resolved by a judicial decree of a conclusive character.
- Federal courts will not give advisory opinions (some State courts do not adhere to this rule)
- The prohibition against advisory opinions does not preclude federal courts from granting declaratory judgments
- A declaratory judgment is a decision in which the court is requested to determine the legality of proposed conduct without awarding damages or injunctive relief.

**Mootness**

1

- If a controversy or matter has already been resolved, the case will be dismissed as moot. An actual case or controversy must exist at all states of the litigation
- The case will not be dismissed a smoot if the injury is capable of repetition yet evades review meaning that it is practically impossible to adjudicate the issue before the plaintiff claims become moot

**Ripeness**

- Ripeness bars consideration of claims before they have fully developed. Generally, a court may not review or grant a declaratory judgment of a state law before it is enforced or when there is no real threat the statute will ever been enforced.

**Abstention**

- Federal courts may abstain or refuse to hear a case when there are undecided issues of state law presented. The abstention doctrine permits the state court to resolve issues of state law, thereby making a decision of the constitutional issue unnecessary
- Federal courts may also abstain if the meaning of a state law or regulation is unclear. In this situation, the state court might interpret the statute so as to avoid the constitutional issue
- Where state criminal proceedings are pending, the federal court will abstain in a suit seeking an injunction against state prosecution, absent a showing of bad faith harassment on the part of state prosecutors. This principle has been extended to cases where state civil proceedings have commenced and where civil contempt hearings have begun.

**Standing**

- Article III requires a person litigating a federal question to show injury in fact, causation; and redressability
- An injury in fact is a direct and person injury, actual or imminent, caused by the action that she is challenging. Where the plaintiff has not suffered any personal injury or harm, she does not have standing
- As a general rule, federal taxpayers do not have standing to challenge allegedly unconstitutional federal expenditures.
- A litigant can assert standing from an injury to a third party not be fore the court when she herself has suffered an injury, a special relationship exists between the claimant and third party because of the connection between the interests of the claimant and the constitutional rights of the third party, and the third party is unable or finds it difficult to bring the suit on her own behalf.
- An association has standing to assert the claims of its members, even if that association has not suffered any injury itself if the members would otherwise have standing to sue in their own right; the interest asserted is germane to the association's purpose; and neither the claim asserted nor the relief requested would require participation by the individual members in the lawsuit.

**Political Questions**

- Federal courts cannot hear cases involving political questions. Political questions are matters assigned to another branch by the constitution or, that are incapable of a judicial answer.
- The following factors are used to determine whether a political question exists: whether there is a textually demonstrable constitutional commitment of the issue to a coordinate political department; a lack of judicially discoverable and manageable standards for resolving the dispute; the impossibility of deciding without an initial policy determination of a kind clearly for non-

judicial discretion; the impossibility of a court's undertaking independent resolution without expressing lack of respect due coordinate branches of government; an unusual need for unquestioning adherence to a political decision already made; and the potential for embarrassment from multifarious pronouncements by various departments on one question.

**Supreme Court Jurisdiction**

- Under Article III, Section 2, the Supreme Court has jurisdiction "in all cases affecting ambassadors, other public ministers and consuls and those in which a state shall be a party." Congress may neither enlarge nor restrict the Supreme Court's original jurisdiction.
- Article III, Section 2 provides further that "in all other cases before mentioned, the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations as the Congress shall make."
- Under federal law, there are two methods for invoking Supreme Court appellate jurisdiction: by appeal (where jurisdiction is mandatory); and by writ of certiorari (discretionary review where four or more Justices vote to hear the case).
- Grounds for certiorari include: the case involves a conflict between different federal courts of appeal; the case involves a conflict between two State courts of last resort; the case involves a conflict between the highest state court and a federal courts of appeal; and the case is from a state court or U.S. court of appeal and involves important, yet unresolved, issues.

**AISG**

- Although a state court decision may involve a federal question, if the state court judgment can be supported on an adequate and independent state ground, the Supreme Court will not take jurisdiction.

**Congressional Power**

- The enabling clauses of the 13th, 14th, and 15th Amendments grant Congress the power to enforce those provisions by "appropriate legislation."
- Congress can regulate the channels of interstate commerce, instrumentalities of interstate commerce, and activities that substantially affect interstate commerce
- The 10th amendment prevents Congress from interfering with a state's lawmaking process. Congress also may not commandeer the legislative processes of the several states by directly compelling them to enact or enforce a federal regulatory program
- Congress has the power to law and collect taxes, duties, imposes, and excises to pay the debts and provide for the common defense and general welfare
- A congressional act purporting to be a 'tax' should be upheld as a valid exercise of the taxing power provided that it raises revenue or was intended to raise revenue
- As a general rule, the modern trend is to uphold any tax as valid if it is, in fact, a revenue raising measure
- The Supreme Court has construed the General Welfare Clause as a limitation on Congress' taxing and spending powers and not as an independent source of congressional power. In other words, Congress' power to tax and spend must be exercised for the general welfare of the United States
- By exercising its spending power, Congress can require states to comply with specified conditions in order to qualify for federal funds
- Congress can condition State receipt of federal funds if the spending serves the general welfare; the conditions is unambiguous; the condition relates to the federal program; the state is not

3

required to undertake unconstitutional action; and the amount in question is not so great as to be considered coercive to the state's acceptance

- Congress may declare war; raise and support armies; provide and maintain a navy; and organize arm, discipline, and call forth a militia
- Congress also has the power to establish military courts and tribunals. Since military courts are not Article III courts, the accused in court-martial proceedings is not entitled to the same procedural safeguards present in Article III courts. Rather, the accused is safeguarded by the UCMJ
- Although Congress does not have any express constitutional power to investigate, the Necessary and Proper Clause permits Congress to conduct investigations incident to its legislative power
- Congress' investigative power is broad, and it may extend to any matter within a legitimate legislative sphere
- Although the Constitution does not expressly give Congress the power of eminent domain, the power to take property is implied in aid of the other powers granted to the federal government subject to the limits imposed by the Fifth Amendment
- Congress has the power to establish uniform laws on the subject of bankruptcies throughout the United States
- The speech and debate clause protects lawmakers and their aids against criminal or civil proceedings for legislative acts
- Members of Congress, however, can be liable based on defamation for issuing press releases or newsletters that injure an individual's reputation
- The Speech and Debate Clause insulates members of Congress for acts that occur in the regular course of the legislative process but does not bar prosecution for taking a bribe to influence legislation
- To validly enforce the 14th and 15th amendment, Congress must show that state governments have engaged in widespread violations of the amendment; and the legislative remedy is congruent with and proportional to the violations

## Executive Power

- Article II's vesting clause confers broad authority in the President to execute the laws of the United States
- Article II gives the president the power "with the advice and consent of the Senate" to nominate and appoint all "ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States, whose appointments are not herein otherwise provided for."
- The president has the exclusive power to nominate high level officials such as cabinet members, ambassadors, and heads of agencies. The Senate, however, has the power to confirm to reject the president's nominees for such high level appointments
- Congress can delegate the appointment of inferior officers to the president; an Article II court; or heads of departments
- Although the U.S. constitution is silent with respect to the removal power, it is generally agreed that the president may remove any executive appointee without cause
- However, the president must have cause to remove executive officers having fixed terms and officers performing judicial or quasi-judicial functions
- The president may grant reprieves and pardons for offenses against the United States except in cases of impeachment

4

- The president has an absolute privilege to refuse to disclose information relating to military, diplomatic, or sensitive national security secrets
- Other confidential communications between the president and her or his advisors are presumptively privileged. The presumption is overcome when confidential communications are subpoenaed as evidence in a criminal trial.
- The President has the power to make treaties with foreign nations by and with the advice and consent of the senate. Treaties require the consent of two-thirds of the Senate before they can be enacted
- A treaty is self-executing when it takes effect without the necessity of any further action by Congress beyond consent or ratification
- A treaty is not self-executing when it requires Congress (or state legislatures) to pass legislation to implement its provisions – i.e. requiring a change in either federal or state law which would enable fulfillment of treaty obligations
- In accordance with the Supremacy Clause, treaties once implemented either automatically or after congressional action, are the supreme law of the land; and the Judges of every State shall be bound by anything thereby.
- Treaties take precedence over any conflicting state law regardless of whether a treaty precedes or follows the enactment of the state law. However, when a treaty and federal statute conflict on the issue in question, time determines the controlling authority – the last in time will prevail

**Executive Agreements**

- The president has the power to enter into executive agreements and compacts with foreign nations. These agreements are valid and prevail over inconsistent state law
- Executive agreements need not be ratified by Congress and do not prevail over federal statutes

**Appropriations Power**

- Where Congress by legislative act explicitly directs the president to spend appropriated money, the president has no power to impound the authorized funds

**Nature and Scope of Federal And State Powers**

- The 10th Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."
- While each state has a general police power, there is no federal police power. The federal government must legislate through one of its enumerated powers, whereas the state may regulate any health, safety, welfare, moral, or aesthetic interest through their respective police powers
- The U.S. Constitution limits the state's police powers by reserving certain enumerated powers exclusively for the federal government; restricting both the federal and state governments from acting in violation of U.S. Constitutional provisions; and providing under the Supremacy Clause that if Congress enacts legislation with the intention of preempting state law, the congressional regulation will control.

**Intergovernmental Immunities**

- The federal government and its agencies are immune from suit by private individuals except where they allow themselves to be sued (e.g. the Federal Tort Claims Act)

- The federal government and its agencies are immune from state taxation and state regulation. States may nevertheless collect a non-discriminatory tax on persons who deal or contract with the federal government
- As a general rule, the Supremacy Clause implicitly prevents the states from regulating the activities of agents or instrumentalities of the federal government if the regulation will interfere with the government's ability to carry out its federal functions
- Congress has the power to dispose of and make all needful regulations respecting the territory and other property belonging to the United States. Thus, federal lands are subject to the authority of the federal government except to the extent that Congress has ceded jurisdiction to the State
- The federal government or one of its agencies or instrumentalities may sue a state without its consent. Here, the Supreme Court has original, but not exclusive, jurisdiction
- A state may be sued by a sister state without its consent. Here, the Supreme Court has original and exclusive jurisdiction
- As a general rule the 11th amendment prohibits citizens of one state from suing another state in federal court. This rule has been extended to prohibit suits by a citizen of a state against her or his own state. However, a state may be sued if it consents to the suit and a state officer may be sued for injunctive relief on the theory that her or his allegedly unlawful conduct was beyond the scope of her or his authority
- A state now enjoys immunity from federal taxation if the tax is applied to either unique state activities or essential government functions
- Where a state engages in a proprietary business – one similar in nature to a business operated by a private individual – the state may be taxed to the same extent as the private citizen

**Authority Reserved for the States**

- The Constitution specifically prohibits any state from making treaties with other nations; coining money; passing a bill of attainder; enacting an ex post facto law; impairing contractual obligations; laying any duty on imposts and exports, except where necessary for executing its inspection laws; engaging in war; or maintaining a peacetime army

**The Dormant Commerce Clause**

- If a state law discriminates on its face between in-state and out-of-state economic actors, the state must show that the regulation serves a compelling state interest; and the regulation is narrowly tailored to serve that interest
- If a state simply places an incidental burden on interstate commerce, the court will apply a balancing test and the law will be upheld unless the burden imposed on interstate commerce clearly outweighs local benefits
- Congress can, however, affirmatively authorize states to legislate in areas that would violate the dormant commerce clause and when states act as market participants, they may discriminate between in state and out of state businesses

**Reserved State Power in Taxation**

- As a general rule, state taxation of interstate commerce is permissible as long as the tax does not discriminate against or unduly burden interstate commerce

**State Action Versus Private Action**

6

- In order to show a constitutional violation either by the state or federal governments, the plaintiff must first show that there is government action. Constitutional rights, with two exceptions, can be violated only government actors, not by private actors. This is the state action requirement.
- The 14th and 15th amendments, therefore, prohibit government conduct, and not private conduct which infringes on protected individual rights
- There are two tested exceptions to the state action rule. First under the public function theory, where a private entity is carrying on activities traditionally and exclusively performed by the government, it may be subject to constitutional proscriptions. Second, under the significant state involvement, endorsement, or encouragement theory, where the government and private entity are so closely related that the action by the private party fairly can be treated as action by the government, constitutional proscriptions may apply.
- The 13th amendment has been interpreted to permit Congress to pass legislation prohibiting badges and incidents of involuntary servitude. The amendment is not limited by a state action requirement. The phrase involuntary servitude can mean compelled work, the threat of force, or the threat of legal coercion. The draft does not violate the 13th amendment.

**National Power to Override State Authority**

- Where Congress does not intend to occupy a field completely, and state laws are not otherwise preempted, the states may enact similar legislation
- In some instances, greater state protection is also permitted. Thus, where Congress has legislated to establish minimum standards, the states are free to enact more stringent standards than those mandated by federal law

**Incorporation of the Bill of Rights**

- Under the doctrine of selective incorporation, the free speech, free press, assembly and petition, free exercise, establishment, search and seizure, cruel and unusual punishment, excessive fines, confrontation, speedy and public trial, right to counsel, criminal jury trial guarantee, right to bear arms, double jeopardy, self-incrimination, and takings clause apply to the several states.
- The 14th amendment's equal protection and due process clauses protect the rights of persons not merely citizens
- While a corporation is considered a person for the purposes of due process and equal protection, corporations are not entitled to a privilege against self-incrimination
- Both the 5th and 14th amendments protect against deprivations of life, liberty, and property without due process of law. Where there is a deprivation of one's life, liberty, or property interests, the individual is entitled to fundamentally fair procedural safeguards
- As with any other constitutional right, procedural due process is not required where there is no state action
- To determine what procedural safeguards are necessary, one should look to the private interests that will be affected by state action; the risk of an erroneous deprivation of this interest through the procedures used, and the probable value of additional and substitute procedures; and the government's interest in streamlined procedures, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.
- Substantive due process challenges to economic regulations are subject to rational basis scrutiny, with the challenger having the burden of proving that a regulation lacks a rational connection to a legitimate government interest

- Strict scrutiny applies to laws burden the exercise of fundamental rights such as the right to vote; the right to travel; the right to privacy; certain First Amendment rights; and other rights referred to as fundamental rights
- The privileges and immunities of the 14th amendment has frequently been a wrong answer on the MBE. This is so because almost all privileges and immunities are protected by the commerce clause, the due process clause, he equal protection clause, or Article IV's privileges and immunities clause.
- In Griswold, the Supreme Court invalidated a state law prohibiting the use of contraceptive devices, this recognizing a right of marital privacy. The Supreme Court later expanded this right to protect the right of single persons and minors to access certain contraceptives. However, in Hobby Lobby, the Court found that corporations could not be required to pay for contraceptive coverage for their female workers if they could assert a valid Free Exercise claim
- Parents have a right under the 14th amendment's due process clause to privately educate their children outside the public school system
- The right to possess obscene material in the privacy of one's home is protected. However, the government can severely restrict the sale, purchase, receipt, transport, and distribution of obscene material in stores and through mail. States can also criminalize the private possession of child pornography.
- There is no right to assisted suicide under the 14th amendment's due process clause
- Both the 14th amendment's due process and equal protection clauses protect he fundamental right to marry. These provisions prohibit interracial and same sex marriage bans, inter alia.
- The fundamental right of U.S. citizens over age 18 to vote extends to all federal, state, and local elections, as well as to primaries.
- Most government regulations of candidate ballot access, however, based on age, bona fide residency, or filing fee payments are only subject to rational basis scrutiny
- So far as congressional districts are concerned, the one person one vote rule controls. Here, whenever the government attempts to establish a new congressional apportionment or redistricting scheme, fairly exact mathematical equality between districts is required so as to not dilute the fundamental right to vote.

**Takings Clause**

- The 5th Amendment's just compensation clause has been incorporated against the states
- Property can be taken through direct government appropriation; a regulatory taking; temporary restrictions; or conditional permits
- Any permanent physical invasion, no matter how minor, will constitute a taking. A land use regulation is a taking if it denies an owner all reasonable, economically beneficial use of her or his land
- Cities have the power to take private property and transfer it to a private developer because of the public benefits of the proposed development

**EPC**

- The 5th Amendment's due process clause includes an equal protection component
- For facially neutral laws, discriminatory intent and effect must be shown to trigger heightened scrutiny
- Strict scrutiny applies to classifications based on legal alienage, national origin, and race

8

- For redistricting challenges, when it can be shown that race was the predominant factor in defining the borders of election districts (rather than continuity, compactness, or community interest), the plan will be subject to strict scrutiny
- While statutes that discriminate against undocumented persons are subject to rational basis review, undocumented children have a right to free public elementary and secondary school education
- Classifications based on gender or legitimacy are subject to intermediate scrutiny
- A school district may not assign individual students to schools based on race in order to achieve 'voluntary integration' or 'racial balancing' when school segregation is cased by social factors and is not directly traceable to past or present government action
- Educational institutions considering affirmative action measures based on race must ensure that the program is narrowly tailored to achieve its goals. The institution that adopts such a program must also show that available, workable, non-racial alternatives do not suffice
- To date, diversity is the only interest that is currently accepted as compelling in the affirmative action context
- Age and wealth are not suspect classifications

**Privileges and Immunities**

- While the Privileges and Immunities Clause has limited application, the Clause does protect the right to travel from state to state; to petition Congress for redress of grievances; to vote for national offices; to enter public lands; to be protected while in the custody of U.S. Marshalls; and to assembly peacefully
- Corporations and undocumented persons are not protected under the Fourteenth Amendment's Privileges and Immunities Clause or the analogous provision under Article IV.
- Article IV's Privileges and Immunities Clause prohibits states from discriminating against citizens who are non-residents with respect to certain rights and activities
- The following have been held to be invalid forms of nonresident discrimination:
  - a state statute requiring a non-resident commercial fisherman to pay a $2,500 license fee to fish offshore, while a resident fisherman paid only a $25 license fee;
  - a commuter tax applied to non-residents who entered New Hampshire to work, while New Hampshire residents were exempt from the tax and a
  - a state law requiring employers to give hiring preferences to state residents
- Non-resident discrimination is more likely to be upheld if its purpose is preservation of natural, state owned resources.

**Contract Clause**

- The Contract Clause states that "No State shall…pass any…Law impairing the Obligation of Contracts
- The Contract Clause applies only to State legislation not to State court decisions. The Clause also does not apply to the federal government
- A private contract can be modified by the legislature under its police power when it is necessary to serve an important and legitimate public interest and the regulation is a reasonable and narrowly tailored means of promoting that interest

**Ex Post Facto Laws**

- Article 1, §§ 9 and 10 prohibit the federal and state governments respectively from passing retroactive criminal laws
- In general a statute retroactively alters the criminal law if it: makes criminal an act that was not a crime when committed; prescribes a greater punishment for a crime after its commission; decreases the amount of evidence required for conviction after the fact; or extends the statute of limitations for a crime as to which the previously applicable statute of limitations has already passed

**Bills of Attainder**

- Article I §§ 9 and 10 prohibit both the federal and state governments respectively from passing bills of attainder – a legislative act that inflicts punishment without a judicial trial on named individuals or an easily ascertainable group for past conduct.

**The First Amendment**

- Lemon Test: the statute must have a secular purpose; the principal or primary effect or purpose must neither advance nor inhibit religion; and the statute must not foster an excessive government entanglement with religion
- Anti-evolution laws prohibiting the teaching of Darwinian principles in public schools are unconstitutional
- Sunday closing laws have been upheld as consistent with the Establishment Clause as have sectarian prayers opening government meetings
- An individual's religious beliefs are absolutely protected. The government may not punish an individual by denying benefits or imposing burdens based on religious belief
- Public employment may not be conditioned on taking an oath based on a religious belief
- Where an individual's conduct is motivated by her or his religious beliefs, the state may regulate or prohibit the activity if the regulation is neutral in respect to religion and is of general applicability
- If either the state or federal governments purposely interfere with particular conduct because it is dictated by religious beliefs, strict scrutiny applies
- Under the Free Speech Clause, if the government engages in content or viewpoint based discrimination, strict scrutiny applies
- A law which regulates conduct but creates an incidental burden on speech is allowable if the regulation furthers an important or substantial government interest that is unrelated to the suppression of free expression; and the incidental restriction on speech is no greater than is essential to the furtherance of that interest.
- The government can engage in content based discrimination when it is the speaker
- A government program that provides aid on general terms does not violate the Establishment Clause merely because religious institutions receive aid from the program – ergo property tax exemptions that incidentally benefit religious institutions do not violate the Establishment Clause while a government program that provides a sales tax exemption for religious magazines and books alone does
- A regulation that relates to unprotected speech is permissible. Unprotect speech includes speech that advocates violence or unlawful action, fighting words, obscene speech, and defamatory speech
- Obscene materials disputing children is unprotected speech and may be regulated even without satisfying the Miller test because of the State's compelling interest in proteting minor children

10

- For speech to be considered obscene it must pass the Miller test: (1) the average person, applying contemporary community standards, would find that the work; (2) taken as a whole, appeals to the prurient interest; the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (3) the work taken as a whole lacks serious literary, artistic, political, or scientific value
- Constitutional restrictions apply to defamatory speech where the plaintiff is either a public official or public figure, or where the defamatory statement involves a matter of public concern
- When the plaintiff is a private person and the subject of the statement is a matter of public concern, the plaintiff need not prove actual malice, but most prove negligence about the truth or the falsity of the statement
- When the plaintiff is a public official or public figure, the plaintiff must prove the state law requirements of defamation plus actual malice defined as knowledge of the falsity or reckless disregard of the truth or falsity of the statement
- Commercial speech is protected by the 1st Amendment if it is not false or deceptive and does not relate to unlawful activity.
- If commercial speech satisfies these requirements, government regulation of the speech must satisfy the following three part test: it must serve a substantial government interest; it must directly advance the substantial government interest; and it must not be more extensive than necessary to serve that interest
- In 1st amendment public employee speech cases, first, the court will determine whether the employee spoke as a citizen on a matter of public concern. If not, the employee has no cause of action under the amendment based on the government employer's reaction to the speech. If the employee did speak on a matter of public concern, the question then becomes whether the government employer has an adequate justification for treating the employee differently from any other member of the general public
- In weighing the public employee's 1st amendment rights against the public employer's interest in promoting public efficiency, the court will balance the following factors: whether the speech impairs discipline by superiors; impairs harmony among co-workers; has a determinant impact on close working relationships; impedes the performance of the public employee's duties; interferes with the operation of the agency; undermines the agency mission' is communicated to the public or co-workers in private; conflicts with the responsibilities of other employees within the agency; and makes use of the authority and public accountability which the employee's role entails
- A three-part test is used to determine the constitutionality of time, place, or manner regulations of speech and assembly in public places. The regulation must be content neutral as to both subject matter and viewpoint; narrowly tailored to serve a significant (important) government interest; and leave alternative channels of communication open
- In general, an individual cannot be denied public employment based on membership in a political organization unless the position is a high level policy-making position
- An individual may be denied public employment for political association if she is an active member of a subversive organization; she knows of the illegal aims of the organization; and she has a specific intent to further those illegal ends
- As a general rule, the government suppress or restrain speech in advance of its publication or utterance
- There is a strong presumption against the constitutional validity of any system of prior restraint of expression

11

- There are, however, some exceptional cases where prior restraints are allowed. Thus, a government agency can require pre-publication review of writings related to employment of past or present employees where such a review is necessary to protect national security or classified military information.
- Speech regulations cannot be overbroad and chill speech or void for vagueness. For it is generally more difficult to demonstrate overbreadth in a facial challenge rather than in an as applied one
- The following statutes have been held to be void for vagueness under the 14th Amendment's Due Process Clause
  o A statute making it a crime to publicly mutilate, trample upon, deface or treat contemptuously the flag of the United States
  o A municipal vagrancy ordinance defining vagrants to include rouges and vagabonds…,lewd, wanton, and lascivious persons…[and] persons wandering or straying around from place to place without any lawful purpose or objective; and
  o A city ordinance that defining loitering as to remain in any one place with no apparent purpose and that gave police officers absolute discretion to issue dispersal orders to groups of two or more persons seen loitering in a public place if the officer reasonably believed that one of them was a criminal street gang member
- Press outlets have no special right to access government information
- Under the Due Process Clauses both the State and federal governments are permitted to inquire into the qualifications and fitness of candidates for the bar

**Federal Subject Matter Jurisdiction**

- Federal courts have limited subject matter jurisdiction
- By statute, Congress has granted federal district courts federal question jurisdiction
- A case arises under federal law if the federal question appears on a fair reading of a well plead complaint
- A violation of a federal statute does not create a federal cause of action unless the statute also provides a remedy for the violation
- A state question that involves a question of federal law may be sufficient to create federal question jurisdiction provided that the federal law's impact on the state question is substantial
- Federal court have original jurisdiction over admiralty or maritime cases
- Federal court have subject matter jurisdiction to review the state court conviction of a prisoner through a writ of habeas corpus challenging the confinement of the prisoner on federal c constitutional grounds
- Federal district courts have original jurisdiction over matters involving diverse litigants where the amount in controversy exceeds $75,000
- A suit in which the amount in controversy is exactly $75,000 does not meet the diversity jurisdiction requirement
- An action based on diversity will be dismissed if it appears to a legal certainty that the plaintiff's claim does not exceed $75,000. The burden falls on the defendant to prove the amount in controversy is not more than $75,000
- Diversity jurisdiction requires complete diversity meaning a dispute that involves citizens of different states. There will be no diversity jurisdiction if any plaintiff and any defendant share citizenship of the same state
- Diversity must be met only at the time the suit is filed

- A federal court possess diversity jurisdiction over actions between citizens of different states in the U.S.; U.S. citizens and citizens of a foreign country; or a foreign state as a plaintiff and a U.S. citizen
- A party is considered to be a citizen of her or his state of domicile. Domicile requires both physical presence in the state and the intent to remain in that state indefinitely
- Supplemental jurisdiction allows a federal district court to hear claims over which the court would not ordinarily have jurisdiction if those claims arise out of the same transaction or occurrence as a claim over which the court does have subject-matter jurisdiction
- Supplemental jurisdiction exists only where the federal district court already possess subject matter jurisdiction over the original claim based on either federal question or diversity jurisdiction.
- A federal court has concurrent jurisdiction over a particular case if the case could also have been brought in state court
- A defendant has the right to remove a case from state court to federal court if the plaintiff could have originally brought the case in federal court
- F removal is based on diversity, all of the defendants must be diverse from the plaintiff. Removal on the basis of diversity will not be granted if any of the defendants is a citizen of the forum state
- If a plaintiff's suit is based on federal law, the defendant may have the case removed without a showing of diversity
- To remove a case, a defendant must file notice in the federal district court in the district in which the action is currently pending: notice must be filed within 30 days of service of the initial pleading; if a case is not removable when the initial pleading is filed and the complaint is amended in a away that now makes the case removable, notice must be filed within 30 days of service of the amended pleading; a case removable on the basis of diversity jurisdiction may not be removed more than one year after the commencement of the action
- In a case involving multiple defendants, all defendants who have been properly joined and served in the case must consent to or join in removal
- In a case involving multiple defendants as long as the last served defendant files a timely notice of removal and the earlier served defendants join in or consent to that removal, the entire case will be deemed to have been removed on time
- The venue of a removed case is the district court where the state is located
- If a plaintiff believes that a case was improperly removed to federal court, she or he may bring a motion to remand the case to state court. The defendant has the burden of showing that the removal was proper. Here, a remand motion must be filed within 30 days of the date that the removal notice is filed
- Motions to remand based on a lack of subject matter jurisdiction, however, ae not subject to any time limits
- A federal court must dismiss an action if it determines that it does not have subject matter jurisdiction over the case. Lack of subject matter jurisdiction may not be waived by the parties

**Personal Jurisdiction**

- Personal jurisdiction must be established separately for each defendant
- For a federal court to exercise personal jurisdiction over a particular party, the personal jurisdiction law of the state in which the federal court sits must be satisfied and the exercise of personal jurisdiction must comport with the Due Process Clause

- A state court may exercise personal jurisdiction over an out of state defendant if authorized by the state's long arm statute
- Long arm statutes place limitations on the state's ability to establish personal jurisdiction by setting out types of contacts that will support jurisdiction. Typically, these factors focus on whether the defendant conducts business within the state, contracts to supply goods and services anywhere in the state, or owns, uses, or possess any real property in the state
- The mere fact that state law permits personal jurisdiction over a party does not mean that a federal court may automatically assert it because the Court must also determine whether the law complies with the 14th Amendment's Due Process Clause
- Many states authorize personal jurisdiction to the full extent that is permissible under the 14th Amendment. If a state does that, just analyze the law to determine whether it is constitutional or not.
- A state law will be constitutional if it authorizes personal jurisdiction over a litigant based on residency in the state; consent to jurisdiction; service; minimum contacts; or the fact that the litigant conducts substantial business within the state. Thus, if the defendant is domiciled in the forum state, personal jurisdiction over her or him is constitutional. If the defendant consents to the federal court's personal jurisdiction over her or him, personal jurisdiction is constitutional. If the defendant is physically present in the jurisdiction, and is served with process while present, the court's exercise of personal jurisdiction over the defendant is constitutional. The defendant's presence must be voluntary, the plaintiff cannot have coaxed the defendant into the state under false pretenses. Moreover, personal jurisdiction would not be constitutional if the defendant is in the forum state to participate in a legal proceeding.
- For jurisdiction to be constitutional under a minimum contacts analysis, the defendant must have established a minimum contact with the forum state, the claim against the defendant must be related to that contact, and the exercise of jurisdiction must not offend traditional notions of fair play and substantial justice.
- For a plaintiff to establish a minimum contact, the defendant must purposefully avail itself to the privilege of conducting activities within the forum state. A defendant who purposefully involves herself or himself in transactions within the state receives the benefits and privileges of the state's laws, so it is fair that she or he be exposed to the jurisdiction of that forum state as well
- If a defendant has minimum contacts with the forum state, she or he bears the burden of proving that ti would be fundamentally unfair for her or him to litigate in that state to avoid the court's personal jurisdiction
- A federal court can constitutionally assert personal jurisdiction over a defendant if it is doing substantial business in a particular state. SCOTUS has made clear that "substantial business" is a very high bar to clear. The business must be so significant that the company, though not incorporated or headquartered in the state, is essentially at home there
- For a court to exercise specific jurisdiction over a claim, there must be a connection between the forum and the underlying controversy -- in essence an activity or an occurrence that takes place in the forum state. When there is o such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the forum state. Even regularly occurring sales of a product in a state do not justify the exercise of jurisdiction over a claim unrelated to these sales.
- In rem jurisdiction is based on the interests of a particular piece of property or thing located within the forum state

14

- In order for in rem jurisdiction to exist: there must be real or personal property of value; the property must be located within the state where the federal district is located; the court must seize the item and the owner of the property must have received proper notice
- In cases where the defendant is no longer domiciled in the forum state she or he is subject to in rem jurisdiction if the cause of action is of a domestic nature and the forum state was either the place of matrimonial domicile, the defendant abandoned the plaintiff in the forum state, or an agreement or settlement for support was entered into in the forum state
- A federal court has quasi in rem jurisdiction in actions in which the attachment of real or personal property is part of the relief requested. The federal court located in the state in which that property is situated has quasi in rem jurisdiction over the property being attached
- The court may not exercise quasi in rem jurisdiction unless there are minimum contacts with the forum state or territory
- If the dispute concerns the parties' rights in the property itself, the presence of the property in the state will provide sufficient minimum contacts

**Service of Process and Notice**

- A civil action in federal court is commenced by filing the complaint with the court
- After the complaint is filed, the plaintiff presents a summons to the clerk for signature and seal
- Service must occur within 90 days of the filing of the complaint
- A summons must be served with a copy of the complaint
- Service may be affected by any person who is over 18 years of age and not a party to the suit
- A defendant may waive service of process, upon request of the plaintiff. A waiver allows the plaintiff to save the costs of service
- If a plaintiff fails to effect service according to the rules, the case will be dismissed for insufficiency of service of process
- A court will dismiss an action for insufficient service of process even if the defendant received actual notice of the action by some means other service of process
- Process can be served on the defendant (whether a natural person or corporation, partnership, or association) by following the manner prescribed by the state court in the state where the federal suit has been filed or the state court in the state where the defendant will be served.
- If the defendant is a natural person, process can be served by: personally delivering the process to the defendant herself or himself wherever they may be; leaving process at the defendant's usual place of abode with a person of suitable age and discretion who resides there; or serving the defendant's registered agent
- If the defendant is a corporation, partnership, or association, process can also be served by delivering a copy of the summons and the complaint to an officer; a managing agent or general agent; or any other agent authorized by appointment or by law to receive service of process
- Venue dictates the judicial district where a suit can occur
- The venue of an action is the federal court in which the action is filed
- Venue is considered proper where a party either consents to the venue, consents to personal jurisdiction in the venue, or waives her or his objection by failing to raise it
- If an action was brought in a proper venue, a federal court may still transfer the action to any other district in which it might have been brought "for the convenience of the parties and witnesses, in the interest of justice." In such a case, the court does not dismiss the action so that the plaintiff may refile, but instead transfers the action to the more appropriate judicial district

- If a case is brought in an improper venue, a federal court must dismiss the matter or transfer it to a judicial district where venue is proper. Transfers due to improper venue are appropriate only if the action could originally have been brought in the transferee court.
- The doctrine of forum non conveniens allows a court to decline to exercise its jurisdiction and dismiss an action if the court where the action was brought would be a seriously inconvenient forum and an adequate alternative forum exists
- Forum non conveniens only applies in federal court where the alternative forum is a court in another country
- A federal curt with diversity or supplemental jurisdiction that is presiding over a state law claim must apply the substantive law of the state in which the court sits
- The Erie doctrine applies only where the court has diversity or supplemental jurisdiction over a case; and the state law that would apply conflicts with the federal rule, statute, doctrine, or procedure at issue
- A pleading that states a claim for relief must contain a short and plain statement of the grounds upon which the court's jurisdiction rests, and a statement of a claim, which, if true, would entitle the claimant to relief; and a demand for relief
- A responding party must admit or deny the allegations made against it by an opposing party. The party must admit those allegations, or parts of the allegations, that are true, and deny the others
- An answer must be filed within 21 days of service of the complaint
- The 21 day period does not include the date of service, but does include weekends and holidays; if the 21st day is on a weekend or a holiday, the answer must be filed on the next business day
- A party must plead certain affirmative defenses in its answer or reply to a counterclaim (see Table below)
- Failure to raise an objection in an  answer or pre-answer motion to dismiss constitutes a waiver of these defenses with the exception of objections to subject-matter jurisdiction, failure to state a claim on which relief can be granted, and failure to join a party
- A party may amend a pleading once as a matter of course if the amendment is filed: within 21 days of service of the original pleading; or if the pleading requires a response, within 21 days after service of a responsive pleading or 21 days after service of a motion to dismiss, a motion for a more definite statement, or a motion to strike, whichever is earlier
- In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court must freely give leave when justice requires. The court will consider: the length and reason for the delay; and prejudice to the opposing party as a result of the delay
- Under the doctrine of relation back, the court will treat an amendment to a pleading as through it had been filed with the original pleading
- An amendment to a pleading relates back to the date of the original pleading when the law that provides the applicable statute of limitations allows relation back; the amendment asserts a claim or defense that arose out of the same conduct, transaction, occurrence as the original claim; or the amendment changes the party or the naming of the party against whom a claim is asserted if the amendment asserts a claim or defense that arose out of the same conduct, transaction, or occurrence as the original claim; the party to be added by the amendment received notice of the filing of the original claim within 90 days of service of the original complaint; and the party to be added knew that, but for a mistake, the original claim would have been asserted against her or him.

**Rule 11**

16

- Every pleading, written motion, and other paper filed with the court must be signed by at least one attorney of record in the lawyer's name or by a party personally, if the party is not represented by an attorney. The attorney or unrepresented party who presents to the court a pleading, written motion, or other document certifies that to the best of her or his knowledge, information, and belief, formed under inquiry reasonable under the circumstances that:
    - The document is not being presented for any improper purpose
    - The claims, defenses, and other legal contentions are warranted by existing law or a non-frivolous argument for extending, modifying, or reversing existing law
    - The factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
    - The denials of factual contentions are either warranted on the evidence or a re reasonably based on belief or a lack of information
- If the court finds that any of the above representations are untrue, it has discretion to impose sanctions on the party or the party's attorney. Sanctions are ordered after notice to the offending party and an opportunity to be heard

**Provisional Relief**

- Provisional relief is available to maintain the status quo and prevent irreparable damage or wasting of assets during litigation or pending arbitration
- Provisional relief consists of two remedies: TROS and preliminary injunctions
- Both are extraordinary remedies as they are issued prior to a decision on the merits and provide immediate or quick but short-term injunctive relief
- The temporary restraining order is used in an emergency situation when the injunction must issue before any hearing and lasts only a few days generally long enough for the parties to seek a preliminary injunction
- The preliminary injunction if granted, will last until a decision on the merits
- A party seeking either a temporary restraining order or a preliminary injunction must first establish: a substantial likelihood of success on the merits; irreparable harm will be suffered unless the remedy sought is issued; the harm to the plaintiff if the temporary restraining order or preliminary injunction is denied is greater than the harm to the defendant if the remedy is granted; and the provisional remedy, if granted, will not be adverse to the public interest
- A court may issue a temporary restraining order without written or oral notice to the adverse party while a preliminary injunction may only be issued by a court on notice to the adverse party

**Joinder of Parties and Third Party Practice**

- A party may join as many claims in a single action as the party has against an opposing party
- Counterclaims can be compulsory or permissive. A compulsory counter claim is one that arises out of the same transaction or occurrence as the original claim in the lawsuit. A failure to raise a compulsory counterclaim waives the right to assert the claim in the original action, or in any other action. A permissive counter claim is any claim that a party has against an opposing party that does not arise out of the transaction or occurrence that is the subject matter of the opposing party's claim
- A cross claim is a claim against a party who is not an opposing party. Cross claims may be brought by any party against any co-party, when the claim arises out of the same transaction or occurrence as the original claim or a counter claim

17

- A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if in that party's absence, the court cannot grant complete relief among existing parties; or the party claims an interest relating to the subject matter of the action, and an adjudication without the party may, as a practical matter, impair or impede that party's ability to protect her or his interests, or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations
- If a person who is required to be joined cannot be joined for jurisdictional reasons, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or be dismissed
- Permissive joinder is used by plaintiffs who want to join together as multiple plaintiffs or want to join multiple defendants
- Interpleader is only appropriate where multiple claims demand the same thing or obligation – usually a piece of property, prize, or most commonly, the proceeds of an insurance policy
- After a defendant to an action has served her or his answer, that defendant may proceed against a non-party who may be liable for all or part of the plaintiff's claim against the defendant. The defendant becomes the third-party plaintiff
- Intervention allows a non-party to assert a right or interest in an ongoing action. If the non-party can meet the test for intervention as a matter of right, then the court must allow the party to intervene. A non-party may also be allowed to intervene by permission of the court.
- Once a court concludes that an intervention application was filed on time, the non-party must be permitted to intervene if a federal statute confers an intervention right or a non-party is asserting a protectable interest relating to the property or traction at issue and the non-party is so situated that disposing of the action as a practical matter may impair or impede the party's ability to protect its interest and the non-party's interests are not adequately represented by the existing parties
- If a non-party may not intervene in an action as a matter of right, the court may permit intervention if a federal statute allows a conditional right to intervention or the non-party has a claim or defense that shares a common question of law or fact

**Pretrial Conferences and Orders**

- The parties are required to meet and have a discovery planning conference as soon as practical, but at least 21 days before a scheduling order is issued
- In the discovery conference the parties must discuss the nature and basis of their claims and defenses and the possibility of settling or resolving the case; make or arrange for the mandatory disclosures required by Rule 26(a)(1); discuss any issues about preserving discoverable information; and develop a proposed discovery plan
- A written report outlining the proposed discovery plan must then be submitted to the court within 14 days after the discovery conference
- After a discovery planning conference has been held, the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences for the purposes of expediting disposition of the action; establishing early and continuing control so that the case will not be protracted because of lack of management; discourage wasteful pretrial activities; improve the trial's quality through more thorough preparation; and facilitate settlement
- The district judge must also issue a scheduling order that limits the time to join other parties, amend the pleadings, complete discovery, and file motions. A schedule may be modified only for good cause and with the judge's consent

18

- The scheduling order must be issued within the earlier of 90 days after any defendant has been served with the complaint or 60 days after any defendant has appeared

**Discovery**

- A party is entitled to demand the discovery of any matter that is relevant to the claim or defense of any party; not unreasonably cumulative or burdensome; and not privileged
- There are mandatory disclosure obligations as well as specific discovery devices that are designed to elicit information within the permissible scope of discovery
- With limited exceptions, parties are required to disclose some information as a matter of course upon the commencement of the litigation without waiting for a discovery request.
- The initial mandatory disclosures must be made within 14 days after the Rule 26 discovery conference. A party must make these disclosures based on the information then reasonably available
- Mandatory disclosures include information about individuals likely to have discoverable information and a copy or description of all documents that the disclosing party may use to support it claims or defenses; the total damages claimed by the disclosing party with supporting materials; insurance agreements; and the identity of any witness that may testify at trial
- A party must supplement a discovery response with any information that would have been subject to the mandatory disclosure requirement. Failure to comply may lead to the exclusion of that evidence at trial
- Privileged matter is not discoverable
- Many states recognize attorney client, priest-penitent, doctor-patient, spousal, and psychotherapist-patient privileges
- On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery
- If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court
- Most cases do not result in a full trial. Possible methods of resolving disputes without a trial include: default judgments; settlement; pretrial motions; voluntary dismissals; and involuntary dismissals
- Pleadings must contain a short and plain statement of the claim showing that the pleader is entitled to relief. If this requirement is not met, the party against whom the claim is alleged may move to dismiss for failure to state a claim for which relief can be granted
- When an action is dismissed based on failure to state a claim, the dismissal is with prejudice unless the court states otherwise in its order
- An entry of default must be entered on behalf of a party against whom a judgment for affirmative relief is sought when the party has failed to plead or otherwise defend the claim and that failure is shown by affidavit or otherwise
- A default judgment can be entered by a court clerk if the plaintiff's claim is for a fixed amount upon the plaintiff's request and with an affidavit showing the amount due, the clerk must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing
- In all other cases, the party must apply to the court for a default judgment to be entered

**Jury Trials**

- Equitable actions are not triable by a jury as a matter of right. In determining whether a right to a jury trial exists, the court will consider whether the claim more closely resembles actions in law or in equity and whether the remedy sought is legal or equitable in nature
- A jury trial demand must be made within 14 days after the service of the last pleading directed to the triable issue
- The right to a jury trial may be lose by failing to make a timely jury demand
- Lawyers may ask the court to excuse any juror for cause during voir dire. There are three categories of challenges for cause: general disqualification (a person may lose the right to st on any jury because of a felony conviction or some other inherent disqualification), implied bias (potential jurors may be removed if the lawyer believes a bias may exist), and actual bias (a willingness to use predetermined beliefs or principles to decide the case instead of deciding the case based on facts).
- In federal court, each party may exercise three peremptory challenges to excuse jurors without having to provide the court with a reason
- Peremptory challenges may not be used to exclude jurors on the basis of race or gender
- A jury must begin with at least six but no more than 12 members, and each juror must participate in the verdict unless excused.
- With limited exceptions interlocutory orders – which are not final adjudications on the merits may not be reviewed before final judgment
- Under the collateral order doctrine, appellate review s authorized for an interlocutory order rendered by a trial judge that conclusively determines the disputed question; resolves an important issue completely separate from the merits of the action; and is effectively unreviewable on appeal from a final judgment
- Congress has given the federal court subject matter jurisdiction over appeals from an interlocutory order of the trial court that grants, denies, continues, modifies, or dissolves an injunction as well as appeals from all final decisions of the federal district courts
- Claim preclusion prevents reiitigation of a claim between the same parties and those who are in privity with them; claims arising out of the same transaction or occurrence; and claims that were determined on the merits by a court with proper subject matter and personal jurisdiction
- Claim preclusion operates as an affirmative defense that is waived if it is not properly asserted. It can also be asserted as the basis for a summary judgment motion
- Issue preclusion prevents relitigation of issues that were fully and fairly litigated and were necessarily decided in a proceeding that reached a final judgment on the merits. Issue preclusion may not be used against someone who was not a party to the previous action and may be used offensively by one who was not a party to the first action against one who was a party in the earlier suit
- A final judgment is one that disposes of all issues as to all of the parties
- Interlocutory orders for injunctive relief are not appealable if a similar suit is pending in state court.
- Legal conclusions will typically be reviewed de novo while factual findings will be disturbed only if they are clearly erroneous
- With few exceptions, appellate courts will not review errors that are not on the record of the trial court proceeding and that do not affect the parties' substantial rights

**Sources of Contract Law**

- There are two primary sources of contract law: Article 2 of the UCC and state law

- In deciding which source of contract law applies, look to the subject matter covered by the UCC. If the UCC does not apply, the common law will
- The UCC governs the sale of goods. If the UCC applies to a contract, it preempts any contrary common law rule
- Sales are any transaction in which the seller transfers title of goods to the buyer
- Goods are broadly defined under the UCC as any movable item
- A contract for sale of goods may be made in any manner sufficient to show agreement including conduct by both parties which recognizes the existence of a contract
- In hybrid cases, which involve both the sale of goods and a services contract, the question arises as to which source of contract law should apply
- The majority rule is that the appropriate source is determined by the predominate purpose of the transaction. To determine a contract's predominate purposes, look to the contract's language, the nature of the supplier's business, and the relative value of the good versus the service
- **Services Contract with Incidental Goods**: A rendition of services with goods incidentally involved, such as a contract with an artist to paint a portrait, would be governed by the common law
- **Sale of Goods with Incidental Services**: A sale of goods with services being incidentally involved, such as the sale and installation of a water heater, would be governed by the UCC
- The UCC governs the sale of all goods, not just the sale of goods priced at $500 or more or where the transaction involves merchants
- Contracts that do not involve the sale of goods are covered by the common law of contracts
- Express contractual obligations are found where the parties make oral or written "expressions" of their commitments
- **Implied-in-fact contractual obligations** are consensual agreements that fail to express the agreement of the parties in its entirety
- An **implied in law contractual obligation** arises where there is an equitable imposition of a would-be contract. It is an equitable remedy available to prevent unjust enrichment, and arises n situations where one party bestows a benefit on the other
- An implied in law obligation is also commonly referred to as a quasi-contractual obligation or a restitutionary obligation
- Quantum meruit is a means of enforcing both implied in fact and implied in law contractual obligations

## Formation

- To constitute an offer, a party's communication must be an outward manifestation and permit acceptance to conclude the deal
- The manifestation can be oral, written, or made via conduct. Inward thoughts or subjective intentions are irrelevant unless they are reasonably apparent to the other party
- An offer must signal to the would-be offeree that the latter's agreement will conclude the deal. The key inquiry is whether the party making the communication expressed a willingness to commit without further assent
- When a question involves a party's communication proposing a deal to two or more persons at the same time, a multiple offeree issue arises
- Advertisements addressed to multiple recipients are generally treated as invitations for offers rather than offers

21

- Language in the advertisement such as first come, first served or first 10 customers only identifying the means by which the goods or services will be allocated in the event of an excess of demand, eliminate the need for further assent from the advertiser and constitute an offer
- An offer creates the power of acceptance in an eligible offeree. This gives the offeree the power to create a contract simply by accepting the offer. When an eligible offeree exercises the power of acceptance before that power is terminated, a legally binding contract is formed between the parties
- **Lapse of Time**: An offeree's power of acceptance terminates at the time stated in the offer. If the offer does not specify the time of termination, the power of acceptance terminates after a reasonable time.
- **Face to Face Conversation Rule**: An offer made by one person to another in a face to face conversation is ordinarily deemed to remain open only until the close of the conversation
- **Death or Incapacity of Either Party**: The supervening death or incapacity of either the offeror or offeree will terminate the power of acceptance with respect to the offer
- **Revocation by Offeror**: Under the rule of free revocability, the offeror is free to revoke an outstanding offer, terminating the offeror's power of acceptance, at any time and for any reason so long as the revocation: occurs before acceptance and is effectively communicated There are two methods of communicating a revocation. Direct revocation occurs where the offeror communicates the revocation directly with the offeree. On the other hand, indirect revocation occurs where the offeree learns of the offeror's intention to abandon the deal from a third-party source. This terminates the offeree's power of acceptance where two conditions are met. First, the offeror has taken definite action inconsistent with the intention to enter the proposed contract. And second, the offeree acquires reliable information of the offeror's inconsistent action
- Under the Second Restatement, where an offer is made by advertisement in a newspaper or other general notification to the public or some segment thereof, the power of acceptance is terminated when the notice of revocation is communicated by advertisement or other general notification equivalent to that used for the offer and no better means of notification is reasonably available
- **Rejection by the Offeree**: The power of acceptance can also be terminated if the offeree refuses to accept the offer. There are three ways that rejection can be effected: outright rejection; rejection via a counteroffer; and rejection via non-conforming acceptance
- Not all statements or questions about an offer are considered counteroffers. An offeree may test the waters by making a mere inquiry about the offeror's willingness to negotiate without creating a counteroffer and terminating the power of acceptance
- Under the common law mirror image rule, acceptance must mirror the terms of the offer with the result that any variation is a treated as a counteroffer and rejection of the initial offer. The UCC, however, rejects the mirror image rule and recognizes a binding contract despite the presence of a nonconforming acceptance in two sets of circumstances: the shipment of nonconforming goods and the battle of forms.
- **Revival of the Offer**: the maker is the master of the offer. Therefore, an offeror has the power to revive an offer that the offeree has rejected, and with it the offeree's power of acceptance, and she or he can also revive an offer that has lapsed by communicating this to the offeree
- **An offeror is free to revive an offer any time before acceptance**. The offeror can revoke even if she or he has expressly promised the offeree that she or he would hold the offer open
- Offer revocation can be prevented either though the suggestion of a firm offer under the UCC or a common law option contract

- The most common way to secure enforcement of the subsidiary promise to keep the offer open is by giving consideration in return
- Under promissory estoppel, courts will sometimes enforce a subsidiary promise to keep an offer open where the offeree has foreseeably and reasonably relied on the option and injustice can only be avoided by enforcing the promise. Here, there is a special rule for construction contracts. Thus, where a general contractor uses a particular subcontractor's bd to formulate her own, an implied option contract is created via promissory estoppel. This prevents the subcontractor from revoking the bid despite the fact that the subcontractor hasn't promised to keep the bid and the general contractor hasn't provided any consideration to keep the bid open
- The UCC defines a merchant in terms of her or his special knowledge or skill with respect to the practices or goods involved in a transaction. A person may be considered a merchant even if she or he only has knowledge of the goods or the practices
- An irrevocable offer under the UCC lasts for the time stated in the offer or a reasonable time if no time is specified
- Under the UCC, the shelf life of a firm offer can be no more than three months. Any firm offers that state a time longer than three months will only be irrevocable for the first three months. The offer would then become revocable but still enforceable
- A merchant selling or buying goods can establish an irrevocable offer for longer than the three month period set out in the UCC by creating a valid common law option contract

**Offer and Acceptance Under Unilateral Contracts**

- An offer can require acceptance by either a promise or performance
- An offer seeking a promissory acceptance is an offer to enter into a bilateral contract. Here, a promise is being exchanged for a promise
- Under a bilateral contract, the offeree can accept the offer by making the requested promise
- An offer seeking performance in return is an offer to enter into a unilateral contract. Under a unilateral contract, the offeror is bound only when the offeree completes performance in accordance with the terms of the offer; and the offeree is never bound to perform because she or he has never promised to perform
- Where an offer does not specify whether it must be accepted by a promise or performance, the offeree is free to choose the means of acceptance

**Revocation of the Offer in a Unilateral Contract**

- Under the common law, the offeror was free to revoke a unilateral offer up until the moment that the offeree actually completed performance
- The rule from the Secodn Restatement is that once the offeree begins performance, an option contract is created and the offeror may not revoke. An offeror may revoke under the modern rule where the offeree is engaged in mere preparations to perform rather than the beginning of performance itself
- The offeree of a unilateral contract is free to abandon the performance at any time and even to not undertake performance at all
- If an offer to enter a unilateral contract was mailed to the offeree, then the offeror may revoke the offer even if the offeree has placed the acceptance in the mail. The mailbox rule applies only to bilateral contracts

**Communicating Acceptance Under The Common Law**

23

- There are two general requirements to constitute effective acceptance: under the mirror image rule, the acceptance must mirror the terms of the offer; and the acceptance must be communicated to the offeror
- If the offer stipulates a particular means of communicating acceptance, the offeree must utilize those means in order to make an effective acceptance
- If the offer is silent as to the means of communication, the offeree is free to use any reasonable means of transmission
- Unless the circumstances indicate otherwise, a means of transmission is reasonable if it is the means used by the offeror; the means customarily used in similar transactions; or a means of communication that is equivalent in expeditiousness and reliability to the means used by the offeror
- There are three instances where the requirement that acceptance be communicated to the offeror may not apply: acceptance by silence; acceptance by performance; and acceptance by mail or other correspondence
- Generally, an offeree's silence in response to an offer cannot constitute acceptance except in the following three circumstances: where the offeree takes the benefit of the offeror's services with a reasonable opportunity to reject them and with reason to know the offeror's intention; where the offeror has given the offeree reason to understand that acceptance may be communicated by silence, in which case the offeree's silence will operate as acceptance if she or he intends as such; and where, because of previous dealings or other circumstances, it is reasonable that the offeree should notify the offeror is she or he does not intend to accept, in which case her or his silence will operate as acceptance

**Acceptance by Performance**

- The maker of an offer to enter a unilateral contract is free to make communication of acceptance a part of the required performance.
- If she or he fails to do so, acceptance is effective upon the offeree's completion of the requested performance whether or not the offeree notifies the offeror

**Acceptance By Mail**

- Under the mailbox rule, acceptance by mail is effective upon dispatch so long as the acceptance is properly posted, with the correct address and postage amount
- The mailbox rules applies only to acceptances and not to any other communication between contracting parties. Thus, offers, revocations, rejections, and counteroffers are all effective only upon receipt by the other party
- Once the offeree dispatches her or his acceptance, she or he creates a binding contract
- The parties are bound even if the acceptance is lost in transmission and the offeror has no knowledge of that acceptance
- Because the mailbox rule is a default rule, the offeror is free to establish her or his own rules for effective acceptance
- In a situation where the parties simultaneously dispatch identical offers, the offers are not effective until received, and the only effect an offer has once it is received is to create the power of acceptance in the offeree. Accordingly, unless and until one of the parties receives and accepts one of the offers passing in the night, there is no contract
- If the offeree sends both an acceptance and a rejection to an offer via mail, the parties' obligations turn on which letter reaches the offeror first. If the acceptance reaches first, it is effective upon

receipt and a binding contract is created. If the rejection reaches first, the offeree's power of acceptance is terminated and the subsequently arriving acceptance becomes a counteroffer, which the original offeror is free to accept or reject

**Acceptance and the UCC**

- Unless the contract language or circumstances unambiguously indicate otherwise, acceptance may be made in any manner and by any medium reasonable under the circumstances
- The UCC rejects the common law mirror image rule and recognizes a binding contract despite the presence of non-conforming acceptance in two situations: the shipment of nonconforming goods and he so-called battle of the forms

**Seller's Shipment of Conforming and Nonconforming Goods**

- Under the UCC, a seller can accept a buyer's offer to purchase goods for prompt or current shipment in one of three ways: a promise to ship goods in conformity with the terms of the offer; a prompt or current shipment of the goods in conformity with the terms of the offer; or the seller can also accept the buyer's offer by shipping non-conforming goods
- In contrast to the common law approach, under which the non-conforming shipment would have constituted a counteroffer that the buyer would have been free to accept or reject, the UCC specifies that the shipment constitutes a valid acceptance and creates a binding contract between the parties
- Under the UCC, however, the shipment of nonconforming goods will not constitute acceptance if the seller notifies the buyer that the shipment is offered only as an accommodation to the buyer. Here, the shipment is a counteroffer that the buyer can accept or reject
- Absent accommodation, the seller's shipment of nonconforming goods constitutes acceptance of the buyer's offer under the UCC. See perfect tender rule.

**The Battle of the Forms**

- A battle of the forms occurs when a buyer places an order and the seller's acceptance form contains terms which differ from the buyer's order or are not addressed in the order at all
- Because the seller's acceptance contains terms that vary from the buyer's offer, the seller's response constitutes a non-conforming acceptance
- Unless acceptance is expressly made conditional on the assent to the additional or different terms, the non-conforming acceptance will operate as an effective acceptance of the offer forming a valid and enforceable contract
- Typically the forms will be in agreement as terms that are specific to the transaction but will vary with regard to boilerplate or standard terms

**Nonconforming Acceptance or Confirmation**

- **Transaction Involving A Consumer**: When at least one party to the transaction is not a merchant, the additional or different terms are construed as proposals for addition to the contract. Thus, they are not part of the contract unless the offeror expressly agrees to the additional terms
- **Transactions Where Both Parties Are Merchants**: In transactions between merchants, there is a distinction between additional terms and different terms
- A nonconforming acceptance contains additional terms when its provisions address an issue or topic not addressed in the original offer. A nonconforming acceptance contains different terms

25

when the offer says one thing about a particular issue and the would be acceptance says something else

- Additional terms become part of the contract unless: the offer expressly limits acceptance to the terms of the offer; the offeror objects to the additional terms within a reasonable time after receiving notice of them; or the additional terms would materially later the contract
- Under Section 2-207 terms that materially alter the contract are those that would result in surprise or hardship if incorporated without the express awareness of the other party
- **Different Terms**: With respect to different terms, most courts adhere to the knock rule: which omits the offeror's original provision and the offeree's differing provision from the resulting contract

**Written Confirmations**

- A battle of forms also occurs where two or more parties agree to a contract face-to-face or via telephone and one party then follows up with an agreement that contains terms different to the terms contained in the original deal. Here, if at least one of the parties is a consumer, any additional or different terms are mere proposals for addition to the contract that the receiving party can accept or reject
- If the transaction is between merchants: any additional terms are automatically part of the contract unless they would materially alter the contract or the receiving party objects to them within a reasonable time; any terms in the follow up that differ from the terms of the prior agreement are proposals for inclusion in the contract, which the receiving party is free to accept tr reject; and if both merchants send written confirmations and those confirmations contain conflicting terms, the knockout rule applies

**Conditional Acceptance**

- If the acceptance is made expressly conditional on assent to the additional or different terms, the non-conforming acceptance will not be effective to form a contract
- Under the majority rule, a would be acceptance which tracks the language of the exception as set out in Section 2-207 constitutes a conditional acceptance if the language in question is clear and conspicuous

**Other Situations Governed by the Battle of the Forms Rules**

- **Contracts Formed by Conduct**: The UCC also provides that the parties' conduct in recognizing the existence of a contract is enough to establish a contract, even though their writings do not otherwise establish a contract

**Consideration and Promissory Estoppel**

- The doctrine of promissory estoppel allows for the enforcement of certain promises even where there is no consideration in return. Here the claimant needs: a promise; foreseeable reliance; actual reliance; and injustice with enforcement
- Actual reliance must be induced by the promise.

**Consideration and Bargain**

- Generally, a promise is unenforceable unless it is supported by consideration
- The exchange of a promise for consideration is called a bargain or bargained for exchange

26

- For the purposes of the consideration doctrine, a bargain merely indicates an exchange, which could be beneficial or detrimental
- The majority of jurisdictions evaluate consideration based on the bargained for exchange theory
- Gratuitous promises – situations where the promise has neither promised nor given anything in return to the promisor – are generally unenforceable

**Insufficient Consideration Versus Failure of Consideration**

- A promisor defending against an attempt to enforce a gratuitous promise can state her or his defense in several ways: the promise is not support by consideration; there is a lack of consideration; or there is legally insufficient consideration
- By way of contrast, a failure of consideration is a claim that the party has not performed in accordance with her or his promise
- A promisor cannot provide consideration where that consideration is a duty the promisor is already obligated to perform. Moreover, a promise given in exchange for something already given or already performed will not satisfy the bargain requirement unless the contract is a written promise to pay a debt barred by the statute of limitations or the contract is a written promise to pay all or part of an indebtedness that has been discharged in bankruptcy. This is known as the pre-existing duty rule.

**Inadequacy of Consideration**

- The modern rule is that courts will not police the equivalence of bargained for exchanges via the consideration doctrine. Thus, the supposed inadequacy of consideration is not defense to a breach of contract claim
- Insufficient consideration is a quaint way of saying that there was no consideration for a particular promise
- By way of contrast, the term inadequate consideration assumes that there was consideration but that the consideration was not sufficient in comparison with the value of the promise or performance for which it was exchanged
- A promise to perform that leaves performance to the discretion of the promising party is an illusory promise that will not constitute consideration

**Gratuitous Promises**

- Although gratuitous promises are unenforceable under the consideration doctrine, gratuitous transfers are legally binding upon satisfaction of the requirements of a gift
- In most states, the delivery of a would be gift combined with a present intention to bestow the gift constitutes a legally binding gratuitous transfer
- One can distinguish consideration from a condition on a gratuitous promise by looking to the language of the parties; the commercial, charitable, or familial context of the transaction; and the benefit to the promisor

**Forbearance of a Claim or Defense**

- Valid consideration exists when a party agrees to forbear a claim or defense in exchange for a promise or performance by the other party. This is so even if the claim or defense proves to be invalid

27

- Forbearance to assert or surrender a claim or defense which proves to be invalid is not consideration unless the claim or defense is in fact doubtful because of uncertainty as to the facts or the law; or the forbearing party believes that the claim or defense may fairly be determined to be valid

**Statutes of Frauds**

- The general rule in contract law is that a contract need not be in writing and that oral and written agreements are equally enforceable. The Statutes of Frauds, however, provides an important exception to that rule and makes some classes of contracts unenforceable unless reflected in a signed writing.
- For contracts where the Statute of Frauds applies, the contract must be evidenced by a writing signed by the party against whom enforceable is sought and the other requirements of the Statute of Frauds must be satisfied. Both of these requirements are necessary conditions for enforcement. The Statute of Frauds, in a litigation context, is a defense that can be raised against a breach of contract claimant. If the Statute of Frauds is not satisfied, the party seeking to enforce the contract will have to use another theory such as promissory estoppel or quasi-contract
- A contract within the Statute of Frauds is not enforceable absent a writing signed by a writing by the party against whom the enforcement is sought
- In most states, six categories of agreements are governed by the Statute of Frauds: a contract upon consideration of marriage; a contract that will not be completed within one year of the formation of the contract; a contract for the sale of an interest in land; a contract of an executor or administrator to answer for a duty of the decedent; a contract of guarantee or suretyship; and a contract for the sale of goods at a price of $500 or more
- Some states have added real estate brokerage agreements and non-marital cohabitation agreements to their States of Frauds

**Performance within One Year**

- The year at issue under the one-year provision is measured from the date of the contract's formation rather than the date that performance begins
- However, a contract that contemplates a duration of less than a year may nonetheless fall under the Statute of Frauds if performance is not to be completed until more than one year after the contract's formation
- When a contract does not specify a date by which performance is to be completed, in determining whether the contract is to be performed within one year of its formation, look to whether it is possible to complete the required performance within a year's time.
- A lifetime or permanent contract of employment does not fall under the one year State of Frauds category

**Land-Sale Contracts**

- Contracts for future sale fall under the Statute of Frauds' land sale provision and require a signed writing. If a contract is for a present conveyance of land, it does not fall under the Statutes of Fraud

**Guaranty/Suretyship Agreements**

- The general rule is that a promise to answer for the debt of a 3rd party – a suretyship or guaranty agreement – is subject to the Statute of Frauds with two exceptions. Under the main purpose

28

exception, if the main purpose of the guarantor's promise is to protect or promote her or his own economic interests rather than the debtor's interest, the agreement is not within the Statute of Frauds and no signed writing is required, Under the other exception, if a creditor discharges the original debtor from her or his obligation on the faith of a guarantee by a 3rd party to pay the debt, these agreements are not governed by the Statute of Frauds.

**Satisfaction of the Common Law Statute of Frauds**

- If a contract falls within the Statute of Frauds, the general rule is that the contract is unenforceable unless evidenced by a writing signed by the party against whom enforcement is sought

**The Writing Requirement**

- Under the common law the writing must at least be a memorandum of the agreement that was prepared before, during, or after the formation of the contract. The following memorandum have been held to satisfy the writing requirement: a letter from one of the parties to a third party describing the agreement; the written offer, acceptance of which formed the contract; and a latter from one of the parties to the other party repudiating, and admitting the, the agreement
- The memorandum must contain the identity of the parties to the transaction, the nature and subject matter of the contract; and the essential terms of the unperformed promises in the agreement

**The Signature Requirement**

- The actual signature of the party against whom enforcement is sought is not necessary. Any symbol, including initials, typed, stamped, or pre-printed signatures; or a letterhead, if used with the intention to authenticate the writing, will suffice
- Most states have adopted the Uniform Electronic Transactions Act under which electronic signatures are considered to satisfy any legal writing requirements
- The writing need not be a single document; a party may satisfy the Statute by tacking together several documents which, once combined, satisfy all the necessary requirements for the Statute of frauds. This referred to as tacking together multiple documents.
- If all of the documents are signed by the party against whom the contract is being enforced or if a signed document incorporates unsigned documents by reference, then the signature requirement is satisfied
- If unsigned documents are not incorporated by reference in a signed document tacking together multiple documents to satisfy the Statute of Frauds is permissible if (1) there is at least one signed writing unambiguously establishing a contractual relationship between the parties; (2) the signed and unsigned documents clearly refer to the same subject matter; and (3) there is clear and convincing evidence of acquiescence to the unsigned documents by the party against whom enforcement is sought

**Performance**

- The Statute of Frauds may be satisfied with respect to some of the categories of governed contracts via part performance
- For land contracts, part performance will make an oral contract for the sale of land enforced in two situations: (1) in an action by the buyer against the seller (but not in an action by the seller

29

against the buyer) and (2) in an action for specific performance (but not in an action for money damages)

- For one year contracts, full performance of an oral contract for services by the party performing the services will make the contract enforceable against the paying party. The performing party may be able to recover for the reasonable value of the services actually rendered via quantum meruit

**Enforcement Where the Common Law Statute of Frauds Is Not Satisfied**

**Recovery for Benefits Covered**

- Where one party bestows benefits upon another in connection with an oral contract, even if the contract is barred by the Statute of Frauds, the aggrieved party has the option of filing a cause of action for restitution seeking to recover for the value of the benefits that she or he conferred
- Alternatively, if services are involved, the party may recover on a theory of quantum meruit

**Promissory Estoppel**

- Where a party suffers losses in reliance on an oral contract, but the enforcement of the contract is barred under the Statute of Frauds, the party may be able to recover damages via promissory estoppel. Here, the claimant must prove the definite and substantial character of reliance, and its relationship to the remedy sought; the extent to which the reliance is corroborated by the evidence of the formation and terms of the contract; and the extent to which the formation and terms of the contract are otherwise established by clear and convincing evidence

**Specific Coverage under the UICC Statute of Frauds**

- The UCC Statute of Frauds is Section 2-201, which by its terms governs agreements for the sale of goods for the price of $500 or more
- When an agreement falls within the UCC Statute of Frauds and the Statute is not satisfied, the entire contract is unenforceable
- The UCC Statute of Frauds also applies if a contract as modified falls within the Statute. And, by the same token, if the newly modified contract falls outside the Statute of Frauds, it does not apply

**Satisfaction of the UCC Statute of Frauds**

- The UCC Statute of Frauds is satisfied if the contract is a writing; that is signed by the party against whom enforcement is sought; and which is sufficient to indicate that a contract for sale has been made between the parties. The contract should also indicate the quantity of goods sold in the transaction. If there is no quantity term, the contract is unenforceable unless other language in the contract provides an unambiguous basis for measuring quantity. For output and requirements contracts, the expression 'output', 'requirements,' or their equivalent satisfies the quantity requirement under the UCC.
- The Comment to 2-201 states that "all that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction."
- The UCC broadly defines "signed" as any symbol executed or adopted by a party with a present intention to authenticate a writing

**Merchant's Confirmation**

- The UCC Statute of Frauds may be satisfied when two merchants enter an oral agreement and one of them sends the other a written confirmation of the agreement. In this instance, the Statute is satisfied against the recipient merchant if the latter fails to object to the confirmation in a timely fashion
- A valid merchant's confirmation requires a writing that is sufficient against the sender; is in confirmation of the contract; is sent within a reasonable time of the making of the oral argument; and the contents of which the receiving merchant has reason to know
- A confirmation that never reaches the intended recipient's place of business would not be valid against the intended recipient

**In Court Admission**

- A third means of satisfying the UCC Statute of Frauds occurs when a party against whom enforcement is sought admits in her or his pleading or testimony that a contract for sale was made. This exception applies regardless of whether the admission was voluntary or involuntary.

**Part Performance**

- Despite the absence of a signed writing an otherwise valid contract is enforceable with respect to goods for which payment has been made and accepted or which have been received and accepted
- The part performance exception does not apply unless there are actions by both parties indicating that a contract for sale exists
- If the contract in question involves divisible goods part performance secures enforcement for any quantity that has already been paid for by the buyer or delivered by the seller; the contract is not enforceable beyond that quantity
- If the contract involves an indivisible good, the partial payment secures enforcement of the entire contract

**Substantial Reliance by the Seller of Specialty Manufactured Goods**

- An aggrieved seller can secure enforcement of an oral contract by establishing that: the goods are to be specially manufactured for the buyer; the goods are not suitable for sale to others in the ordinary course of the seller's business; the seller has substantially begun to manufacture, or made commitments to procure, the goods; the actions undertaken to begin to manufacture or procure occurred under circumstances that reasonably indicate that the goods are for the buyer; and the actions undertaken to begin to manufacture or procure occurred before the seller received notice of the buyer's revocation

**Enforcement Where the UCC Statute of Frauds Is not Satisfied**

- If a party as relied on her or his detriment on an oral contract whose enforcement is barred by the UCC Statute of Frauds, the aggrieved party may still be able to secure enforcement via promissory estoppel.

**Effect of Satisfying the Statute of Frauds**

- Satisfying the Statute of Frauds is a necessary but not sufficient condition for securing contract enforcement. The claimant must also establish both a valid contract and demonstrate breach of the compact

**No Mutuality of Obligation Under The Statute of Frauds**

31

- The Statute of Frauds does not require that both parties have signed a writing – only that the party against whom enforcement of the contract is sought has signed
- If the writing evidencing the contract is signed by only one of the parties, the contract will be enforceable against the signing party but not against the non-signing party. An exception to this principle is established by the merchant's confirmation provision of Section 2-201, under which a signed written confirmation sent by one party to the other will defeat a Statute of Frauds claim by the receiving party as well as by the sending party.
- Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description. This language, however, is not necessary to exclude or modify the warranty if: the contract includes an expression that calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; the course of dealing, course of performance, or usage of trade indicate that the warranty is excluded or modified; or the buyer has fully examined the goods before entering into the contract, or has refused to do so, in which case there is no implied warranty as to the defects that should have been apparent from the examination

**Express Warranties under the UCC**

- The UCC also provides that a contract can create express warranties. Express warranties by the seller are created by: any affirmation of fact or promise made by the seller to the buyer that relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods will conform to the affirmation or promise; any description of the goods that is made part of the basis of the bargain creates an express warranty that the goods will conform to the sample or model; and any sample or model that is made part of the basis of the bargain creates an express warranty that the whole of the goods will conform to the sample or model.
- The seller need not use formal words nor must the seller have a specific intention to make a warranty in order to create an express warranty. However, a mere affirmation of the value of the goods or a statement of the seller's opinion does not create a warranty
- Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other.
- Where an express warranty conflicts with a limitation or disclaimer, the express warranty will prevail
- The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted

**Common Law Default Rules for Service and Employment Contracts**

- Missing Price Term: If one party performs services at the request of another but no price is discussed in advance, then the default rule under common law will apply.
- The default rule for a missing price term is the reasonable value of the services rendered. This is typically available based on *quantum meruit*

**The Obligation of Good Faith and Fair Dealing**

- Both the UCC and the Restatement impose an obligation of good faith in the performance and enforcement of contracts

- Good faith is generally defined as honesty in fact in the conduct or transaction concerned and in the case of a merchant, good faith means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade
- The obligation of good faith may only be raised in regards to the performance and enforcement of contracts, but not to negotiations or other pre-contractual conduct.
- The good faith obligation will also operate to ensure good faith where the terms of the contract leave a critical term open to the determination of one party
- **Open Price Term**: If a contract leaves the price to be fixed by one of the parties, then the specified party must fix the price in good faith
- **Satisfaction Term**: A contract may contain a satisfaction clause, or similar term, whereby the determination as to whether a party's performance obligation is complete is left to the discretion of the other party. In those contracts, the good faith obligation operates to require the party making that determination do so in good faith.

**Open Quantity Term: Output and Requirements Contracts**

- An output contract is a contract in which the buyer agrees to purchase all of a seller's output for a particular good
- A requirements contract is a contract in which the seller agrees to supply the buyer with all of the buyer's requirements for a particular good
- Under the UCC, the party entitled to determine the particular quantity of goods to be sold must make that determination in good faith
- In addition to the good faith requirement, the UCC prohibits any unreasonably disproportionate demand or tender, if there was either a stated estimate made between the parties; or in the absence of a stated estimate, any comparable prior outputs or requirements

**Interpreting Ambiguous Language**

**Objective Versus Subjective Meaning**

- The objectively reasonably meaning of a term at the time of contracting would control over a contrary subjective understanding of the term by one of the parties
- This rule is subject to two exceptions: if the other party knows or has reason to know of the first party's subjective understanding, then that subjective interpretation will control; and where the evidence demonstrates that both parties shared the subjective understanding of the term at the time of contracting, the mutual subjective understanding will control.

**Contra Proferentem and the Doctrine of Reasonable Expectations**

- Under the rule of contra proferentem, if an ambiguous term is included in the contract, then it will be interpreted against the party who inserted the term during the negotiations or drafting
- Under the doctrine of reasonable expectations, even unambiguous terms may be interpreted against the drafting party if they conflict with the reasonable expectations of the other party. Under this doctrine, the parties' obligations consist of the terms that are unique to the contract and only those boilerplate terms that would be consistent with the reasonable expectations of the purchaser. Unreasonable boilerplate terms are unenforceable.

**Trade Usage, Course of Dealing, and Course of Performance**

- Evidence of trade usage, course of dealing, or course of performance is admissible under the UCC and is typically available in common law cases as well
- Such evidence may be used to supplement the express terms of a contract or to give meaning to a particular ambiguous term. This evidence, however, is not admissible to contradict the express terms of a contract
- Course of performance evidence may be available to establish the waiver or modification of an express term. In the event of a conflict, course of performance prevails over course of dealing and usage of trade, and course of dealing prevails over usage of trade

**The Parol Evidence**

- The parol evidence rule governs efforts to introduce evidence on the meaning of an agreement from the negotiations of the parties leading up to the execution of the written contract
- The rule governs both oral and documentary evidence of negotiations and communications that took place both before and at the same time with the execution of the written contract

**Integration**

- When a contract is fully integrated, the terms contained in the contract are intended to be the final discussion of the parties as those specific terms. The mere fact that an agreement is fully integrated, however, does not mean that the parties have specifically excluded any provisions not contained within the agreement.
- When a contract is completely integrated, the parties intend the contract to represent a complete and exclusive statement of all the terms. In these contracts, only the terms contained in the written agreement are considered to be part of the contract

**Determining Full Integration**

- In deciding whether a contract is fully integrated, the judge will consider the thoroughness and specificity of the written instrument in connection with the terms at issue. Here, parol evidence and other extrinsic evidence are admissible.
- This determination is made on the basis of all the circumstances

**Determining Complete Integration**

- **Merger Clause**: The most important evidence that the parties intended their written agreement to represent an exhaustive account of their contractual obligations is the presence of a merger clause declaring that the writing contains the complete and entire agreement of the parties
- **Other Evidence**: Additional factors that a court will examine include the detail and length of the contract
- **Parol and Other Extrinsic Evidence Admissible**: Here, parol evidence and other extrinsic evidence are admissible.

**Purpose for Which Evidence Is Introduced**

- The effect of the rule depends on the purpose for which the parol evidence is being introduced: to explain or interpret the terms of the written contract; to supplement the terms of the written contract; or to contradict the terms of the written contract.

**Performance, Modification, and Excuse**

- The seller's obligation is to transfer and deliver the goods. The buyer's obligation is to accept and pay in accordance with the contract

**Seller's Obligations**

- **Non-Carrier Cases**: Non-carrier cases involve a contract in which it appears that the parties do not intend for the goods to be moved by a common carrier. In non-carrier cases, the seller has an obligation to tender delivery
- **Carrier Cases**: Carrier cases involve a contract in which due to express terms or due to the circumstances, it appears that the parties intend for the goods to be moved by common carrier.
- In a **destination contact**, the seller has agreed to tender the goods at a particular destination.
- In contracts that specify that delivery is free on board (F.O.B.), the F.O.B. point is the delivery point. F.O.B. [the location of seller] is a shipment contract. F.O.B. [any other location] is a destination contract
- In contracts that specify that delivery is free alongside, the seller must deliver the goods alongside the vessel or on a dock designated by the buyer and obtain and tender a receipt for the goods
- **Subsequent Agreements**: The parol evidence rule will not apply to subsequent agreements entered into after the execution of the written document
- **Collateral Agreements**: The parol evidence will not affect agreements between the parties that are entirely distinct from the written agreement of the contract at issue
- **Attacks on the Validity of the Written Agreement**: The parol evidence rule will not bar efforts to prove that the written agreement is invalid or unenforceable. The absence of an enforceable agreement may be proved by parol evidence or any other extrinsic evidence
- **Failure of an Oral Condition Precedent to the Agreement**: Evidence that the parties orally agreed to a condition precedent to the contract taking effect, as well as further evidence that the condition failed, would not be barred by the parol evidence rule where both parties' obligations would be discharged by the failure of that condition
- **Reformation**: The parol evidence rule is inapplicable where a party to a written agreement alleges facts entitling her or him to reformation of the agreement. For the plaintiff to obtain reformation, it must be shown: that there was an antecedent valid agreement; which is incorrectly reflected in the writing; and proof of these elements is established by clear and convincing evidence.

**Buyer's Obligations**

- Unless otherwise agreed-upon, the buyer's tender of payment is a condition to the seller's duty to tender and complete delivery.
- **Inspection of the Goods**: Generally, unless the parties agree otherwise, the buyer has a right to inspect goods upon tender or delivery before making payment or acceptance
- Payment before inspection will not constitute an acceptance of the goods or impair the buyer's right to inspect or any of her or his remedies

**Risk of Loss**

- If the seller is required or authorized to ship the goods by carrier, the risk of loss passes to the buyer: when the goods are delivered to the carrier if the contract does not require the seller to deliver the goods at a particular destination or when the goods are tendered at a particular destination by the carrier so that the buyer is able to take delivery if the contract requires the seller to deliver the goods at a particular destination

35

- In any other case: if the seller is a merchant, the risk of loss passes to the buyer when the buyer receives the goods and; if the seller is not a merchant, the risk of loss passes to the buyer upon tender of delivery

**Effect of Breach on Risk of Loss**

- If the seller breaches the contract by making a non-conforming tender or delivery, the risk of loss remains on the seller until cure or acceptance
- If the buyer rightfully revokes acceptance, the buyer may treat the risk of loss as having been on the seller from the beginning.
- If the buyer breaches before the risk of loss passes to the buyer, the seller may treat the risk of loss as resting on the buyer for a commercially reasonable time.

**Modification**

**At Common Law – The Preexisting Duty Rule**

- At common law, a promise to increase compensation under an existing contract is an unenforceable modification to an existing contract because there is no consideration offered for the modification under the preexisting duty rule
- **Mutual Modification**: A promise to increase compensation under an existing contract is enforceable as a mutual modification to the contract if both parties agree to a performance that is different from the one required by the original contract; and the difference in performance is not a mere pretense of a newly formed bargain.
- **Unforeseen Circumstances**: Where a promise of increased compensation is given in exchange for a performance, and that performance is rendered substantially more burdensome than reasonably anticipated by the parties when they entered the contract, then the preexisting duty will not apply.

**Modification and the Sales of Goods under the UCC**

- Under the UCC, the pre-existing duty rule is abolished and an agreement modifying an existing contract for the sale of goods needs no consideration to be binding
- Modifications must meet the UCC's good faith test, and a failure to do so will render them unenforceable
- The good faith test for modifications applies even to modifications that are supported by consideration.
- A bargained for modification is unenforceable under the UCC if the appearance of the mutual bargain is merely a pretext to hide a bad faith change of terms

**Duress and Midterm Modifications**

- A party who agrees to a contractual modification in commercially extortionate circumstances may also be able to raise the defense of duress in both common law and UCC cases

**Effect of No Oral Modification Clauses**

- Unless required by the Statute of Frauds, modifications can generally be oral or written. However, the enforceability of an oral modification to an agreement may depend upon whether the contract contains a "no oral modifications" clause.

36

- There is no specific language required for this type of provision. "No oral modifications," "all modifications must be in writing," or any similar language would suffice
- Common Law Cases: Most courts will refuse to enforce oral modification clauses even where a party has reasonably relied on the oral agreement
- UCC Cases: Under Section 2-209, clauses prohibiting subsequent oral modifications are presumptively valid

**Excusing Performance due to Faulty Assumptions**

**Mistake**

- When a party or parties make a faulty assumption about the present circumstances, and enter a contract on that basis, this is known as a mistake. This doctrine can be invoked ni both common law and UCC cases.
- A mistake regarding the facts that exist at the time of contracting will excuse performance only where the mistaken facts are material to the contract. This requires that the mistaken facts will significantly impact the value of the transaction to one or both parties
- When only one of the parties to a contract is operating under a faulty assumption about material facts as they exist at the time of contracting, the situation is governed by the rules of unilateral mistake. By way of contrast, when both parties labor under a common faulty assumption, the situation is governed by the rules of mutual mistake

**Impossibility**

- Where the faulty assumptions of the parties related to future facts, as opposed to existing facts, these issues are dealt with under the doctrine of impossibility, impracticability, and frustration of purpose
- The doctrine of impossibility excuses both parties from their obligations under a contract if the performance has been rendered impossible by events occurring after the contract was formed.
- Application of the doctrine of impossibility requires: objectively impossible performance; and the occurrence of the contingency must not be known to the parties at the time of contracting. This can occur through a supervening contingency, where the performance was possible at the time of contracting, but afterward a contingency occurs that renders the performance impossible; or it may be an existing contingency whereby a contingency existed at the time of contracting but was unknown to the parties until after the contract was formed.
- **Objective impossibility** occurs when the performance under the contract becomes literally impossible because of circumstances beyond the control of the parties.
- **Subjective impossibility** occurs when the performance under the contract becomes impossible because of some failure or fault on the part of the performing party. Under those circumstances, the performance obligation is not excused and will be considered a breach
- The doctrine of impossibility will not apply where the parties have allocated the risk of the contingency and provided remedial measures in the event of its occurrence or events render performance only temporarily impossible
- There are three main categories of impossibility: destruction of the contract's subject matter; death or incapacity; and illegality
- **Death or Incapacity**: If the existence of a particular person is necessary for the performance of a contract then that person's death or incapacity will trigger the doctrine and the parties' obligations will be dismissed

**Impracticability**

- Under the doctrine of impracticability, a promisor may be excused from performance where un-enforceability difficulties have made performance prohibitively expensive or otherwise extremely burdensome.
- The following elements are required to show that performance under a contract would be impracticable: the impracticability of the performance was caused by some unforeseen contingency; the risk was neither assumed nor allocated by the parties; and the increase in the cost of performance would be far beyond what either party anticipated
- The parties are free to allocate the risk of a contingency or to specify the remedial measure to dictate performance in the event of a contingency
- Where they do so, the performance that would otherwise be excused by impracticability will be governed by their contractual agreement
- If the contingency was foreseeable at the time of the contract and the contract is silent, it may suggest that the absence of a term excusing the performance was an affirmative decision to allocate the risk to the performing party.
- The payment of a super-market premium might also reflect that the parties bargained for the contingency, and that the consideration in exchange for the premium would be the performance of the party in spite of the contingency
- Where evidence of a course of dealing or of trade usage reveals that it is customary for the performing party or others in a similar position to assume the risk of such contingencies hat will help determine whether the risk of the contingency was allocated.

**Frustration of Purpose**

- Where a contingency occurs that dramatically reduces the value of performance to the receiving party, the doctrine of frustration of purpose may be available to excuse the receiving party from its contractual obligations
- Modern Test: The contemporary version of this rule will discharge a party's contractual obligations when the following three conditions are met: the party's principal purpose in entering the contract is frustrated; there is substantial frustration; and non-occurrence of the event precipitating frustration was a basic assumption of the contract
- **Contractual Allocation of the Risk**: where the parties contractually allocate the risk of the non-occurrence of the event, the doctrine of frustration of purpose will not be available
- **Application under Common Law and the UCC**: The frustration of purpose doctrine is followed under common law and available to supplement the UCC in sales of goods contracts

**Excusing Performance by Agreement of the Parties**

**Rescission**

- The parties may also agree to discharge each other's remaining duties of performance under an existing contract that is at least party executory on each side
- The Statute of Frauds will not prevent an oral agreement of rescission that discharges unperformed duties from being enforced unless rescission of a transfer of property is involved.

**Accord and Satisfaction**

38

- The parties may make an accord which is a contract under which the obligee promises to accept substituted performance in satisfaction of the obligor's existing duty. Satisfaction -- performance of the accord -- will discharge the original duty
- Accord alone will not discharge the original duty, but once the accord is made, the original duty will be suspended subject to the terms of the accord until the obigor has the chance to make the substituted performance
- If the obligee breaches the accord, the original duty is not discharged, but the obligor can seek specific performance of the accord
- **Validity of Accord** – Consideration Required: General contract law applies to accords such that consideration is required
- There may be sufficient consideration if the substituted consideration differs significantly from that required by the original duty, or because the original duty was doubtful or the obligor believed it to be doubtful.
- Generally, there may be an accord and satisfaction when a creditor agrees to accept part payment of an unliquidated debt that the debtor tenders in full satisfaction of the debt; however, in order for part payment to constitute sufficient consideration on its own, there must be a bona fide or good faith dispute as to the debt

**Anticipatory Repudiation**

Anticipatory repudiation occurs when before the time that performance is due under the contract, a party announces her or his intention not to perform or are able to communicate that intention to the other party through circumstances in the case

Anticipatory repudiation may be established by a party's definitive statement indicating that she or he will commit a breach or a party's voluntary or affirmative act that renders the party unable to perform

**Adequate Assurance of Performance**

If anticipatory breach cannot be established but there are reasonable grounds for the insecurity, the insecure party may make a demand for adequate assurance of performance

In UCC cases, adequate assurance must be provided in the form of a written demand while the Second Restatement requires either an oral communication or a writing

**Suspension of Performance by the Insecure Party**

Upon making a demand for assurances, a party with reasonable grounds for insecurity may suspend its own contractual performance if the suspension is commercial reasonable and the insecure party has not yet received the agreed upon return for the performance in question

Failure to respond with reasonable assurances constitutes a repudiation of the contract by the non-responding party

**Rights of the Aggrieved Party Upon Repudiation**

If the aggrieved party chooses to treat the anticipatory breach as a breach of contract, she or he may cancel the contract and terminate all rights and obligations under it or bring an action for damages or specific performance

If an aggrieved party chooses to ignore a repudiation, then she or he is prevented from continuing to perform on the contract if performance would increase her or his damages from the contract

39

If the aggrieved party can prove to the court that she was willing, ready, and able to render performance had the anticipatory repudiation not occurred, then the aggrieved party is relieved of performance of contractual obligations and performance of any conditions precedent

**Retraction of Repudiation**

A party who has made an anticipatory repudiation to the other party may retract the repudiation unless and until the other party acts in reliance on the repudiation; positively accepts the repudiation by signifying this to the breaching party; or files a suit for damages or specific performance

**Conditions**

Implied conditions are often referred to as implied in fact, since their existence is determined by the process of contract interpretation rather than the express language of the contract

**Common Law Rules Governing the Order of Performance**

If the contract contains express conditions specifying the order of performance, then those specifications will control the order of performance

If the contract is silent as to the order of performance, where one party's performance requires a period of time to be completed and the other party's performance does not, then the performance over time is treated as an implied condition of the latter; and where the parties can exchange performance more or less simultaneously, then the performances are treated as concurrent conditions of each other.

Under the UCC, the parties are free to specify the order of performance, and where the contract contains those specifications, the performance obligations under that contract will be performed according to the contractual terms

Because sales contracts most commonly involve delivery and payment of goods, performance is treated as concurrent and so each performance is conditioned on the performance of the other

**Common Law Rules Governing the Failure of a Condition**

In common law cases, the rights of the parties in the event of a failed condition depend on whether the condition is express or implied.

**Express Conditions**: Where a party's performance under the contract is subject to an express condition, the failure of that condition will discharge the party's obligation to perform

**Excusing Failed Express Conditions**: Generally, a failure of the occurrence of an express condition will discharge the performance obligation of the party who stood to benefit from the condition

In deciding to excuse a condition to avoid forfeiture, the court will consider whether the party favoring excuse will suffer a loss greatly disproportionate to the actual prejudice to the other party; whether the failure of the condition is due to willfulness or serous neglect; whether the other party played a role in bringing that failure about; whether the condition relates to a minor term in the contract as opposed to a material one; and whether the fulfillment of the condition has not failed completely but has merely been delayed

**Implied Conditions**: When the possibility of breach is not addressed by an express condition, it is still a breach; however, under the law of implied conditions, courts can treat that breach in one of two ways: either as a material breach or as substantial performance

**Material Breach**: If the breach is serious enough, the court will treat the breach in the same way it would treat a breach of an express condition. Here, the aggrieved party is free to walk away from his own obligations and sue the breaching party for damages.

**Substantial Performance**: In certain cases, if the breach is less serious, the court will treat the party's performance as close enough, meaning that the party has rendered substantial performance of the condition. Here, the aggrieved party will not be discharged on her or his performance.

Even where the court finds substantial performance of a condition, the aggrieved party may still sue for damages as a reedy for the breach.

The Second Restatement lists five factors that can distinguish between material breach and substantial performance:  the extent to which the aggrieved party will be deprived of the benefit, which she or he reasonably expected under the terms of the contract; the extent to which the aggrieved party can adequately be compensated via damages for the defective performance; the extent to which the breaching party will suffer forfeiture if a material breach is found; the extent to which the breach was willful or bin bad faith rather than merely negligent or innocent; and the likelihood that the breaching party will cure her or his failure within a reasonable time and in a manner consistent with the reasonable purposes of the contract

**Total Breach versus Partial Breach**: A material breach can be treated as either a partial breach or a total breach. A claim for damages for total breach is one for damages based on all of the injured party's remaining rights to performance. A claim for damages for partial breach is one for damages based on only part of the injured party's remaining rights to performance

**Failed Conditions That Cannot Be Excused**

Where a condition has failed and cannot be excused there are other methods of enforcement available to mitigate the consequences for the breaching party

If a contract requires both parties to render a series of performances over a series of time, the contract may be divisible in the event of a failed condition

The legal test for determining whether a contract is divisible is: can the performance in question be apportioned into corresponding pairs of parties' performance and can each pair be properly regarded as agreed equivalents?

Where a party has failed to fulfill an express condition or is in material breach of the contract she or he may still be able to recover in quantum meruit the value of benefits she or he has conferred to the aggrieved party during performance

**UCC Rules Governing the Failure of a Condition**

Under the perfect tender rule, the terms of a contract for the sale of goods are enforced exactly. Every contract term is thus treated as an express condition and a breach of the performance obligation by the seller will relieve the payment obligation of the buyer. Under this rule, any deviation from the performance specified by the contract, constitutes a breach by the seller

If the seller fails to make perfect tender, the buyer has three courses of action available: She or he may reject the goods; accept the goods; or reject part and accept part of the goods

**Reject the Goods:** For a buyer to reject the goods, the buyer must exercise the right of rejection within a reasonable time after delivery and notify the seller of the rejection within a reasonable period of time

If the buyer rejects the goods, the buyer may bring an action for damages against the seller for imperfect tender and the buyer must use reasonable care with respect to holding the goods for a time sufficient for the seller to remove them

If the seller gives no instructions with a reasonable time after notification of rejection, the buyer may store the goods for the seller's account reship them to the seller or resell them for the seller's account

If a buyer does not effectuate rejection in the manner specified above, then she or he made a failed rejection. A failed rejection will be deemed to be acceptance of the goods by the buyer.

**Accept the Goods**: The buyer may accept the goods despite the improper tender. Acceptance occurs when the buyer has had a reasonable opportunity to inspect the goods and signifies acceptance through stating to the seller that the goods conform to the contract; taking the goods despite their non-conformance; failing to make an effective rejection of the goods; or taking any action that would be inconsistent with the seller's ownership of the goods

If the buyer accepts the goods, she or he has the following rights and duties: she must pay the contract price for the goods; she may seek damages against the seller for the non-conformity if she notified the seller of the non-conformity within a reasonable time after discovering it, the seller is not prejudiced by the lack of notice, or her rights would not be affected; and she may revoke her acceptance if the non-conformity substantially impairs the value of the goods, and she was initially unaware of the non-conformity because of the difficulty of discovery or because her acceptance was predicated on the seller's assurances of conformity or that non-conformity would be cured.

The buyer must revoke her acceptance within a reasonable time after the buyer discovers or should have discovered the grounds for revocation

**Reject Part and Accept Part of the Goods**: A buyer who has received improper tender may accept some of the commercial tender and reject the rest. The buyer will then have the rights and duties of acceptance for the goods she accepted and the rights and duties of rejection for the goods she rejected

**Seller's Ability to Cure**

If a seller makes a non-conforming tender but the time of performance has not yet expired under the contact, then the seller may substitute conforming gods so long as: the seller gives the buyer seasonable notice of her intention to substitute; and the seller makes conforming delivery within the time specified in the contract

If a seller makes a non-conforming delivery and had reasonable grounds to believe that delivery would be acceptable to the buyer, then she may substitute a conforming delivery if the seller gives the buyer reasonable notice of her intention to substitute; and the seller makes conforming delivery within a reasonable time

**Special Rules for Installment Contracts**

Under the UCC, installment contracts are contracts that contemplate the delivery of goods in separate lots to be separately accepted by the buyer

If the non-conforming installment substantially impairs the value of the whole contract, there is a breach of the whole contract

If the non-conforming installment substantially impairs the value of that installment, and the seller cannot cure, the buyer may reject the installment

42

However, if the non-conforming installment does not substantially impair the value of the contract as a whole, and the seller gives adequate assurance that she will cure, the buyer must accept the installment

**Infancy**

Infancy is the time period before a person reaches the age of majority. An infant, commonly referred to as a minor, is any person who is under the age of 18

**Power of Avoidance**: The power of avoidance means that the minor has the option of voiding the contract. However, the contract is not void against the other parties to a contract, and so is enforceable against everyone but the minor

In most states, minors enjoy the power of avoidance even if they are married or emancipated. Avoidance, however, is only a defense that cannot be used to secure restitution of money that has already been paid

**Necessaries:** A minor's contract for necessaries is voidable. However, the other party has the right in quasi-contract to recover for the reasonable value of the goods or services provided. Necessaries are those items considered necessary for survival – food, clothing, medical care, and shelter.

**Ratification**: For most contracts that minors enter into before reaching the age of majority, the minor may ratify that contract upon reaching the age of majority. A minor may ratify most transactions entered into during infancy by making any manifestations to the other party of an intention to be bound by the original contract. The minor's silence regarding the contract after reaching the age of majority

**Mental Incompetence**

At common law, an insane person did not have capacity to enter a contract and any contract she or he made was void. Under modern rules, the question is whether the person was incompetent at the time of contracting. If a party is adjudicated incompetent and a guardian is appointed, then this adjudication will be sufficient to establish mental incompetence for contract cases

Where there is no adjudication of mental incompetence by a court, then a party may still be declared mentally incompetent for the purposes of contract formation if: see Table below

In most jurisdictions, a contract entered into by an incompetent person is voidable. The rules regarding ratification and the power of avoidance of a contract by a mentally incompetent person after the party becomes competent are the same as with infancy. A mentally incompetent will be responsible for damage, wear and tear, or any other depreciation in value of the goods unless the other party takes unfair advantage of the mentally incompetent person and has knowledge of the other person's incompetence

The rules governing the liability of a mentally incompetent party for contract for necessaries are the same as for minors. The mentally incompetent party will be liable to the other party for the reasonable value of those goods and services

**Misrepresentation**

Misrepresentations are untrue statements or assertions that related to existing facts. Misrepresentations do not relate to future conduct or actions, nor do they relate to statements based on a party's mere opinion, guess, or supposition

Where one party disguises a fact as an opinion, then this will constitute a misrepresentation. Where a party holds herself out to have knowledge or special skill and asserts an opinion on the basis of the skill or

43

knowledge, then her assertions are held to relate to the underlying facts and, therefore, sufficient to establish misrepresentation

**Fraudulent Non-disclosure**: The wrong that must be committed under a claim of fraudulent non-disclosure relates not to an assertion made by the defendant but to the defendant's silence where there was a duty to disclose. Because fraudulent non-disclosure is based on the defendant's silence rather than an assertion, there is no requirement that the defendant make an assertion.

Although there is generally no duty of disclosure to trading partners, if a party is aware of material facts that are unlikely to be discovered by the other party in the exercise of ordinary care and diligence, then there will be a duty to disclosure that information where the parties enjoy a relationship of trust and confidence; if a party had made an assertion that was true

**Fraudulent Misrepresentation**: Most claims of fraudulent misrepresentation are based on oral or written statements. Misrepresentations can also be made through conduct. Active efforts to cover up the truth also constitute misrepresentations. The standard for determining whether an aggrieved party's reliance on the defendant's misrepresentation is reasonable is whether under all of the same circumstances a reasonable person would have relied on the assertion

**Non-Fraudulent Misrepresentation**: The same remedies are available to the victim of either negligent or innocent misrepresentation so the difference between them is merely descriptive. For negligent misrepresentation, the aggrieved party must show that the perpetrator would have known that the assertion was false had she exercised reasonable care. For innocent misrepresentation, the aggrieved party need only

**Remedies**

Victims of fraudulent misrepresentation, non-fraudulent misrepresentation, and fraudulent non-disclosure may use those claims in 2 ways: avoidance or rescission and reliance damages

Victims of fraudulent and non-fraudulent misrepresentation have a third option: they may live with the contract and sue for the benefit of the bargain

Because fraudulent misrepresentation is an intentional tort, the aggrieved party may secure punitive damages against the defendant to penalize the defendant on the basis of the fraudulent intention

**Duress**

At common law, the duress defense was available in 2 circumstances: physical compulsion and unlawful threat. Under modern contract law, there are three elements to the duress defense: a threat (a manifestation of intent to inflict harm on the other person made in words or by conduct); that is wrongful in nature and that leaves the aggrieved party with no reasonable choice but to succumb to the threat.

A threat is wrongful in nature if it involves criminal or tortious conduct whether the threat is itself unlawful of whether it is merely a threat to engage in future unlawful action

A threat to bring a civil action is wrongful only if made in bad faith – that is if the perpetrator does not honestly and reasonably believe that the target has civil liability

A threat is sufficient to constitute duress if what is threatened is a bad faith breach of contract

**Third-Party Duress:** If the wrongful threat is made by a third party, rather than the other party to the contract, the aggrieved party will still have a valid claim of duress unless the other party gives value or

44

relies materially on the transaction and the other party is proceeding in good faith without reason to know of the duress.

Contracts made under physical compulsion are void. Contracts entered under other forms of duress are voidable at the option of the aggrieved party. The aggrieved party is entitled to restitution of any benefits conferred under duress; and required to return excess value of benefits to the perpetrator.

Not every demand for change in a contract price will be considered a bad faith demand. If the demand for a change in contract terms is due to the fact that performance under the terms of the contract has become extremely burdensome because of unanticipated circumstances, then there is no duress.

**Undue Influence**

An aggrieved party may avail herself of the defense of undue influence when the circumstances reveal a vulnerable but not incapacitated party who succumbs to untoward bargaining tactics and pressures from the other party where those pressures or tactics fall short of fraud or duress

There are two elements to this defense: unfair persuasion was used; and the other party was vulnerable to such persuasion

Although the test for unfair persuasion is one that looks at all of the circumstances, courts usually focus on: discussion of the transaction at an unusual or inappropriate time; consummation of the transaction at an unusual place; insistent demands that the transaction or business be finished immediately; extreme emphasis on the untoward consequences of delaying the transaction; the use of multiple persuaders against the target of persuasion; absence of third-party advisers to the target of persuasion; and statements that there is no time to consult financial advisers or lawyers

**Remedies**: Contractual obligations assumed under undue influence are voidable at the option of the aggrieved party. The aggrieved party is entitled to restitution of any benefits conferred on the other party, but must return the value in excess of those benefits to the other party.

If a third party places undue influence on a party to the contract, the aggrieved party will still have a valid claim of duress unless the other party gives value or relies materially on the transaction and the other party is proceeding in good faith without reason to know of the undue influence.

**Unconscionability**

**Procedural unconscionability** is available as a defense where the bargaining process that produced the contract in question created an absence of meaningful choice for the aggrieved party

**Substantive unconscionability** is met when the contract terms are reasonably unfavorable to the aggrieved party

The question of whether a particular contract is unconscionable is determined by the circumstances existing at the time of contract formation not at the time the dispute arose

**Public Policy**

The public policy defense is a claim that courts should not enforce a contract because doing so would violate or undermine some important public policy

Public policy may be raised as a defense to the enforcement of a contract where the subject matter of the contract itself is prohibited by law; the contract tis formed for the purpose of committing a crime or violating a regulation; contract performance would constitute an actionable tort; inter alia.

**Contracts That Frequently Fall Under The Public Policy Defense**

- **Non-compete agreements**: Many employment contracts as well as contracts for the sale of a business contain a provision that prevents one party from competing for a certain period of time or in a certain area. If the provision is reasonable, the court will enforce it. However, if the non-compete agreement imposes an unreasonable geographic barrier, duration, or term, the enforcement of that provision may be considered a violation of the public policy promoting a citizen's freedom to work
- Under the blue pencil rule, most jurisdictions remove the offending portion of the non-competition clause while enforcing the remainder
- **Sale of Goods via Bribery**: If a contract for the sale of goods was based on bribery by any party, the public policy defense could be used by the bribe victim to make the contract unenforceable
- **Sales of goods Intended for Unlawful Use**: If a contract is for a sale of goods that the seller knows the buyer intends for an unlawful use, the public policy defense would be available to defeat an action either by the seller seeking payment or the buyer seeking delivery
- **Liability-Limiting Provisions**: when the provisions of a contract would limit a party's liability for tortious behavior by restricting the right of the injured party to pursue claims against the reckless or intentional harms caused by the party, the provision will be unenforceable
- **Unlicensed Goods or Services**: When a contract is for unlicensed goods or services then the contract may be rendered unenforceable by the public policy defense

**Expectation Damages**

- The default rule for the proper measurement of damages in breach of contract cases is the expectation interest of the aggrieved party. This means the aggrieved party will be entitled to the amount that will restore her or him to the position she or he would have been in had the contract been fully performed.
- The Expectation damages of the aggrieved party = loss of value of the breaching party's performance + any incidental and consequential costs generated by the breach − any payments received by the breaching party − any costs saved as a result of the breach
- **The cost of performance** is the cost that would be incurred n an effort to perform as promised under the contract
- **Market value of performance** is the net increase in the market value of finding substitute performance of the contract
- Under the **Hadley** rule, a breaching party will be liable for general damages but not for special or consequential damages, which are those damages that result from the particular circumstances of the aggrieved party unless at the time of contracting the breaching party knew or had reason to know that consequential damages would result from breach. A common type of consequential damages is lost profits. The Hadley rule is a default rule.

**Reliance Damages**

- Reliance damages may be available where expectation damages are not available
- The measurement of damages for the reliance interest of an aggrieved party is calculated by determining the amount of money necessary to restore the aggrieved party to the position she or he

46

was in prior to the contract. The most common use of reliance damages arises when the expectation damages would be uncertain or speculative as where the breach would deprive the aggrieved party of opportunities to enter potential transactions with third parties.

**Restitutionary Damages**

- A party aggrieved by a breach of contract is entitled to restitutionary damages rather than expectation damages at her or his option. If chosen, the aggrieved party may choose to recover the value of the benefits conferred on the breaching party by the aggrieved party during the course of the contract.
- Restitutionary damages are available to both the breaching and aggrieved parties
- The aggrieved party's restitutionary interest is measured by either the reasonable value of the benefit conferred on the breaching party or the extent to which the breaching party's property has increased in value based on the aggrieved party's performance
- If the aggrieved party has fully performed under the contract, she or he can only recover expectation damages
- To secure restitutionary damages, the party seeking the remedy must have conferred some benefit on the other party either through part performance or reliance

**Liquidated Damages Provisions**

- A liquidated damages clause, which permits the parties to request the damages of their choice, is enforceable if it passes the following three prong test: did the parties intend for the clause to operate as a liquidated damages clause or as a penalty; was the clause reasonable at the time of contracting in relation to the anticipated harm; and was the clause reasonable in relation to the harm and losses that actually occurred due to the breach

**Monetary Damages under the UCC**

- **Seller Remedies**: Upon a buyer's breach of a contract for the sale of goods, the seller is free to cancel the contract and withhold delivery of any goods that have not yet been delivered. The seller may also have the right to recover money damages from the breaching buyer
- **Action for the Price**: If some or all of the goods have been delivered and accepted, the seller is entitled to collect the contract price for those goods
- **Damages for Non-acceptance or Repudiation**: If some or all of the goods have not been delivered – either because the buyer has rejected them or in the context of anticipatory repudiation – the seller can recover damages with respect to them
- If the seller resells she can recover the **contract-resale differential** – the difference between the contract price and the resale price
- If the seller does not resell, she can recover the **contract market differential** – the difference between the contract price and the market value of the goods at the time and place of the promised delivery
- Whether or not the seller resells, she is also entitled to recover incidental damages – the costs associated with getting stuck with goods the seller thought she had sold as well as the costs of resale

**Lost Profits For Lost Volume Sellers**

- A lost volume seller is one whose supply of goods exceeds the demand for the same
- The UCC permits lost volume sellers to recover the profit they would have made on the lost sale rather than forcing them to request the contract-market or contract-resale differential

47

- To recover lost profits the seller must show: the shew could have made the sale to both the breaching buyer and the resale buyer; that it would have been profitable for the seller to make both sales; and that she probably would have made the additional sale to the resale buyer even absent the buyer's breach

**Buyer Remedies**

- Upon a seller's breach of contract for the sale of goods, a buyer can either recover damages or seek specific performance
- There are two ways to measure a buyer's damages under the UCC, the key factor is whether the buyer has purchased replacement goods
- **Difference in Value Damages**: These damages are available if the buyer receives non-conforming goods from the seller
- The difference in value damages does not require a showing of foreseeability – only that the goods did not conform to the goods specified in the contract
- **Buyer's Recovery Under Difference in Value Damages** = Value of Goods Contracted Form – Value of Goods Received
- The most common equitable remedies are specific performance, negative injunctions (which prevent future breaching), and rescission (which cancels the contract).

**Specific Performance**

- Specific performance is available as a remedy where monetary awards would be inadequate to grant relief to the aggrieved party. In deciding whether to order specific performance, the court will consider whether the aggrieved party has clean hands (has dealt fairly and in good faith with the breaching party); whether the contract terms are sufficiently definite; whether performance by the aggrieved party can be reasonably assured; whether the contract terms are fair; and whether specific performance would be in the public interest
- At common law, money damages are presumed to be inadequate when a party is purchasing either unique objects or real property
- Specific performance cannot be ordered to command a breaching employee or contractor to perform a contract because of public policy considerations counseling against involuntary servitude. Specific performance is also disfavored with contracts that are not capable of immediate enforcement or contracts that require a continuing series or acts or continuing cooperation form the parties for successful performance
- The UCC liberalizes the rules governing specific performance for the sale of goods by permitting specific performance if the goods are unique or in "other proper circumstances" and permitting specific performance even where ongoing cooperation would be required between the parties so long as the required inability of a party to cover can be established.
- Buyers also have **replevin rights** – an action to repo property -- for goods identified in the contract if after reasonable effort, the buyer is unable to cover; the circumstances reasonable indicate that an effort to cover would be unavailing; or if the goods have been shipped under reservation and satisfaction of the security interest in them has been made or tendered.

**Negative Injunctions**

- Negative injunctions are orders by the court prohibiting the breaching party from taking particular action. Negative injunctions are often used to prevent employees from going to work for a competitor or competing with their former employer. The availability of the injunction depends on

48

whether the employer is seeking midterm or post-employment relief. If the employee is under contract for a specified period of time and the employee breaches the contract by leaving before the end of that period, a negative injunction can prevent the employee from competition directly or indirectly with her former employer if the employee's services are unique or extraordinary. On the other hand, if the injunction is for relief after employment to prevent competition, the court will consider whether the petition has a significant business justification for enforcing post-employment restraints; whether the clause has reasonable geographic and time restrictions; and whether the non-compete clause was express.

## Rescission

Rescission is an equitable remedy that cancels the contract. Both parties are placed where they were before the contract was executed

Rescission of a contract is available by consent of both parties; for mistake (either unilateral or mutual); for fraud, misrepresentations, and non-disclosure; for duress or undue influence; for illegality; or for failure of consideration. A party seeking rescission must be ready to return to the other party all benefits they have received.

## Promissory Estoppel

A party may obtain either expectation or reliance damages for a successful promissory estoppel claim. In some instances, a court may consider the blameworthiness of the breach; the extent of the detrimental reliance by the aggrieved party; the relative positions of the parties; the strength of the proof for each individual claim element; and the strength of proof for each individual claim element

## Restitution and Unjust Enrichment

A party can elect to receive restitutionary rather than expectation damages after a successful breach action. More specifically, restitution may be available where benefits were conferred under a failed contract; benefits where conferred by a breaching party; benefits where conferred by mistake; or emergency benefits where conferred by a health care provider

## Agreed-To Remedies

The parties to a contract can also contract out of the legal and equitable remedies available under the law by specifying agreed to remedies in the contract. These remedies usually take two forms either a liquidated damages provision or a provision excluding damages

Under the UCC, a clause limiting consequential damages for personal injury is prima facie unconscionable

## Classification of the Third Party Beneficiaries

The right of an agreed third-party beneficiary to bring an action for breach of contract against a breaching promisor or promisee depends on the beneficiary's classification. A third party beneficiary has a right to secure enforcement of the agreement from a breaching promisor. The beneficiary, however, can sue the promise only if there is an independent obligation between her and the promisee.

## Vesting of the Right to Sue

Third party beneficiaries do not have the right to seek automatic enforcement of the contract or to prevent the original parties from modifying the contract

49

The parties to a contract can modify or rescind the contract by mutual consent and can modify or rescind a third party beneficiary provision without the beneficiary's consent unless and until the beneficiary's rights have vested

Once the third party's rights vest, the ability of the original parties to make an rescissions or modifications will be terminated

**Defenses Available to Promisor**

Because a third-party beneficiary's rights are entirely dependent on the underlying contract, any valid defense the promisor would have against contract enforcement would also be effective against the beneficiary. The promisor may not assert defenses based on separate transactions with the promise unless the contract expressly subjects the beneficiary's rights to that claim.

**Promisee's Rights against the Promisor**

If the promisor's performance is intended to benefit a done beneficiary, the promise ordinarily will not have suffered any economic loss for on-performance and thus may be unable to recover anything more than nominal damages. However, if the promisor's performance is intended to benefit a creditor beneficiary, the promisee may secure specific performance of the promisor's obligation.

**Right Assignments**

An assignment is a transfer of a right to receive performance under a contract

To make an effective assignment of a contract right: the owner must manifest an intention to make a present transfer of the right without further action by the owner or the obligor; and the assignee manifests assent to the assignment. Partial assignments are effective

**Manifest an Intention**: Manifestation of intention is usually established by the assignor's written or oral words. There are no magic words required to make a manifestation effective

Neither a promise to transfer a currently existing right at a future date or a promise to transfer a right that the assignor expects to acquire in the future is an effective assignment

A manifestation of assent by the assignee is essential unless a third person gives consideration for the assignment or the assignment is irrevocable by virtue of the delivery of a writing to a third person

All rights are assignable unless the assignment would materially alter the risks to, or the obligations of the other parties to the contract; the obligor has a personal interest in performing the contract for the oblige; the assignment would violate public policy; or the assignment is prohibited by the contract

Prohibitions in the contract against assignment will bar delegation of contractual duties but not assignment of contractual rights; will not apply to rights that accrue to the obligor as a result of the obligor's breach or rights that accrue to the assignor upon complete performance by the assignor

In an assignment for value the assignee acquires the assignor's contractual rights in exchange for payment or a promise for payment to the assignor is valid against the obligor and cannot be revoked by the assignor although it may be modified via the parties' mutual consent

In a gratuitous assignment, the assignor assigns contractual rights to the assignee without consideration for the transfer. This assignment is valid and binding against the obligor who cannot raise the absence of consideration between the assignor and the assignee as a defense to any breach of her obligations to the

assignee. Even if there is no delivery, the gratuitous assignment will become irrevocable once payment of the obligation is made to the assignee. The assignor will be estopped from revoking the assignment if the assignee acts to her or his detriment in reliance upon the assignment

**Rights of the Assignee Against the Obligor After Assignment**

The assignee gets whatever rights to the contract her assignor had and the assignee takes the contract rights subject to whatever defenses the obligor could have raised against the assignor

If the obligor pays the assignor, defenses can be raised against the assignee if payment was made before the assignment notice was given to the obligor. Once assignment notice is given, payment to the assignor is not a defense.

If the obligor has a setoff right hat could be raised against the assignor, that right can be raised against the assignee if the alleged setoff arises out of the same transaction. If a setoff arises out of a separate transaction, it is available against the assignee only if the transaction that gave rise to the setoff arose before the assignment notice was given to the obligor.

**Assignor Rights After Assignment**

Unless a contrary intention is manifested, one who assigns or purports to make an assignment implicitly warrants that she will do nothing to defeat or impair the assignment's value and has no knowledge of any fact that would do so; the assigned right exists and is not subject to any limitations or defenses against the assignor other than those that were stated or apparent at the time of the assignment; any writing evidencing the rights in the contract are being offered to induce the recipient to accept the assignment.

**Rights Among Successive Assignees**

If the assignor assigns her right to receive money owed by the obligor to multiple assignees, the assignor is liable to both assignees for assigning the same right twice. But, if the assignor is bankrupt or has fled the jurisdiction and both assignees attempt to collect from the obligor, the first assignee will prevail. Under the Second Restatement, though, a subsequent assignee who has paid value and took the assignment in good faith will prevail if she obtains payment from the obligor; recovers a judgment on the debt; enters into a new contract with the obligor; or receives delivery of a tangible token or writing from the assignor

**Duty Delegation**

A delegation occurs when a third party agrees to satisfy a performance obligation owed by one of the parties to a contract. The general rule is that all obligations can be delegated unless the contract bans delegation or the performance in question is personal and the recipient must rely on qualities such as character, reputation, taste, skill, etc.

A delegation does not relieve the delegator from her obligations under the contract

Despite the delegator's delegation to the delegatee of the performance obligation owed to the oblige, the delegator remains liable for the performance

If there is a novation – a clear promise by the oblige to release the delegator in return for the liability of the delegate. The delegator will be relieved from obligations under the contract

When the delegatee has agreed to perform the delegator's contract obligations, she is liable to the delgatee if she does not do so. The delegatee is also liable to the obligee

51

Under the UCC, any delegation of performance may be treated by the other party as creating reasonable grounds of insecurity and the other party has the right to demand adequate assurance from the assignee without prejudicing her rights against the assignor

At common law, an attempted delegation of a non-delegable duty operates as an immediate breach of contract and gives the other party an immediate right to sue.

**Real Property**

An estate in land is an interest in real property that is currently or may become possessory in the future

A freehold estate gives the estate owner the title to the estate or a right to hold the property a non-freehold estate gives mere possession

A fee simple absolute is the largest possible estate in land denoting the aggregate of all possible rights a person may have in a land parcel including the right to sell or convey all or part of the property and the right to devise the property. A fee simple absolute may last in perpetuity. If the owner of a fee simple absolute dies intestate, the property will pass to the owner's heirs by intestacy. Under modern law, a fee simple will be presumed to be created when the words "to A" are used.

A defeasible estate is an estate that may terminate before its maximum duration has run

**Unclear grants**: If the words of a grant are not clear, a covenant is preferred over a defeasible estate and a fee simple subject to a subsequent condition is preferred over a determinable fee simple

**Life estates** last for the duration of the grantee's life

A life estate *pur autre vie* is an estate where the duration is measured by the life of someone other than the grantee. A life estate can be made defeasible

A life tenant has a duty to maintain the property in a reasonable state of repair, ordinary wear and tear excepted. This duty is limited to the extent of the income derived or, if she personally occupies the premises, to the extent of the reasonable rental value of the land. A tenant for a term of years also has a duty to maintain the property in a reasonable state of repair, ordinary wear and tear excepted. This duty, though, is not limited to the extent of income derived or the reasonable rental value.

The life tenant has a duty to pay the interest on a mortgage to the extent of profits derived from the property. A tenant for years or a periodic tenant has no common law duty to make mortgage payments

A life tenant must pay all ordinary taxes, to the extent of profits derived from the property. A tenant for years or a periodic tenant has no common law duty to pay property taxes unless the lease is perpetual or for a long term with an option in the tenant and her successors to renew forever; the tenant holds without any obligation to pay rent; or the tenant has erected improvements on the leased premises for her own benefit.

**Non-Freehold Estates**

A leasehold estate is an estate that is limited in duration. The landlord holds a reversion following the leasehold estate.  A reversion is a future interest retained by the grantor when the grantor transfers less than a fee interest to a third person. Reversions are transferrable, devisable, descendible, and are not subject to the Rule Against Perpetuities.

**Contingent Remainders**

A remainder is a future interest created in a third person which is intended to take effect after the natural termination of the proceeding estate. A remainder will be contingent if the takers are unascertained; or the interest is subject to a condition precedent and does not fall on the natural termination of the previous estate. A contingent remainder is transferable, descendible, and devisable except when the contingent remainder is in an unascertained person. Contingent remainders are subject to the Rule Against Perpetuities

If a contingent remainder has not vested at the natural termination of the prior vested estate, the contingent remainder will become an executory interest subject to the Rule Against Perpetuities

**Vested Remainders**

A vested remainder requires its takers to be ascertained or ascertainable at the time that the remainder is created. A vested remainder must also fall in automatically at the natural termination of the previous estate – meaning that there can be no condition precedent to the taking. A vested remainder is transferable, descendible, and devisable. A fully vested remainder is not subject to the Rule Against Perpetuities.

A remainder that is vested subject to partial divestment is a remainder that has been made to a class and has at least one member who is ascertainable and who has satisfied any of the conditions precedent to vesting but may have other members of he class join later

A vested remainder subject to total divestment is presently vested buy may be terminated on the occurrence of a future event

**Doctrine of Wortheir Title For Inter Vivos Transfers**

The doctrine of worthier title arises in grants where O conveys "to A for life, remainder to the heirs of O."

For this doctrine to apply, A must receive an estate less than a fee simple such as a life estate or a term of years; O's heirs must receive a remainder; both interests must be created by the same remainder; and both interests must be legal or both must be equitable

**Rule of Convenience**

Under the rule of convenience, a class closes when a member of the class is entitled to distribution

The rule of convenience applies to children, grandchildren, brothers, sisters, nephews, nieces, cousins, issue, descendants, or the family of a designated persons

If the class is already closed at the time the gift takes effect, all members of the class at that moment will take. However, any members of the class who are conceived later or born later will not share in the estate

If at the time the gift takes effect, the class has members entitled to take immediately but the class has not previously closed, all class members conceived at the time the gift is made will be included and may take; however, the class will close to the exclusion of afterborn children

If the class has no members at the time the gift is made, all members of the class, whenever born, will be included and may take. The class stays open until all possible members are born

**Waste**

The possessor of a life estate or a leasehold interest has the right to possess, use, and enjoy the property during the duration of her estate. However, she may not do anything that adversely affects the future interest that follows the life estate. An act that adversely affects the future interest is called waste.

Voluntary waste is the voluntary commission of an act that has more than a trivial injurious effect on o change in the property. Despite the prohibition on voluntary waste, natural resources may be consumed for the repair and maintenance of the property; with permission of the grantor; or under the open mines doctrine which applies to both life tenants and tenants for years

Involuntary or permissive waste occurs if the life tenant or leasehold tenant permits the premises to fall into disrepair. Involuntary waste may also occur if the life tenant fails to pay mortgage interest, taxes, or the tenant's share of special assessments

Ameliorative waste occurs if an act of a life tenant increases the value of the premises by permanently altering it. A life tenant is permitted committed ameliorative waste if the market value of the remainder woman's interest is not impaired and either it is permitted by the remainder woman or a substantial and permanent change in the neighborhood has deprived the property of a reasonable current value

A contingent remainder woman does not have standing to sue for damages for past waste

**Co-tenancy**

A concurrent estate exists when two or more persons share concurrently an interest   in real property. A concurrent owner is called a co-tenant.

Tenancy in common is a form of concurrent ownership where each co-tenant owns an undivided interest in the whole of the property with no right of survivorship. No special words a re required to create a tenancy in common. Tenancy in common requires unity of possession only.

Unity of possession means that each tenant in common has the right to possess the whole of the property

A tenant in common may transfer her interest inter vivos: Voluntarily through conveyance, lease, mortgage, or other transfer of a present possessory or future property interest; or involuntarily, through a foreclosure on a mortgage of the tenant's interest or an execution of a judgment creditor's lien on the tenant's interest in the property.

A tenant in common may devise her interest and the interest of a tenant in common may also descend by intestacy

**Joint Tenancy**

Joint tenancy is a form of concurrent ownership where each co-tenant owns an undivided interest in the whole of the property and has a right of survivorship. The joint tenants must take at the same time; take by the same instrument; take equal shares of the same type; and must each have a right to possess the whole

Each joint tenant has a right of survivorship. At the death of one joint tenant, the interest of the surviving joint tenant 'grows' and absorbs the interest of the deceased joint tenant

A joint tenancy is served if one joint tenant conveys her interest voluntarily or involuntarily. An involuntary conveyance occurs if a creditor forces a sale of a joint tenant's interest to satisfy the debt owed to the creditor by the joint tenant.

If both joint tenants join in a mortgage of the subject property, the mortgage will not affect the joint tenancy

If only one of the joint tenants mortgages her interest, the effect of the mortgage on the joint tenancy will depend on whether the jurisdiction follows the tile theory or the lien theory of mortgages. Most jurisdictions

54

follow the lien theory – the mortgagee only receives a lien on the property and no severance occurs when the mortgagee is made.

**Tenancy by the Entirety**

A tenancy by the entirety is a form of concurrent ownership reserved for married couples which gives each spouse an undivided interest in the whole of the property and a right of survivorship

There is a presumption of tenancy by the entirety if a conveyance is made to a married couple even if they are not identified as a married couple in the deed

**Rights and Duties of Co-Tenants**

Each co-tenant is entitled to possess the whole property

Wrongful ouster occurs when one co-tenant wrongfully excludes another co-tenant from possession of the whole or any part of the jointly held property

An out of possession co-tenant has the right to share rents and net profits derived by another co-tenant from third parties minus operating expenses

| Tested Enumerated Powers | Tested Implied Powers | |
|---|---|---|
| <ul><li>Collect taxes and spend money for the general welfare</li><li>Borrow money on credit</li><li>Regulate commerce with foreign nations and between states</li><li>Declare war</li><li>Raise and support the army, navy, and militia</li></ul> | <ul><li>Congress has the power "to make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or any Department or Officer thereof"</li></ul> | • |

| Treaties and Executive Agreements: Precedence Chart | | | |
|---|---|---|---|
| | U.S. Constitution | Federal law | State law |
| Treaties | Constitution prevails | Last-in-time prevails | Treaty prevails |
| Executive Agreements | Constitution prevails | Conflicting federal statute prevails | Executive agreement prevails |

| Precedence Pyramid |
|---|
| U.S. Constitution |
| Treaties and Federal Statutes |
| Executive Orders and Agreements |
| State Constitution |
| State Law and Ordinances |

| When a tax on interstate commerce is valid |
|---|
| <ul><li>It is not preempted by federal law</li><li>It does not discriminate against interstate commerce</li><li>There is a substantial nexus between the taxed activity and the taxing state</li><li>There is a fair apportionment and relationship</li></ul> |

| Various types of state taxes | |
|---|---|
| Sales tax | <ul><li>A tax upon the transfer of goods consummated within the state</li><li>Valid if the sale is consummated within the state</li><li>Invalid if the sale is made to a buyer outside the state</li></ul> |
| Use tax | <ul><li>A tax upon the use of goods within the state that were purchased outside the state</li><li>The ability of a state to collect a use tax usually depends on whether the interstate seller who receives the goods from outside the state has a sufficient nexus within the taxing state.</li></ul> |
| Doing business tax | <ul><li>Can be measured by either a flat annual fee or a graduated rate based in proportion on the amount of revenue derived from the taxing state</li><li>As a general rule the tax must relate to the benefits conferred by the taxing state upon the interstate business</li></ul> |
| Net income tax | <ul><li>Applied by a state upon a company engaging in interstate commerce or on a nonresident engaged in business in the taxing state</li><li>Valid only so long as the tax is apportioned, has a significant nexus, and is non-discriminatory</li></ul> |
| Flat license tax | <ul><li>Fee levied by the state upon drummers or solicitors who solicit local orders and then fill them out of state and ship them through interstate commerce</li><li>Generally unconstitutional</li></ul> |
| License tax | <ul><li>Valid on an iterant salesperson when a state levies it upon a seller who actually sells and delivers the product within the state</li><li>Valid as a non-discriminatory tax only as long as the tax is fairly apportioned with an equal application to local salespersons</li></ul> |

| Fourteenth Amendment | Fifteenth Amendment |
|---|---|
| Prohibits states from making or enforcing laws which:<br><br>• Abridge a citizen's privileges or immunities<br>• Deny any person life, liberty, or property without due process or<br>• Deny any person equal protection of the laws | Prohibits the state and federal governments from denying the right to vote based on race |

| Deprivation of liberty | |
|---|---|
| Acts that invade a liberty interest | Acts that do not invade a liberty interest |
| • Freedom from bodily restraint<br>• Physical punishment<br>• Commitment to a mental institution | • Injury to reputation<br>• Forced administration of medicine |

| Property interests | |
|---|---|
| Public education | • Constitutionally protected property interest in statutory entitlement to continued attendance at public school<br>• No prior evidentiary hearing required when a student is denied admission to a public school for academic reasons |
| Continued welfare benefits | • Property interest created by statutory entitlement to continued welfare benefits |
| Detention of driver's license | • State may not revoke a driver's license without a hearing |
| Public employment | • There is a property interest in a person keeping her or his job under a tenure system or in a position here termination can only be terminated for cause<br>• No property interest where a police officer held a position at will<br>• No property interest where a state refuses to renew a fixed term contract |
| Prejudgment garnishment | • Prejudgment attachment or garnishment of wages without notice or a hearing violates procedural due process<br>• Due process property interest does not arise when an individual is first applying for employment |
| Property forfeiture | • Due process is satisfied when the government sends a certified letter to prison to notify an inmate that property seized will be forfeited because such an action is reasonably calculated under the circumstances to apprise interested parties |

| | |
|---|---|
| | of the pendency of the action and afford them an opportunity to present their objections |
| Business licensing | • First amendment and due process require that a licensing scheme for adult businesses provide applicants with prompt judicial determination of their claim that the government unconstitutionally denied a license as opposed to mere prompt access to judicial review |

| Constitutional Avoidance in the Supreme Court |
|---|
| • Where there is no issue in controversy – no adversarial conflict between the parties<br>• When the complainant cannot show injury by the statute in question<br>• When the issue is not ripe and the Court does not feel that the issue has arisen<br>• When the decision requires a ruling broader than the facts of the case<br>• When the complaint can be resolved in a non-constitutional manner<br>• Then the Court can determine the case on statutory grounds<br>• When the complainant benefited from the statute it now argues is unconstitutional |

| Important Fundamental Rights | |
|---|---|
| Abortion | • A woman has a protected privacy interest in choosing to have an abortion before the fetus is viable<br>• Before Viability: the government may regulate (but not ban) abortion in the interest of either the mother's health or the potential life of the fetus. The regulation may not impose an undue burden on the woman's right to choose an abortion<br>• After Viability: A state may regulate and even ban abortion except where it is necessary for the preservation of the life or health of the mother<br>• Consent Requirements: Neither spousal notification nor spousal consent can be required before a woman may obtain an abortion. However, parental consent may be required before an unemancipated woman under the age of 18 obtains an abortion if the state establishes a judicial bypass procedure.<br>• Public Funding: There is no constitutional right for indigent women to obtain government funding for abortions. A state |

|  |  |
|---|---|
|  | may prohibit the use of public facilities and publicly employed staff in performing abortions. <br> • Late Term-Abortions: The Supreme Court has upheld a federal ban on partial birth abortions. The Court rejected a facial challenge to a prohibition against use of this particular type of abortion procedure but left open the possibility of challenges to the act as applied to specific individuals. |
| Family Relations | • A fundamental right exists for related persons to live together. A zoning ordinance prohibiting members of an extended family from living in a single household has been subjected to heighted scrutiny and held unconstitutional. <br> • Parents have a protected liberty interest in controlling visitation with their children |
| Sexual Orientation | • The Fourteenth Amendment protects fundamental rights to same sex marriage and sexual intercourse with another individual of the same sex |
| Right to Travel | • The Privileges and Immunities Clause of Article IV, Section 2 and the Commerce Clause mutually enforce the right of every citizen to travel freely from state to state <br> • Durational residency requirements for dispensing government benefits are subject to strict scrutiny <br> • The right o international travel is not absolute and may be subject to reasonable restrictions, and Congress may authorize the president to restrict travel to certain countries or danger areas. |

| Substantive Due Process Versus Equal Protection Review | |
|---|---|
| Substantive Due Process | Equal Protection |
| Applies where a law affects the rights of all persons with respect to a specific activity. | Applies where a law affects the rights of only some persons with respect to a specific activity. |

| The Three Standards of Review | | | |
|---|---|---|---|
|  | Burden of Proof | Proof Required | When Applicable |
| Strict Scrutiny | Government | Classification is necessary to achieve a | Suspect classifications – race, alienage, voting, and national origin |

| | | compelling government interest | |
|---|---|---|---|
| Intermediate Scrutiny | Government | Classification is substantially related to an important government interest | Quasi suspect classifications – gender and illegitimacy |
| Rational Basis | Plaintiff | Classification serves no legitimate interest or is not rationally related to any legitimate interest | All other classifications |

| Equal Protection Challenges | | |
|---|---|---|
| Strict Scrutiny | Intermediate Scrutiny | Rational Basis |
| • Alienage<br>• Domestic travel<br>• National origin<br>• Race<br>• Voting | • Gender<br>• Illegitimacy<br>• Undocumented children | • Age<br>• Alienage<br>• Disability<br>• Wealth |

| Analyzing a State Law for Violations of the Article IV Privileges and Immunities Clause and the Dormant Commerce Clause | | |
|---|---|---|
| Does the State Law Discriminate against Nonresidents | | |
| | No | Yes |
| Dormant Commerce Clause | If the law incidentally burdens interstate commerce, it violates the Dormant Commerce Clause, if the burden is excessive in relation to the benefit | If yes on its face, and the law burdens interstate commerce, it violates the dormant commerce clause unless: the regulation serves a compelling state interest and the regulation is narrowly tailored to serve that interest<br><br>Exceptions to this are: state statutes that have received congressional approval and the market participation exception<br><br>Simply helping residents to the determinant of nonresidents is not a valid interest |
| Privileges and Immunities Clause | The Article IV Privileges and Immunities Clause does not apply | If yes with regard to activities fundamental to the national union, it violates the Article IV Privileges and Immunities Clause unless the regulation in question specifically targets a |

60

| | | problem arising from the non-resident's behavior.<br><br>The term activities fundamental to the national union means civil liberties or important economic activities<br><br>Corporations and undocumented persons cannot claim protection under this provision |
| --- | --- | --- |





| Federal Subject Matter Jurisdiction | |
| --- | --- |
| Type of Subject Matter Jurisdiction | Application |
| Federal Question | Face of the plaintiff's complaint pleads a violation or question of federal law |
| Diversity | Action involves parties who ae citizens of different states<br>Amount in controversy is greater than $75,000 |
| Supplemental | Claim arises out of the same case or controversy as claim giving rise to original subject matter jurisdiction |

| Establishing Citizenship |
| --- |

| Individuals | A party will be considered a citizen of her state of domicile |
|---|---|
| Corporations | For the purpose of determining diversity, a corporation is a citizen of both the state of its incorporation and the state where is has its principal place of business

A corporation may only have one principal place of business, which should be the corporation's nerve center or the location where the corporation's officers direct, control, and coordinate the corporation's activities |
| Unincorporated Association | The citizenship of an unincorporated association such as a partnership, limited partnership, or limited liability company is the citizenship of all the members of the association.

For class action purposes, the citizenship of an unincorporated association is the state under whose laws it is organized and the state where it has its principal place of business |

| How To Establish Territorial Jurisdiction |
|---|
| • A federal court has territorial jurisdiction over the state in which that federal district is located
• A federal statute that creates a particular cause of action may provide hat federal courts have nationwide jurisdiction
• A federal court may exercise jurisdiction over a defendant outside the state in which the court is located if the defendant is joinder under Rule 14 or 19 and is served within a U.S. judicial district not more than 100 miles from where the summons was issued. |

| Personal Jurisdiction | |
|---|---|
| Type of Personal Jurisdiction | Application |
| In Personam Jurisdiction | Defendant has a physical presence in or relationship of contacts with the forum state |
| In Rem Jurisdiction | The subject of the lawsuit is land or real property located within the forum state |
| Quasi In Rem Jurisdiction | Plaintiff seeks to attach real or personal property owed by the defendant to be used to satisfy any judgment against the defendant |

| A Summons Must |
|---|
| • Be signed by the clerk
• Identify the court and the parties \be directed to the defendant
• State the name and address of either the plaintiff's attorney or the plaintiff itself |

62

- Notify the defendant of the time period within which it must appear or file an answer and the potential for a default judgment if the defendant fails to appear within the specified time
- Contain the court seal

Requirements For Quasi In Rem Jurisdiction

- There is real or personal property of value located within the state or territorial limits of the federal court
- The defendant owns the property
- The property is being attached or seized; and
- The defendant has been provided notice of the proceedings

In Any Action Venue Is Proper In

- The district in which any defendant resides, if all of the defendants reside in the same area
- The district where a substantial portion of events occurred; or
- The district in which any defendant would be subject to personal jurisdiction, if there is no other district in which the action could be brought

The Erie Doctrine

- The doctrine applies to state and federal law conflicts which arise during federal diversity and supplemental jurisdiction cases. When these conflicts apply state substantive law and federal procedural law

Types of Pleadings Allowed Under The Federal Rules

- Complaints
- Answers to complaints
- Answers to counterclaims
- Answers to cross claims
- Third-party complaints
- Answers to third-party complaints
- Replies to answers, if ordered by the court

Affirmative Defenses That Must Be Plead In A Responsive Pleading

- Accord and satisfaction
- Arbitration and award
- Assumption of risk
- Contributory negligence
- Discharge in bankruptcy
- Duress
- Estoppel
- Failure of consideration

63

- Fraud
- Illegality
- Injury to fellow servant
- Laches
- Licenses
- Payment
- Release
- Res judicata
- Statute of frauds
- Statute of limitations
- Waiver

Objections That May Be Raised Either By Motion Or Responsive Pleading

- Lack of subject matter jurisdiction
- Lack of personal jurisdiction
- Improper venue
- Insufficient process
- Insufficient service of process
- Failure to state a claim on which relief can be granted
- Failure to join a party under Rule 19.
- If one of the above objections will be raised by motion rather than in an answer or other responsive pleading, the motion must be made before a responsive pleading is made

| Requirements of Class Actions | |
|---|---|
| Numerosity | The number of members in the class is so numerous that separate joinder of each member is impracticable |
| Commonality | The legal and factual issues are common to those raised by each member of the class |
| Typicality | The claims and defenses of the representative party are typical of those raised by each member of the class |
| Adequacy of Representation | The representative party can fairly and adequately protect and represent the interests of each member of the class |

| Depositions | Depositions permit the direct questioning of a party or witness under oath. They are typically conducted orally, and every word that is spoken is recorded verbatim and transcribed. A party may take only ten depositions in an action as a matter of right. |
|---|---|
| Interrogatories | Interrogatories are written questions that must be answered by another party in writing under |

64

|  | oath. Interrogatories may only be served on parties to an action. There is a limit of twenty-five for each party. |
|---|---|
| Document Requests | Any party may ask another party to produce documents or property for inspection and copying |
| Requests for Admissions | Requests for admission are typically question and answer statements that are used by either party to further explore specific contentions. Any request that is admitted is deemed established for all purposes in the litigation |
| Physical and Mental Examinations | The only discovery tool for which advance court approval is required. The applicant must show "good cause" for the examination. |

| Pre-trial Motions | |
|---|---|
| Rule 12(b)(6) Dismissal | A court will dismiss a complaint under 12(b)(6) if the complaint fails to state a cognizable claim; provides insufficient facts; or contains an allegation that negates one or more elements of the cause of action<br><br>Dismissal of a complaint under 12(b)(6) is with prejudice unless the Court states otherwise |
| Dismissal For Failure to Prosecute | If a plaintiff fails to prosecute her or his action or to comply with the Federal rules or a court order, a defendant may move to dismiss<br><br>A dismissal for failure to prosecute is a dismissal with prejudice, unless the dismissal order states otherwise |
| Summary Judgment Motions | Summary judgment is intended to pierce the pleadings to determine if there is credible evidence to factually support a party's claim<br><br>Summary judgment will be granted if the moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law |
| Motion for Judgment On The Pleadings | After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings under Rule 12(c) |
| Motion For A More Definite Statement | Under Rule 12(e), a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response |

|  | The motion must be made before filing a responsive pleading and must point out the defects complained of<br><br>If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order |
|---|---|
| Motion to Strike | Under Rule 12(f), the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter<br><br>The court may act on its own; or on motion of a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading |

| Post-Trial motion | |
|---|---|
| Judgment as a Matter of Law | The analysis for JMOL motions is identical to that on a summary judgment motion. A summary judgment motion is based on evidence that a party may introduce at trial, while the JMOL motion is based on evidence actually introduced at trial<br><br>The evidence will be viewed in the light most favorable to the non-moving party to determine whether the movant is entitled to prevail as a matter of law |
| Renewed Motion for Judgment as a Matter of Law | Within 28 days after the return of a verdict, a party who has timely moved for JMOL may serve a motion to set aside the verdict and any judgment entered on the verdict.<br><br>A renewed motion for JMOL equires analysis identical to the JMOL motion<br><br>Even after the jury has rendered a verdict, if a judge finds that no reasonable jury could interpret the evidence presented as supporting the verdict, a judge may grant the party against whom the judgment was rendered JMOL |

| | The court may not entertain a renewed motion for JMOL unless a motion for JMOL was made during the trial |
|---|---|
| Motion for a New Trial | A motion for a new trial is generally made as a form of alternative relief to a renewed JMOL motion.<br><br>Motions for a new trial are generally appropriate in the following instances:<br><br>• The verdict is against the clear weight of the evidence<br>• To avoid an inevitable appeal and reversal if the trial judge has committed reversible error<br>• When a jury verdict is so excessive as to demonstrate that the jury has misunderstood its duty or acted with extreme prejudice<br>• If evidence of jury misconduct exists and Federal Rule of Evidence limits judicial inquiry to external influences on the deliberative process |
| Remittitur and Additur | A motion for remittitur asks the judge to reduce the award of damages that are excessive Federal courts will routinely grant motions for remittitur<br><br>The converse of a remittitur is an additur, or an increase in the award of damages. Additur is unconstitutional in federal court |
| Relief From a Judgment or Order | The court can correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record |



**Four Ways To Terminate The Power Of Acceptance**

- Lapse of time
- Death of incapacity of either party
- Revocation by offeror
- Rejection by the offeree

**Requirements For An Enforceable Option Contract**

- An offer
- A subsidiary promise to keep the offer open
- A valid mechanism for securing enforcement of the subsidiary promise

**The UCC Firm Offer Rule**

Under the UCC a merchant can make a irrevocable offer to either buy or sell goods without consideration so long as

- The offer is made by a merchant \the offer is made in a writing signed by the merchant
- The offer expressly states by its terms that it will be held open

| Unilateral And Bilateral Contracts | |
|---|---|
| **Unilateral Contracts** | **Bilateral Contracts** |
| Offeror makes an offer that calls for performance | Offeror and offeree exchange mutual promises |
| Looking for action | Looking for a promise |

| Satisfaction of the UCC Statute of Frauds |
|---|
| Signed Writing |
| Merchant's Confirmation |
| In-court Admission |
| Part Performance |
| Substantial Reliance By The Seller Of Specially Manufactured Goods |

| Implied Warranties | | | |
|---|---|---|---|
| | **Description** | **How Excluded or Modified** | **Limitations** |
| **Warranty of title and against Infringement** | For the sale of all goods, there is an implied warranty of good title of the goods, of the rightful transfer of the goods, and that no liens or other security interests are attached to those goods. | Specific language; or circumstances giving the buyer reason to know that the seller does not claim unencumbered title | A seller is not liable for such a claim if the buyer provides specifications to the seller and the claim arises out of compliance with the specification |
| **Warranty of Merchantability** | If the seller of the goods is a merchant with respect to goods that are covered under the UCC, there is a warranty that guarantees that the goods are fit for the ordinary purposes for which those goods would be used | By language mentioning 'merchantability' and need not be in a writing. However, if it is in a writing, it must be conspicuous | |
| **Warranty of Fitness for a Particular Purpose** | This warranty grants that the goods being sold are fit for the particular purpose for which the buyer intends to use them. | By language in a writing that is conspicuous. | The warranty only applies where, at the time of contracting, the seller has good reason to know:<br><br>• The particular purpose for which the goods are required; and<br>• That the buyer is relying on the seller's skill or judgment to select or furnish |

|  |  |  | reasonable goods |
|---|---|---|---|

| Gap-Filling Default Rules | |
|---|---|
| **Missing Term** | **Gap-Filling Default Rules** |
| Price | The reasonable price at the time established by the contract for the delivery of goods |
| Time | Contractual action must be performed within a reasonable time |
| Place of Delivery | The place of delivery will be the seller's place of business unless otherwise agreed |

| Definitions | |
|---|---|
| Usage of Trade | Any practice or method of dealing having such regularity of observance in a place or trade as to justify an expectation that it will be observed with respect to the transaction in question |
| Course of Dealing | A pattern of conduct concerning previous transactions between the parties that is fairly to be regarded as establishing a common basis of understanding for interpreting their subsequent expressions and other conduct |
| Course of Performance | Repeated occasions for performance by a party and where the other party with knowledge of the nature of the performance and opportunity for objection to it, accepts the performance or acquiesces to it without objection. |

| Evidence Where The Parol Evidence Rule Does Not Apply |
|---|
| • Subsequent agreements<br>• Collateral agreements<br>• Attacks on the validity of the written agreement including: the failure of an oral condition precedent to the agreement; absence of consideration; mistake or duress; fraud; and reformation |

| Approaching A Parol Evidence Analysis |
|---|
| When a party seeks to introduce parol evidence, the court will determine the admissibility of the evidence based on two questions<br><br>• First, what is the purpose for which the evidence is being introduced<br>• Second, does the evidence relate to a term or contract which is integrated |

| Purpose of Evidence | | |
|---|---|---|
| **Purpose** | **Rule** | **UCC Distinction** |

| Explain or Interpret | Majority Rule: Always admissible. | N/A |
|---|---|---|
| Supplement | Admissible unless the contract is completely integrated | Usage of trade, course of dealing, and course of performance evidence are admissible in sale of goods cases to supplement the terms of a written agreement |
| Contradict | Admissible unless the terms in question are fully integrated | Course of dealing or course of performance evidence may be admissible in sale of goods cases to qualify the meaning of an integrated term |

| Faulty Assumption Regards | Doctrine To Apply |
|---|---|
| Present Facts | Mistake |
| Future Facts | Impossibility<br>Impracticability<br>Frustration of Purpose |

| Common Law Versus UCC rules | |
|---|---|
| **Common Law** | **UCC** |
| Preexisting Duty Rule | Good faith test |
| New consideration required | No consideration required |

| Unilateral Mistake |
|---|
| Under the rules governing unilateral mistake, a party operating under a faulty assumption about material facts as they exist at the time of contracting is not excused from her or his contractual performance unless:<br><br>The other party knew or had reason to know of the mistake or<br>The mistake was based on a clerical error. |

| Mutual Mistake |
|---|
| Where both parties have labored under a common faulty assumption regarding the present facts, there is mutual mistake. Under the rules of mutual mistake, the contract will be voidable by the disadvantaged party where:<br><br>The fact about which the parties were mistaken is essential to the contract<br>Both parties were mistaken; and<br>The disadvantaged party did not bear the risk of the mistake under the parties' agreement |

| Promissory Condition | Pure Condition |
|---|---|

71

| Contract performance is conditioned on the occurrence of the promised performance by the other party | Contract performance is conditioned on the occurrence of events beyond the control of either party |
|---|---|

| Express Conditions | Implied Conditions |
|---|---|
| Those which the parties expressly include in contract provisions | Those created under common law or the UCC to address order of performance and rights upon breach when the parties have not done so expressly. |

| When Performance Will Not Be Excused | |
|---|---|
| Waiver | When the discharged party waives the condition, the waiving party's obligation becomes absolute because it is no longer subject to the condition |
| Bad-Faith Conduct | Bad faith conduct will excuse the condition where the benefiting party interferes with the fulfillment of a contract, or where the benefiting party fails to take steps necessary for the condition's fulfillment |
| Avoiding Forfeiture | Where the fulfillment of a condition may result in a forfeiture or great loss to one of the parties, a court may excuse the condition to avoid forfeiture |

| Cognitive Defects | Volitional Defects |
|---|---|
| A person will be deemed mentally incompetent and lacking capacity to enter a contract if the person is unable to understand in a reasonable manner the nature and consequences of the transaction | Mental incompetence can be established if a person is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of this condition |

| Expectation Interest | Reliance Interest | Restitutionary Interest |
|---|---|---|
| To compensate a party for her or his expectation interest, the court will calculate money damages designed to put the aggrieved party where she or he would be if the other party had fully and properly fulfilled the contract terms | To protect an aggrieved party's reliance interest, a court will calculate the money damages designed to put the aggrieved party in the position she oe he was in before the contract was made | To protect an aggrieved party's restitutionary interest, a court will calculate money damages designed to return to the aggrieved party the value of the benefit she or he conferred on the breaching party |

| If The Buyer Covers | <ul><li>The damages measure is the contract cover differential – the difference between what the buyer would have paid under the contract and what she actually paid to secure cover</li><li>Cover must be made in good faith and without unreasonable delay</li></ul> |
|---|---|

| If The Buyer Does Not Cover | • The buyer is entitled to contract-market differential damages – the difference between what the buyer would have paid under the contract and the market price for the goods at the time the buyer learned of the breach |
|---|---|
| Whether Or Not The Buyer Covers | • The buyer is also free to seek incidental damages and consequential damages<br>• The buyer's damages will be reduced by an amount reflecting expenses avoided because of the breach |

| Available Remedies | |
|---|---|
| **Legal Remedies** | **Equitable Remedies** |
| • Money Damages | • Injunction<br>• Specific Performance<br>• Rescission<br>• Reformation<br>• Quiet title Actions<br>• Partition Proceedings |



| Defeasible Estates | | |
|---|---|---|
| Characteristics | Creating Language | Other Differences |

| | | | |
|---|---|---|---|
| **Fee Simple Determinable** | A determinable estate terminates automatically on the occurrence of a named future event | <ul><li>For so long as;</li><li>During;</li><li>Whole; or</li><li>Until</li></ul> | <ul><li>A determinable estate is created in one clause; and with a limitation built into that one clause</li><li>A determinable estate is followed by a possibility or reverter</li></ul> |
| **Fee Simple Subject to a Subsequent Condition** | An estate subject to a condition subsequent may be cut short if the estate is retaken by the grantor or a third party on the occurrence of a named future event | <ul><li>Provided, however;</li><li>However if;</li><li>But if;</li><li>On condition that;</li><li>In the event that.</li></ul> | <ul><li>The condition only gives the grantor the right to take the estate. It does not automatically terminate the estate</li><li>An estate subject to a subsequent condition is created in two separate clauses and with a condition stated in the second clause</li></ul> |
| **Fee Simple Subject to an Executory Interest** | A fee simple subject to an executory interest is an estate that is divested automatically in favor of a third person on the occurrence of a named event | | <ul><li>A fee simple subject to an executory interest is followed by a shifting executory interest</li><li>These devices are subject to the rule against perpetuities</li></ul> |
| **Fee Tail** | A fee tail is a freehold estate that descended to the grantee's lineal descendants | <ul><li>Fee Tail General: O conveys "to A and the heirs of her body"</li></ul> | |

74

| Future Interests | | |
|---|---|---|
| **Present Possessory Interest** | **Future Interest in Grantor** | **Future Interest in Third Party** |
| Fee Simple Absolute | None | None |
| Fee Simple Determinable | Possibility of Reverter | None |
| Fee Simple Subject to Condition Subsequent | Power of Termination | None |
| Fee Simple Subject to Executionary Interest | Springing Executory Interest | Shifting Executory Interest |
| Life Estate | Reversion | Contingent or Vested Remainder |

| Possibility of Reverter Versus Power of Termination | | |
|---|---|---|
| | **Possibility of Reverter** | **Power of Termination** |
| **Definition** | A future interest in the grantor that follows a determinable estate | A future interest in the grantor that follows a fee simple or life estate subject to a condition subsequent<br><br>Upon the happening of the event, the property will not automatically revert back to the grantor. The grantor has to exercise the power of termination and affirmatively retake the property |
| **Creation** | Creation of a fee simple determinable estate automatically creates the possibility of reverter in the grantor | Requires a grantor to reserve this power in the conveyance either expressly or by necessary implication |
| **Transfer** | Common Law: Intestacy Only Modern Law: Transferable, devisable, descendible | Common Law: Intestacy only Modern Law: Descendible, devisable, not transferable inter vivos |
| **Statute of Limitations** | Begins to run as soon as the limitation occurs because the property automatically reverts to the grantor on the occurrence of the limitation | Does not begin to run until the grantor attempts to exercise the power. In some states, though, the limits begins to run when the condition occurs |
| **Rule Against Perpetuities** | Not subject | Not subject |

| Class Gifts | | |
|---|---|---|
| **Postponed gift to a Class (with no condition precedent)** | **Immediate Gift to a Class Coupled with a Condition Precedent** | **Gift to a Class with a Combination of Postponement** |
| • If the class is already closed at the time the postponement ends, all | • An immediate gift to a class may be coupled with a condition | • A gift to a class may be made with a combination of |

| | | |
|---|---|---|
| members of the class will be included and will take<br>• If the class has members but is not yet closed at the time the postponement ends, all members of the class conceived at the time the postponement ends will be included and may take<br>• If the class has no members at the time the postponement ends all members of the class whenever born, will be included and may take | precedent. Here, the class closes when the first member of the class satisfies the condition<br>• All-then born members of the class are included and may take if an when they satisfy the condition. Afterborn children, however, are excluded | postponements combined with a condition precedent. Here, the postponement will end and the class will   close when the last condition is satisfied<br>• All members of the class born before the class closes are included and they make take if and when they satisfy the condition |

76

| Issue | MBE Rule (UBE states) | Florida Rule |
|-------|----------------------|--------------|
| Fraud in the Inducement to Contract | Where a victim is aware that a contract is in contemplation, but her consent to the bargain is seduced by lies or deliberate half-truths, the victim may choose to void the contract | Same as the [...] courts emp[...] falseness of the statement cannot be known or obvious to the victim. |
| Infancy | With some exceptions, a contract formed by a minor is voidable by the minor. Here, a minor cannot be held to obligations in a contract simply because he fraudulently misrepresented his age to the other contracting party. | In Florida, a [...] the minor (unless the minor induced the other party to enter into the contract by fraudulently misrepresenting his age) with the following exceptions:<br><br>An unwed pregnant mother is liable for any contracts entered into when she gave consent to a doctor for medical care relating to the pregnancy or her child<br><br>Minors who are age 16 and older have capacity to contract for higher education loans<br><br>A married minor has the capacity to contract, and the capacity will survive the death of the spouse or the minor's divorce. |
| Contracts made by unlicensed Parties | If the purpose of the licensing statute is simply regulatory, contracts made by unlicensed parties may be enforced. | In Florida, a party that contracts for goods or services but lacks the required licensing can recover the reasonable value of the labor and materials furnished excluding supervisory labor. |
| Contracts Against Public Policy | If, at the formation stage, one of the parties seeks to gain an objective that threatens the values or institutions of society, a court will declare an offense to public policy. Covenants in restraints of trade have been held to offend society's interests in the freedom to exploit talent and economic resources. | Covenants not to compete in connection with the sale of a business, dissolution of a partnership, or the use of a trademark or service mark will not be enforced if:<br><br>The covenant is contrary to the public health, safety, or welfare a[...]<br><br>The injunction enforces an unreasonable covenant not to compete and<br><br>There is no showing of irreparable injury<br><br>Provided that<br><br>A licensee, or any person deriving title from the licensee, of the use of a trademark or service mark, and the business format or system identified by that |

**Commented [OH1]:** Some of these UBE entries do not include information on the abolished common law rule. See if the abolished rules are tested and if so, add them back in....

**Commented [YLS2]:** Find out what these are....

**Commented [YLS3]:** This is kinda vague....

| | | trademark or service mark, may agree with the licensor to refrain from carrying on or engaging in a similar business and from soliciting old customers of such licensor within a reasonably limited time and area, so long as the licensor, or any person deriving title from the licensor, continues to carry on a similar business therein. Said agreements, in the discretion of a court of competent jurisdiction, may be enforced by an injunction.<br><br>Provided also that<br><br>Partners may, upon or in anticipation of a dissolution of the partnership, agree that all or some of them will not carry on a similar business within a reasonably limited time and area. |
|---|---|---|
| Privity of Contract for Expressed and Implied Warranties in the Sale of Goods | UCC Section 2-318 provides three alternatives for non-party privity<br><br>1. The warranty extends to any family member or guest of the original purchaser if it is reasonable to expect her use of the product<br>2. The warranty extends to any natural person if it is reasonable to expect her use of the product<br>3. The warranty extends to any person if it is reasonable to expect that person's use of the product. | In Florida, the warranty extends to any family member or guest of the original purchaser if it is reasonable to expect her use of the product |
| Legal Detriment Required for Consideration | Unless there is a legal detriment on both sides of an exchange, there is no contractual relationship | Florida follows the rule from the First Contracts Restatement recognizing a contractual relationship so long as there is a benefit or detriment to at least one party |
| Seal as a Substitute for Consideration | A seal may substitute for consideration | A seal provides a rebuttable presumption of consideration. Here, the defendant bears the burden of proving the lack of consideration |
| Pre-existing Duty as Consideration | An agreement to pay a preexisting duty/debt is not consideration | Florida follows the Second Contracts Restatement which finds consideration if the preexisting duty is for the benefit of a new intended third party beneficiary (this is most common with construction contracts).<br><br>Florida permits public servants to accept rewards for services performed in apprehending any criminal. Fla. Stat. 838.016 |
| Consideration for Modification | A promise to increase compensation under an existing contract is enforceable as a mutual modification to the contract if | In Florida, a slight change in the terms of the contract will suffice as consideration to support modification. |

| | 1. Both parties agree to a performance that is different from the one required by the original contract **and**<br>2. The difference in performance is not a mere pretense of a newly formed bargain | |
|---|---|---|
| Assignment of Contract Rights | MAY NOT BE COVERED BY MBE LOOK INTO... | Florida does **not** permit the three assignments below<br><br>1. Pensions for firefighters, teachers, and county and state officers and employees<br>2. The payment of any salary, wages, commissions, or other compensation services<br>3. An action for a personal tort |
| Successive Assignees | American Rule – first in time, first in right<br><br>English Rule – first in time, first in right, unless a junior assignee without knowledge or reason to know of the previous assignment gives notice to obligor first<br><br>Massachusetts Rule (most common) – first in time, first in right with the junior assignee receiving priority in the following four instances:<br><br>1. The junior assignee obtains performance from the obligor<br>2. The junior assignee obtains a judgment against the obligor for breach of the assigned duty.<br>3. The junior assignee obtains a tangible token representing the claim or<br>4. The junior assignee secures a novation from the obligor. | Florida follows the English Rule |
| Assignment of Contract Rights in Connection to a Home-Improvement Contract | | No holder shall sell, transfer, or assign any obligation in connection with a home-improvement contract or any evidence of indebtness thereunder to any person who is not authorized as a sales finance company<br><br>Notice of any assignment shall be sent to the owner immediately after the assignment is made. If notice is not given to the owner, then payment thereunder or tender thereof by the owner to the last known holder of such contract shall be binding upon any holder or assignee thereof |
| Statute of Frauds | A lease of real property must be in writing | In Florida, leases of real property that are less than one year are not subject to the Statute of Frauds.<br><br>Subscriptions for newspapers, periodicals, or other like matter must be in writing to be enforceable.<br><br>A writing is required to charge any healthcare provider upon any guarantee, warranty, or assurance as to the |

| | | |
|---|---|---|
| | | results of any medical, surgical, or diagnostic procedure performed by any doctor, dentist, chiropractor, or obstetrician |
| | | Home solicitation sales must be in writing. In a home solicitation sale, the seller must obtain the buyer's signature to a written agreement or offer to purchase which designates the date of the transaction and the date on which the buyer actually signed the contract. There must also be a statement of buyer's rights The statement must appear under the conspicuous caption, "BUYER'S RIGHT TO CANCEL" and read: "this is a home solicitation sale and if you do not want the goods or services, you may cancel this agreement by providing written notice to the seller in person, by telegram, or by mail. This notice must indicate that you do not want the goods or services and must be delivered or postmarked before midnight of the third business day after you sign this agreement. If you cancel this agreement, the seller may not keep all or part of any cash down payment." |
| | | Home improvement contracts must be in writing and contained in one or more documents between a home improvement finance seller and an owner for the performance of a home improvement. The contact must include all labor, materials, and services to be furnished when all or part of the contract price is to be paid in installments over a period of time greater than 90 days. |
| | | A credit agreement (an agreement to lend or forebear repayment of money) must be in writing, expressly note consideration, set forth the relevant terms and conditions and be signed by the creditor and the debtor to be enforceable. |
| Part Performance | Substantial performance will require the other party to perform (i.e. pay) permitting it to recover for any proven damages | Substantial performance will require the other party to perform (i.e. pay) permitting it to recover for any proven damages<br><br>**Construction Contracts Exception**<br><br>If the contractor intentionally failed to comply with the specifications, the owner is entitled to the cost of |

| | | making the work conform to the contract and specifications. |
|---|---|---|
| Anticipatory Repudiation | If a party contracting for services and materials tells the other party with executory duties that he will not perform, there is an anticipatory repudiation. The aggrieved party may then sue immediately for loss of bargain, recovery of money damages, or if the damages remedy is inadequate to place her or him in the position that they would have occupied had there been full and timely performance, the parry may sue in equity | If a party contracting for services and materials tells the other party with executory duties that he will not perform, there is an anticipatory repudiation. The aggrieved party may then sue immediately for loss of bargain, recovery of money damages, or if the damages remedy is inadequate to place her or him in the position that they would have occupied had there been full and timely performance, the parry may sue in equity

**Exception**

If the non-breaching party cannot show that he was able to perform any conditions precedent to performance, there is no claim to damages under the theory of anticipatory breach. |
| Impracticability | Can only be invoked if the party to fulfill its obligations, would have to incur extreme and unreasonable expense and difficulty which reasonable efforts could not surmount. | In Florida, the doctrine may be invoked when circumstances have made performance vitally different from what was anticipated when the parties entered into the contract |
| Statute of Limitations for Sale of Goods | UCC Section 2-725 permits the parties to agree upon a reasonable term, but not for less than one year, for the statute of limitations to run. If not mentioned in the agreement, the statute of limitations in 4 years. | The statute of limitations for a legal or equitable action on a contract, obligation, or liability founded on a written instrument or action to foreclose a mortgage is five years.

The statute of limitations for an action for injury to a person founded on the design, manufacture, distribution, or sale of personal property that is not permanently incorporated in an improvement to real property including fixtures, a legal or equitable action on a contract, obligation, or liability not founded on a written instrument, including an action for the sale and delivery of goods, wares, and merchandise, and on store accounts, or an action to rescind a contract is four years.

The statute of limitations for an action for specific performance of a contract or an action to enforce an equitable lien arising from the furnishing of labor, services, or material for the improvement of real property is one year |
| Sources of Law | The three sources of criminal law are statutes, the common law, and the Model Penal Code | The sources of Florida criminal law are the Florida Constitution and the body of statutory law written by the legislature as well as the common law of England down to July 4, 1776 – except where inconsistent with |

| | | the U.S. Constitution, the Florida Constitution, or Florida statutes |
|---|---|---|
| Types of Crimes | An infamous crime is a crime involving fraud or dishonesty | Florida statutes define and classify criminal penalties as:<br><br>Capitol Penalty: death or life imprisonment without parole<br>Life Felony: life imprisonment or 25 years imprisonment followed by life probation<br>Felony of the First Degree: imprisonment up to 30 years or when specifically provided, life imprisonment<br>Felony of the Second Degree: imprisonment up to 15 years<br>Felony of the Third Degree: imprisonment up to five years<br>Misdemeanor of the First Degree: incarceration of up to one year<br>Misdemeanor of the Second Degree: incarceration of up to 60 days<br><br>This applies to all noncapital felonies committed on or after October 1, 1998. |
| Injury to Fetus | A majority of the UBE states have concluded that the fetus must be born alive to be subject to homicide (this is also the common law rule). A minority of the states have found that the killing of a viable fetus constitutes a homicide. | In Florida, the killing of an unborn child is homicide in the same degree of murder or manslaughter which would have been committed against the mother. An unborn child is defined as a child at any stage of development **Commented [OH4]:** How can you get an abortion them??? |
| Homicide – Year and a Day Rule | At common law, if the victim died more than a year and a day from the defendant's act, a court would find that the defendant's act was not the proximate cause of the death. This rule has been abrogated in most states- | In Florida, the year and a day rule has been abrogated |
| Murder by Degrees | First degree murder is the killing of another individual with pre-meditation, felony murder, or murder after lying in wait, poison, or torture.<br><br>Second degree murder is any intentional killing that does not meet all the elements of first degree murder. | Florida defines murder in the first degree as the unlawful killing of a human being when perpetrated from a pre-meditated design to affect the death of the person killed or of any human being or when engaged in the commission of any of the following felonies:<br>1. Drug trafficking<br>2. Arson<br>3. Sexual battery<br>4. Robbery<br>5. Burglary<br>6. Kidnapping<br>7. Escape<br>8. Aggravated child abuse<br>9. Aggravated battery of the elderly or disabled<br>10. Aircraft piracy<br>11. Placing or discharging a bomb<br>12. Carjacking |

| | | |
|---|---|---|
| | | 13. Home invasion robbery<br>14. Aggravated stalking<br>15. Murder of another human<br>16. Resisting an officer with violence or<br>17. An act of terrorism<br><br>First degree murder is punishable as a capital felony by death or life imprisonment without parole.<br><br>Florida defines murder in the second degree as the unlawful killing of a human being when perpetrated by any act imminently dangerous to another and evincing a depraved mind regardless of human life, or when engaged in the commission or attempt to commit any of the enumerated felonies above by a person other than the person engaged in the perpetration or attempt to commit such felony. Second-degree murder is punishable as a felony of the first degree by imprisonment from 30 years to life.<br><br>Florida defines murder in the third degree as the unlawful killing of a human being when perpetrated without any design to effect death by a person engaged in the perpetration or attempt to perpetrate any felony other than those enumerated above. Third-degree murder is punishable as a felony of the second degree by imprisonment up to 15 years. |
| Felony Murder | Felony murder is a killing proximately caused during the commission or attempted commission of a serious or inherently dangerous felony. It includes both intentional and accidental killings. It also includes liability for the acts of one's accomplices.<br><br>Under the majority rule, there is no felony murder liability when a non-felon kills a felon or a bystander. Here, the rule is applicable only where the killing is committed by one of the participating felons.<br><br>Under the minority rule, felony murder incudes killings by non-felons such as a killing by a victim of a robbery, a bystander, or the police. Even among jurisdictions following the minority rule, some will not impose felony murder liability if the person killed was one of the felons while others follow the common law approach of including all resulting deaths within felony-murder liability. | Florida follows the MBE rule, but classifies felony murder as first degree, second degree, third degree, and attempted felony murder, and enumerates the particular felonies upon which the charge can be based (listed above).<br><br>In Florida, co-felons are liable for any homicide committed to further or prosecute the initial criminal design |

| Attempted Felony Murder | Attempted felony murder did not exist at common law and is not recognized in most states. | In Florida, a person who commits or attempts to commit one of the enumerated felonies above and who commits an intentional act that could, but does not, cause death is guilty of a felony of the first degree punishable by imprisonment of 30 years to life.<br><br>A person who commits or attempts to commit any felony other than one of those enumerated above and who commits, aids in, or abets an intentional act that is not an element of the felony and that could, but does not, cause death is guilty of a felony of the first degree punishable by imprisonment of 30 years to life.<br><br>When a person is injured during the commission or attempted commission of one of the felonies enumerated above by a person other than the person engaged in the commission or attempted commission of the felony, the person committing or attempting to commit the felony is guilty of a felony in the second degree, punishable by imprisonment up to 15 years. |
| Manslaughter | Involuntary manslaughter is unintentional killing caused by criminal negligence or the commission of an unlawful act. | Florida defines manslaughter as the killing of a human being by the act, procurement, or culpable negligence of another which is neither justifiable nor excusable homicide. Manslaughter is a felony in the second degree punishable by imprisonment up to 15 years.<br><br>If, in proving the case for manslaughter, the state also proves that the victim was an elderly or disabled adult, a child under 18, a law officer, firefighter, or paramedic, the crime is a felony of the first degree punishable by imprisonment of 30 years to life.<br><br>Under Florida law, manslaughter also includes the act of a person assisting another in the commission of self-murder [Commented [Office5]: Damn... really....] taking of one's own life. This is a felony of the second degree punishable by imprisonment up to 15 years.<br><br>Manslaughter also includes the unnecessary killing of another, either while resisting an attempt by such person to commit any felony, or while doing any unlawful act, or after such attempt has failed. This is a felony of the second degree punishable by imprisonment up to 15 years. |
| Assault and Battery | Assault is an attempted battery requiring the intention to physically harm the victim. | In Florida, assault is the intentional threat by word or act to do harm to another coupled with the apparent ability to do so, **and** doing some act that causes a well-founded fear in the victim that such violence is |

| | Battery is the intentional or reckless unlawful application of force to the person of the victim | imminent. Assault is a misdemeanor of the second degree punishable by up to 60 days in a county correctional facility.<br><br>Battery is the actual and intentional touching or striking of another against his will or intentionally causing bodily harm to another. Battery is a misdemeanor of the first degree punishable by incarceration up to one year in a county correctional facility. |
|---|---|---|
| Aggravated Assault and Battery | Most states have enhanced penalties for assault and battery involving serious injury or the use of weapons or deadly force. | In Florida, aggravated assault is an assault with a deadly weapon without intent to kill or with intent to commit a felony. This is a felony of the third degree punishable by imprisonment up to five years.<br><br>In Florida, battery is a felony of the third degree if the defendant causes great bodily harm or permanent disability or disfigurement, or has previously been convicted of battery, aggravated battery, or felony battery. Felony battery is punishable by imprisonment up to five years.<br><br>In Florida, aggravated battery is a battery when the offender intentionally and knowingly causes great bodily harm permanent disability or disfigurement, or uses a deadly weapon, or when the victim is pregnant and the offender knows of the pregnancy. Aggravated battery is a felony of the second degree punishable by imprisonment up to 15 years. |
| Mayhem | At common law, mayhem was a felony requiring intent to maim by dismemberment or disabling a body part. | Mayhem is not an offense in Florida. |
| False Imprisonment | False imprisonment is the intentional unlawful confinement of one person by another | In Florida, false imprisonment is the act of forcibly, by threat, or secretly confining, abducting, or restraining another without his consent. This is a felony of the third degree punishable by imprisonment up to five years.<br><br>A child under 13 is considered confined if he is held without the consent of his parent or guardian. If the victim is under 13 and is also a victim of aggravated child abuse, sexual battery, lewd conduct, prostitution, or exploitation, the crime becomes a felony of the first degree punishable by imprisonment of 30 years to life |
| Stalking | This offense is not tested on the UBE | In Florida, any person who willfully, maliciously, and repeatedly follows, harasses, or cyber stalks another is guilty of stalking a misdemeanor of the first degree. Stalking with a credible threat of death or injury, or in violation of an injunction or court order, or of a minor |

| | | |
|---|---|---|
| | | under 16 is aggravated stalking punishable as a felony of the third degree. |
| Carjacking | This offense is not tested on the UBE | A person taking the motor vehicle of another by force or violence is guilty of carjacking, a felony of the first degree. If a firearm or other deadly weapon is carried, punishment is up to life imprisonment, if no weapon is carried, punishment is up to 30 years' imprisonment |
| Home Invasion Robbery | This offense is not tested on the UBE | Robbing the occupants of a dwelling is a felony of the first degree. If a firearm or other deadly weapon is carried, punishment is up to life imprisonment; if no weapon is carried, punishment is up to 30 years imprisonment. |
| Voyeurism | This offense is not tested on the UBE | In Florida, a person who secretly observes another person in a place of expected privacy with lewd, lascivious, or indecent intent is guilty of voyeurism, a misdemeanor of the first degree punishable by incarceration of up to one year. The second conviction for voyeurism is a felony of the third degree punishable by up to five years imprisonment. |
| Video Voyeurism | This offense is not tested on the UBE | In Florida, a person who secretly records or broadcasts the image of another person, without her consent, in a place of expected privacy, for amusement, sexual gratification, or profit, is guilty of video voyeurism, a misdemeanor of the first degree punishable by incarceration of up to one year. The second conviction for video voyeurism is a felony of the third degree punishable by up to five years' imprisonment. |
| Lewd Assault on Children under 16 | This offense is not tested on the UBE | In Florida, lewd battery or sexual activity with a child between the ages of 12 and 16 is a felony of the second degree punishable by up to 15 years' imprisonment<br><br>Lewd molestation or touching the sexual parts of a child under 12 by a person over 18 is a life felony, of a child under 12 by a person under 18, or of a child between 12 and 16 by a person over 18 is a felony of the second degree, and of a child between 12 and 16 by a person under 18 is a felony of the third degree.<br><br>Lewd conduct toward, touching, or soliciting a child under 16 to commit a lewd act by a person over 18 is a felony of the second degree, and by a person under 18 is a felony of the third degree.<br><br>Lewd exhibition, masturbation, or exposure of sex organs to a child under 16 by a person over 18 is a |

| | | felony of the second degree, and by a person under 18 is a felony of the third degree. |
|---|---|---|
| | | Lack of chastity, consent by the victim, and ignorance of the victim's age are not defenses. |
| Computer Crimes | This offense is not tested on the UBE | Florida statutorily prohibits the use of computers to (1) violate intellectual property by modifying, destroying, taking, or disclose trade secrets or other data or private information; or (2) access, disrupt, deny, or damage any other computer, information system, or network |
| | | Either violation is a felony of the third degree. However, if either violation causes more than $5,000 in damage, is part of a scheme to defraud, or disrupts a governmental function, it is a felony of the second degree. |
| Child Pornography | This offense is not tested on the UBE | Florida statutorily prohibits the use of computers to (1) enter or transmit information to solicit sexual conduct or the visual image of such conduct with a minor or (2) seduce or solicit a person believed to be a child or the parent of a child to commit or consent to any illegal act or sexual conduct. Fla. Stat. 847.0135 |
| | | Either violation is a felony of the third degree. However, if a person committing either violation misrepresents his age or travels any distance in an attempt to complete the act, such person is guilty of a felony of the second degree. |
| | | Florida also prohibits the use of computers to transmit child pornography and makes such violation a felony of the third degree. Fla. Stat. 847.0137 |
| Perjury | This offense is not tested on the UBE | Florida statutorily prohibits the making of a false material statement under oath or affirmation. Fla. Stat. 837.011 |
| | | Perjury, if committed in an official proceeding related to a capital felony, is a felony of the second degree. Perjury committed in any other official proceeding is a felony of the third degree. |
| | | Perjury committed in a non-official proceeding is a misdemeanor of the first degree. |
| Driving Under the Influence | This offense is not tested on the UBE | Florida forbids a person o drive or be in actual physical control of a vehicle when under the influence of alcohol or any chemical or controlled substance to the extent the person's normal faculties are impaired. |

| | | Penalties begin with a fine and incarceration up to six months for the first offense, and incarceration up to nine months for the second offense. The third conviction is a felony of the third degree, and each subsequent conviction carries the possibility of felony imprisonment, increased fines, restrictions on liberty, and mandated drug or alcohol treatment. Fla. Stat. 316.193 |
| Duty to Report Sexual Battery | This offense is not tested on the UBE | With the exception of a victim and close relatives of the victim or offender, Florida law imposes a duty to report an observed sexual battery and makes failure to report a misdemeanor of the first degree. Fla. Stat. 794.027 |
| Sexual Activity Between Minors and Custodians | Use of a position of authority, custody, or control over a minor to take sexual advantage of the minor is generally an aggravating factor and enhances penalties | Sexual activity between a child under 18 and an adult in familial or custodial authority is prohibited. Solicitation of such activity is a felony of the third degree punishable by up to five years' imprisonment. Engaging in a sex act with a child between 12 and 18 is a felony of the first degree punishable by up to 30 years' imprisonment. Engaging in a sex act with a child under 12 is a capital felony punishable by life imprisonment without parole |
| Bigamy – Defenses | This is not tested on the UBE | In Florida, bigamy charges cannot extend to any person who reasonably believes their prior spouse is dead whose prior spouse deserts and remains continuously absent for three years with no indication that she is alive whose marriage has been dissolved who remarries, believing that the prior marriage was legally dissolved when it was not or who reasonably believes she is free to remarry |
| Solicitation | At common law, solicitation applied only to felonies and misdemeanors of obstructing justice or breach of the peace The crime of solicitation occurs when a person requests, invites, hires, or encourages another to commit a crime. At common law, the offense was completed when the solicitation is made, and there was no defense. | Florida statutes extend solicitation to all crimes both felonies and misdemeanors A person commits criminal solicitation when she commands, hires, encourages, or requests another to commit or attempt to commit a crime. Solicitation is generally punished as the next lesser punishment of the crime solicited. It is a defense to criminal |

| | | |
|---|---|---|
| | | solicitation to completely and voluntarily renounce the crime by persuading the other person not to commit it or to prevent its commission. |
| Attempt | The crime of attempt occurs when a person forms the specific intent to commit a crime and makes a significant overt act to accomplish that intent. At common law, the crime was complete when the defendant committed the last act necessary to achieve the desired result. At common law, only legal impossibility was a defense. | Florida defines the crime of attempt as doing any act toward the commission of an offense but having it fail, be intercepted or prevented. It also specifically includes the act of an adult to allure, seduce, coax, or induce a child under the age of 12 to commit a crime. The attempted crime is generally punished as the next lesser punishment of the crime attempted. |
| Conspiracy | Conspiracy is an unlawful criminal combination wherein two or more people agree to commit an unlawful act.<br><br>The majority rule is that an overt act in furtherance of the conspiracy is required for conspiracy liability. This prevailing view reflects a change from the traditional common law rule, which had no such requirement. | In Florida, the crime of conspiracy occurs when two or more persons agree, conspire, combine, or confederate to commit any offense.<br><br>Overt acts in furtherance of a criminal conspiracy do not have to be alleged or proved. State v. Mena, 471 So. 2d 1297. |
| Conspiracy – Defenses | The general rule is that withdrawal is not recognized as a valid defense to conspiracy because the conspiracy is complete as soon as the parties agreed to commit the crime and an overt act is committed.<br><br>Withdrawal may cut off further liability for crimes committed in furtherance of the conspiracy if the withdrawing conspirator communicates his withdrawal to each of the co-conspirators.<br><br>Under the Model Penal Code, withdrawal by a co-conspirator may be a valid affirmative defense to the charge of conspiracy itself where the renouncing party gives timely notice of his plans to all members of the conspiracy and performs an affirmative act to thwart the success of the conspiracy. | In Florida, it is a statutory defense to criminal conspiracy to persuade the co-conspirators not to commit the offense or to otherwise prevent its commission. Fla. Stat. 777.04(5)(c). |
| Result of Acquittal of Co-Conspirators | The common law rule, followed by the majority of jurisdictions, is that no conspiracy exists if only one of the conspirators truly agrees and the other conspirators feign agreement (i.e. there must be a meeting of at least two guilty minds).<br><br>The Model Penal Code, however, follows the unilateral approach to conspiracy and dispenses with the requirement that two people actually agree. Under the unilateral approach, all of the co-conspirators having feigned agreement or having been acquitted will not alone prevent a defendant from a conviction for conspiracy. | Florida follows the Model Penal Code Rule, allowing conviction of a person who agrees or conspires to commit an offense. |
| Accomplice Liability - Intent | An accomplice is liable when he intentionally aids the principle to a crime. | Florida has abolished separate liability between a principle and an accessory. A person who aids, abets, |

| | | counsels, hires, or procures is a principle of the first degree. |
|---|---|---|
| Criminal Liability | The principle of the first degree is the criminal actor. The principle of the second degree is a person who intentionally assists in the criminal act. An accessory before the fact is a person who assists in the criminal act but is not present when it is committed.<br><br>An accessory after the fact is a person who assists the actor to avoid arrest, trial, or conviction. | Florida has statutorily abolished principal of the second degree and accessory before the fact. They are included in the definition of principal of the first degree, which states "whoever commits, aids, abets, counsels, hires or otherwise procures an offense or its attempt. The defendant does not have to be present when the crime is committed or attempted to be considered a principal.<br><br>An accessory after the fact is any person unrelated within two degrees of consanguinity or affinity who assists the principal to avoid detection, arrest, trial, or punishment, or assists in any way a principal who murders, abuses, or neglects a child unless that person is a victim of domestic violence. |
| Insanity | Insanity precludes criminal responsibility. The four tests are: the M'Naghten test, the irresistible impulse test, the Durham Rule, and the Model Penal Code test | Florida has adopted the M'Naghten test. Here, insanity is proved when the defendant has a mental disease, defect, or infirmity; and because of this condition, the defendant did not know what he was doing or its consequences or although he knew what he was doing he did not know that it was wrong. |
| Insanity – Use of Non-Expert Testimony | Lay testimony of insanity is generally allowed as a supplement to expert opinion. | Relevant testimony, both expert and lay, is admissible on the issue of insanity. Lay testimony must be based on recent personal knowledge. See *Garron v. State*, 528 So. 2d 353 (Fla. 1988); *Strausser v. State*, 682 So. 2d 539 (Fla. 1996). |
| Procedural Issues | Commitment of an insane defendant may continue until he recovers or is found non-dangerous. | After commitment, an initial report of the defendant's mental status is made to the committing court in six months. Annual evaluations and reports are required thereafter. The court may transfer the defendant to outpatient treatment when appropriate. |
| Diminished Capacity | The Model Penal code allows evidence of diminished capacity to negate *mens rea*.<br><br>Most states do not allow diminished capacity as a defense, but allow courts to consider it in mitigation of punishment. | Florida follows the general rule that diminished capacity is not a defense. The sole exceptions involve battered spouse syndrome, admission of evidence of diminished capacity to prove lack of specific intent, and admission of evidence of hallucinations or delusions after a person is found sane under the M'Naghten test. |
| Infancy | | |
| Justification | Self-defense is justified when a person reasonably believes she is in imminent danger or death or great bodily harm.<br><br>Use of force is justified where necessary to defend a third person facing immediate and wrongful deadly attack. | Florida follows the majority rule on self-defense. The state, however, does not maintain a duty to retreat and adopts the general presumption that a threatened person to use deadly force in their own or another person's defense. |

| | | |
|---|---|---|
| | Reasonable, non-deadly force is justified in defending property from theft, destruction, or trespass. | Use of force is justified to protect another person or real or personal property. Deadly force is justified only to prevent imminent commission of an forcibly felony. |
| Use of Force to Resist Unlawful Arrest | A defendant may use reasonable, non-deadly force to resist an unlawful arrest. | Under Florida law, a person detained by law enforcement is not permitted to use force, even to resist an unlawful arrest |
| Law Officer's Use of Deadly Force to Stop a Fleeing Felon | Deadly force is allowed if a law officer reasonably believes it necessary to make an arrest of a violent felony or to prevent escape of a suspect likely to kill or harm others. | In Florida, an officer is justified in the use of any force including deadly force:<br><br>To defend herself when making an arrest and<br><br>In capturing a fleeing or escaped felon or to prevent such escape when the officer reasonably believes the felon poses a threat of death or great bodily harm to others. |
| Entrapment | The entrapment defense arises when a person not predisposed to commit a crime is drawn into the act by law enforcement. | In Florida, the entrapment defense is codified by statute. The defendant claiming the defense must meet the burden of proving the inducement of a government agent to commit the act, thus proving the defendant's lack of disposition. The burden then shifts to the state to prove the fact of predisposition of intent beyond a reasonable doubt. |
| Burden of Proof | The prosecution has the burden of persuasion to prove every element of a crime beyond a reasonable doubt.<br><br>The defense has the burden of persuasion to prove affirmative defenses by a preponderance of the evidence. | Florida follows the MBE rules except where abrogated by statute (e.g., in asserting the insanity defense, the defense must give notice and present "clear and convincing evidence" to overcome the presumption of sanity. |
| Saving Provisions | Saving provisions are commonly used to preserve parts of statutes from repeal or judicial overrule. | Florida legislatures often use a saving provision where judicial review of a new statute is likely. See, e.g., Fla. Stat. 775.082 |
| One Transaction, Multiple Convictions | Multiple convictions are allowed for a single transaction involving crimes with different elements. | The Florida legislature intends that conviction be imposed for each crime committed in a transaction, provided each offense requires proof of an element that the other does not. |
| Liability for Defects on Property | A seller of a residential home has a duty to disclose to the buyer material latent defects known to the seller but not readily observable and not known to the buyer. Generally, the duty applies only to commercial builders and developers of new residential homes | The Florida Supreme Court has held that any seller of new or used property has a duty to disclose facts materially affecting the value of the property which are not readily observable and are not known to the buyer. Failure to disclose is fraudulent concealment. |
| Fee Simple | A fee simple absolute is generally presumed when the words "to A" are used | Under Florida law, if a conveyance lacks words of limitation, it will be construed to create a fee simple in the absence of words to the contrary. |
| Fee Tail | The fee tail has been abolished or modified in most UBE jurisdictions. | In Florida, any instrument that purports to create a fee tail is deemed to create a life estate in the first taker with a remainder per stripes to her lineal descendants in being at the time of her death. |

| | | |
|---|---|---|
| Transfer of Possibilities of Reverter and Rights of Entry | A possibility of reverter is transferable, devisable, and descendible. All UBE states agree that a right of entry is descendible, a majority of UBE jurisdictions agree that a right of entry is devisable, and some courts hold that a right of entry is not transferable inter vivos | Under Florida law, a possibility of reverter and a right of entry may be transferred inter vivos, may descend, and may be devised. |
| Durability of Reverters and Forfeiture Provisions | Possibilities of reverter are not subject to the common law rule against perpetuities. | Under Florida law, reverters and forfeiture provisions are void and unenforceable after 21 years. However, conveyances of realty to governmental, educational, or other charitable organizations are expressly excepted from the 21 year limitation. |
| Destructibility of Contingent Remainders | The destructibility rule has been abolished in almost every single UBE jurisdiction. | Florida recognizes the doctrine of destructibility of contingent remainders for transfers of real property. |
| Rule in Shelley's Case | Under the rule in Shelley's Case, if O conveys "to A for life, remainder to the heirs of A," A receives both a life estate and a remainder, and by merger; A gets a fee simple (and thus A's heirs take nothing on their own). The Rule in Shelley's Case has been abolished by statute or judicial decision in most states. | Florida has abolished the Rule in Shelley's Case. When a conveyance is made to "A for life, remainder to A's heirs" A receives a life estate with a remainder per stirpes in A's lineal descendants in being at the time the life estate commences. |
| Doctrine of Worthier Title | Under the doctrine of Worthier Title, if O conveys "to A for life, remainder to the heirs of O," the remainder in the heirs of O is converted into a reversion in O. Under modern law, the Doctrine of Worthier Title applies to *inter vivos* transfers only. | In Florida, the doctrine of worthier title has been abolished. |
| Rule Against Perpetuities | No interest is good unless it must vest, if at all, no later than 21 years after some life in being at the creation of interest. | Under Florida's Statutory Rule Against Perpetuities, a gift is good if it either satisfies the common law rule or it actually vests or fails within 90 years of its creation.<br><br>For a non-vested interest created in a trust after December 31, 2000, the statutory period has been extended to   Commented [OH6]: Wtf??????<br><br>An honorary trust may be created for the care of an animal alive during the settlor's lifetime. The trust will terminate on the death of the animal. If the trust is established to care for more than one animal alive during the settlor's life, the trust will terminate on the death of the last surviving animal.<br><br>An honorary trust for the maintenance of a public or private burial ground is not subject to the Rule Against Perpetuities.<br><br>The Rule Against Perpetuities does not apply to charitable trusts. The Florida Statutory Rule Against Perpetuities also expressly recognizes the charity-to-charity exception to the Rule Against Perpetuities. |

| | | |
|---|---|---|
| Restraints on alienation | At common law, disabling restraints are always void. Forfeiture restraints are valid for life estates and future interests, but they are not enforceable for fee simple estates. Promissory restraints are valid for life estates and future interests, but they are not enforceable for fee simple estates. | Florida courts have traditionally determined the validity of restraints by measuring them in terms of their duration, type of alienation precluded, or the size of the class precluded from taking. Some Florida courts, however, will uphold a reasonable restraint in a commercial transaction on the theory that, when one appears in an agreement, if it is the product of their bargaining, and thus presumably serves a useful purpose in facilitating the parties' objectives. |
| Required Unities for Creation of Joint Tenancy | Under the traditional rule, a sole owner of property cannot create a joint tenancy between himself and another person by conveying a joint interest directly to the other person. Instead, the owner must convey the property to a strawman, who then conveys the property back to the owner and the other person as joint tenants. Some jurisdictions now do not require the unities of time and title. Under this approach, a strawman is no longer required to create a joint tenancy. Instead, a sole owner may create a joint tenancy between herself and another person by conveying a joint interest directly to the other person. | At least one Florida District Court of Appeals has challenged the four unities requirement. That court suggested that a sole owner does not have to use a straw to create a joint tenancy between herself and another. However, the Florida Supreme Court has not affirmed that position. |
| Words of Survivorship | Traditionally, the following words are required to create a joint tenancy "to A and B as joint tenants and not as tenants in common, with full right of survivorship." | In Florida, for a joint tenancy to exist, express words of survivorship in the document creating the joint tenancy |
| Effect of Mortgage by One Joint Tenant | In a tittle theory state, the execution of a mortgage severs a joint tenancy. Most jurisdictions no longer follow the title theory. In a lien theory state, no severance occurs when the mortgage is made. However, in a lien theory state, foreclosure will sever the joint tenancy. Most jurisdictions now follow the lien theory. | Florida follows the lien theory for mortgages. A mortgage by one joint tenant will not sever a joint tenancy unless and until a foreclosure proceeding is instituted. |
| Effect of Lease by One Joint Tenant | UBE jurisdictions are split on whether a lease severs a joint tenancy. | Florida courts have not addressed the effect on a joint tenancy of a lease by one of the joint tenants. |
| Severance of Joint Tenancy by Joint Tenant's Conveyance to Himself | At common law, a joint tenancy is severed if any tenant conveys his interest | In Florida, the Second District of Appeal has held that a joint tenant may sever joint tenancy by conveying his interest to himself. |
| Creation of Tenancy by the Entirety between Married Persons | Most UBE states have enacted statutes to create a presumption of tenancy by the entirety if a conveyance is made to a husband and wife, even if they are not identified as husband and wife in the deed. | A tenancy by the entirety will be presumed if a conveyance of real property or a transfer of personal property is made to a husband and wife, even if they are not identified as a married couple in the document of transfer.

A sole owner of property may create a tenancy by the entirety with his spouse by conveying a one –half interest in the property directly to the spouse, without the use of a straw man |

| | | A mortgage or an assignment of a mortgage given to a husband and wife presumptively creates a tenancy by the entirety. |
|---|---|---|
| Attempted Unilateral Conveyance by One Tenant by the Entirety | In the states that continue to recognize the tenancy by the entirety, an attempted conveyance by either spouse is wholly void. | In Florida, neither spouse may convey or encumber her interest voluntarily or involuntarily. |
| Statute of Frauds | The Statute of Frauds requires a writing for a transfer of an interest in real property. A writing generally is required by the Statute of Frauds for a lease term of more than one year | In Florida, a writing is required for a contract for the sale of land. |
| Liability for Defects on Property | A seller of a residential home has a duty to disclose to the buyer the material latent defects known to the seller but not readily observable and not known to the buyer. Generally, the duty applies only to commercial builders and developers of new residential homes. | The Florida Supreme Court has held any seller of new or used property has a duty to disclose facts materially affecting the value of the property which are not readily observable and are not known to the buyer. Failure to disclose is fraudulent concealment. |
| Deed Formalities | A deed must be in writing and signed by the grantor | In Florida, no freehold interest in land may be created unless there is writing signed by the grantor in the presence of two subscribing witnesses.<br><br>This subscription requirement applies to deeds and conveyances, it does not apply to contracts for the sale of land. |
| Marketable Title – Visible Public Easement | Marketable title is title that is reasonably free from doubt | In Florida, a visible public easement does not render title unmarketable for the purposes of enforcement of an option contract for the sale of land. |
| Risk of Loss | At common law, the risk of loss is on the buyer on execution of a binding contract for sale of real property. The common law rule is the rule in the majority of UBE states. Under, however, the Uniform Vendor and Purchaser Risk Act, the risk of loss is placed on the seller, unless the legal title or possession of the property has passed to the buyer. | In Florida, the risk of loss is placed on the purchaser on the execution of a binding contract for the sale of land |
| Buyer's Breach of Contract of Sale | If the contract does contain a liquidated damages clause, most courts permit the seller to retain the down payment if the clause is found to be reasonable. Traditionally, if the buyer breaches, the seller may elect to retain the entire amount of the down payment, even in the absence of a liquidated damage provision. Most courts now restrict the traditional rule to a down payment that equals 10% or less of the purchase price. | In Florida, if the buyer breaches a contract for the sale of land that includes a liquidated damages clause, the clause will be enforceable if it is reasonable. |
| Warranty Deeds | A general warranty includes the following warranties: seisin, right to convey, against encumbrances, quiet enjoyment, and further assurances. | In Florida, a general warranty deed contains the full common law warranties. |
| Breach of Covenants in Warranty Deed – Visible Easement | UBE jurisdictions are split on whether a visible or known encumbrance breaches the covenant against encumbrances | In Florida, a visible encumbrance presumptively does not breach the covenant of warranty in a warranty deed |
| Proof of Oral Conditions Attached to Deed Delivered to Grantee | In most UBE states, if delivery has been made to the grantee with an oral condition, the conveyance is valid, but the oral condition falls off. Under the minority rule, if delivery has | Florida is one of the few jurisdictions that allows proof of an oral condition attached to a deed that is delivered to the grantee |

94

| | been made to the grantee with an oral condition, the conveyance is void.<br><br>In a few UBE jurisdictions, if delivery has been made to the grantee with an oral condition, the conveyance is valid and the oral condition may be proved. | |
|---|---|---|
| Lease for a Term Greater than one Year | A writing generally is required by the Statute of Frauds for a term of more than one year. | In Florida, a writing is required for a lease for more than one year. The writing must be signed by the lessor in the presence of two subscribing witnesses. |
| Termination of Tenancy with a Specific Duration | Absent a lease provision to the contrary, no notice is required to terminate a lease for a set term. | In Florida, a lease for a set term may include a provision requiring the tenant to give notice before vacating the premises at the end of the term. Such notice may not be required more than 60 days before the end of the term. |
| Nonresidential Tenancy at Will – Notice Required to Terminate | At common law, either party may instantly terminate a tenancy at will. | In Florida, the term 'tenancy at will' describes a nonresidential tenancy that is not embodied in a writing signed by the lessor, or that had periodic rent payments and no set termination date. To terminate this tenancy at will, a party must give the following notice:<br>1. Year-to-Year: Not less than three months' notice before the end of an annual period<br>2. Quarter-to-Quarter: Not less than 45 days' notice prior to the end of a quarter.<br>3. Month-to-Month: Not less than 15 days' notice before the end of a month.<br>4. Week-to-Week: Not less than seven days' notice before the end of a week. |
| Residential Periodic Tenancy – Notice to Terminate | A periodic tenancy has a set beginning date and continues from period to period (e.g., from month to month) without a set termination date until proper notice is given. Under the traditional rule, a periodic tenancy could be terminated only on the anniversary date. Improper notice was deemed ineffective, and the notice period was measured by the rent reservation clause. Under the modern statutory approach, termination may take place on any date, and the notice period is measured by the rent payment clause. | In Florida, to terminate a periodic residential tenancy, a party must give the flowing notice:<br>1. Year-to-Year: Not less than 60 days' notice before the end of an annual period.<br>2. Quarter-to-Quarter: Not less than 30 days' notice prior to the end of the quarter.<br>3. Month-to-Month: Not less than 15 days' notice before the end of the month<br>4. Week-to-Week: Not less than seven days' notice before the end of a week. |
| Holdover Tenant | If a residential tenant takes over, in most UBE states, the lessor may recover possession and may receive double rent for the holdover period | Florida law permits the lessor to institute summary eviction proceedings against the holdover tenant and to recover double rent for the holdover period from either a residential or non-residential tenant. |
| Lessee's Duties | At common law, a tenant has a duty to pay rent and not to commit waste | In Florida, in addition to promises made in the lease, a residential lease has a statutory duty to:<br><br>1. Comply with the health code<br>2. Keep the premises clean |

| | | |
|---|---|---|
| | | 3. Keep plumbing in good repair<br>4. Remove garbage<br>5. Use plumbing and electrical equipment carefully<br>6. Refrain from disturbing neighbors and<br>7. Not destroy the premises |
| Lessor's Access to Premises | Not tested on the UBE | In Florida, if a lessor brings an action to reclaim possession of property subject to a nonresidential lease, the lessee must pay into the court registry the amount of the rent that the lessor claims or that the court determines is unpaid, plus rent that accrues during the pendency of the action, unless the lessee asserts the defense of payment or satisfaction of the sums allegedly due. |
| Payment of Rent into Court Registry when Lessor Brings an Action to Reclaim Possession of Property Subject to a Nonresidential Lease | Absent specific provisions in the lease, a lessor may enter the premises to collect rent. | In Florida, the lessor may not unreasonably withhold consent to the lessor's entry onto the leased premises to inspect, make repairs and improvements, supply agreed services, or show the premises to potential purchasers, mortgagees, lessees, workers, or contractors. |
| Delivery of Possession | The majority (English) rule requires delivery of actual and legal possession. The minority (American) rule requires delivery of the legal right to possession only. | Florida follows the English Rule, which requires the lessor to deliver both actual and legal possession to the lessee at the beginning of his term. |
| Lessor's Statutory Duties | The lessor must deliver possession of the premises, allow the lessee quiet enjoyment of the premises, and maintain the premises as habitable. | In Florida, the lessor has the following statutory duties covering:<br><br>1. Extermination<br>2. Locks and keys<br>3. Clean and safe common areas<br>4. Garbage removal and<br>5. Heat, running water, and hot water<br><br>The lessor is also responsible for repairs to the structure. These duties may be altered or modified in a writing in respect to a single-family home or duplex. |
| Constructive Eviction | A lessee may treat the lease as terminated and withhold rent if the lessor breaches the covenant of quiet enjoyment by constructively evicting the lessee. To assert a claim of constructive eviction, the lessee must move out of the premises. | Under Florida law, a lessee must move out to claim constructive eviction. |
| Warranty of Habitability | Under the modern trend, the lessor is deemed to have warranted impliedly that residential premises are fit for habitation. | Florida has a statutory warranty of habitability for residential leases. |
| Summary Eviction Proceedings | To evict a tenant for breach of the lease, the landlord must give the tenant notice that requires the tenant to cure the breach or to vacate. | If a lessor-lessee relationship exists between the parties, the lessor may remove the lessee through an action for summary eviction filed in the county court. If the lessee wrongfully holds over, the lessor may |

| | | commence a summary eviction proceeding by filing a complaint in the county court. |
|---|---|---|
| | | If the lessor wins the summary eviction proceeding, she may obtain possession from the sheriff after posting a 24-hour notice on the property and providing the lessee 24 hours to vacate the premises. |
| Summary Eviction Proceedings – Lessee's Defenses | The tenant generally may not raise a counterclaim as a defense to a summary eviction proceeding. | In an action by the lessor for possession based on nonpayment of rent or in an action by the lessor to recover unpaid rent, the lessee may defend that the lessor materially failed to comply with his duty to maintain premises or may raise any other defense, legal or equitable, that he may have, including retaliatory eviction. |
| Breach of Lessee's Duty | If the lessee fails to pay rent or commits another material breach of the lease, the lessor may seek to evict the lessee or to recover damages for the lessee's breach | If the lessee fails to pay rent when it is due and the default continues for three days – not counting the weekend or legal holidays – after delivery of a written demand for payment of rent or possession, the lessor may terminate the rental agreement. The written demand may be served on the lessee personally, by mail or delivery, or by posting on the premises if the lessee is absent. If the lessee does not act by the end of the three-day notice period, the lessor may commence a summary eviction proceeding in the county court. |
| | | If the lessee fails to perform other lease duties and the failure cannot be cured, the lessor may notify the lessee in writing that the lessee must vacate the premises within seven days. |
| Lessee's Abandonment of the Premises | Traditionally, if the lessee abandons the premises, the lessor may<br><br>1. Retake the premises when the lessee abandons<br>2. Ignore the abandonment and continue to hold the tenant liable for rent or<br>3. Reenter and relet the premises for the lessee | In Florida, abandonment may be presumed from absence from the premises for 30 consecutive days coupled with nonpayment of rent. If the lessee abandons or if the lessee breaches and the lessor obtains a writ of possession, the lessor may<br><br>1. Repossess for his own account giving up his right to rent<br>2. Wait and sue as rent comes due or<br>3. Reenter the premises on behalf of the lessee holding the lessee liable for any loss. |
| Self-Help | | Florida does not permit self-help in a landlord-tenant relationship |
| Distress | At common law, a land lord could seize the tenant's goods and hold the goods until the tenant paid rent in default. | In Florida, distress may not be used to recover rent due for a residential tenancy. However, distress may be used to collect rent due in a nonresidential tenancy |

| Waiver of Lessor's Right to Evict Nonresidential Lessee for Breach of Duty to Pay Rent | Not tested on the MBE | In Florida, if a lessor accepts full payment of past due rent from a nonresidential lessee with knowledge of the lessee's breach of the lease by nonpayment of rent, the lessor waives the right to evict the lessee for the nonpayment of that rent |
|---|---|---|
| Holding of Security Deposit | In most UBE states, a lessor is not required to keep security deposit funds separate from his own funds, nor to pay interest to the lessee on his security deposit. | In Florida, a lessor must hold a security deposit in a separate account for the benefit of the lessee. The account may be either interest bearing or non-interest bearing. If the account is interest-bearing, the lessor must pay interest to the lessee at either 75% of the annualized average interest rate on the account or 5% interest<br><br>A security deposit may not be comingled with the lessor's own funds, and the lessor may not make use of the security deposit until the money is actually due to the lessor. Within 30 days of his receipt of a security deposit, the lessor must notify the lessee in writing of the manner in which the security deposit is being held. |
| Return on Security Deposit | A security deposit may be retained by a lessor only to the extent necessary to cover actual loss that the deposit was intended to secure. | In Florida, if a lessor does not intend to make a claim on a security deposit, the lessor must return the deposit (with applicable interest) to the lessee within 15 days of the lessee's vacation of the premises. If the lessor intends to make a claim against a security deposit, the lessor must notify the lessee in writing by certified mail within 30 days of the lessee vacating the premises. The lessee must object to the lessor's claim within 15 days after he receives the lessor's notice. If the lessee fails to object within 15 days, the lessor may deduct his claim from the deposit and then must return the balance to the lessee within 30 days after the date of the notice of intent to make a claim. |
| Assignments and Subleases | On the UBE, an assignment occurs when the lessee transfers to a third person all of his right, title, and interest in the leased premises. A sublease occurs when the lessee transfers to a third person less than all of his right, title, and interest in the leased premises. | In Florida, when a lease transfers his interest in leasehold premises, the retention of a right of re-entry does not by itself create a sublease. |
| Rule in Dumpor's Case | Under the Rule in Dumpor's Case, once waived, a covenant against assignment is unenforceable as to the next assignment. The Rule in Dumpor's Case does not apply to subleases. | Florida courts have not addressed the continued viability of the Rule in Dumpor's Case |
| Due-on-Sale Clause | On the UBE, a due-on-sale clause may be included, requiring the mortgage balance due to be paid before transfer of the title. | In Florida, a due-on-sale clause is enforceable in Florida, even without a showing of impairment of security. |
| Lien Theory | The jurisdictions are split on the nature of the interests held by mortgagor and mortgagee after execution of the | In Florida, a mortgage is treated as a lien only. |

| | mortgage deed. With different states adopting the title, lien, and intermediate theories. | |
|---|---|---|
| Maturity Date | | In Florida, if a mortgage's maturity date cannot be ascertained from the mortgage documents, the mortgage lien will last for 20 years from the date of the mortgage, unless the obligation is re-recorded with the mortgage. |
| Statute of Limitations for Foreclosure | | In Florida, a suit to foreclose on a mortgage must be brought within five years after the right accrues. |
| Deficiency Judgment | On the UBE, if the proceeds of a foreclosure sale are not sufficient to cover the liens foreclosed, the mortgagee/creditors(s) may obtain a deficiency judgment against the mortgagor personally based on the note. | In a Florida foreclosure suit, the entry of a deficiency judgment is within the discretion of the court. The mortgagee may also maintain a common law action to recover the deficiency, unless the mortgage was a purchase money mortgage and the mortgagee purchased at the foreclosure sale and was granted a deficiency judgment. |
| Purchase-Money Mortgage | On the UBE, a purchase money mortgage is given priority over a lien that attaches to the property through actions of the purchaser/mortgagor, even if the lien was recorded first. | In Florida, a mortgage may be used in part for the purchase of the property and for other purposes. In such a case, the portion used to purchase the property may be given priority as a purchase-money mortgage. |
| Installment Land-Sale Contract | On the UBE, if the buyer defaults on an installment land-sale contract, the contract usually provides for forfeiture of all installments paid, allowing the lender to retake the property However, some states do require a foreclosure proceeding for an installment land-sale contract. | In Florida, an installment land-sale contract will be treated like a mortgage, and the safeguards for the debtor and the remedies for the creditor are the same as those for a mortgage. |
| Recording Statutes | On the UBE there are three kinds of recording statutes: race, notice, and race-notice | Florida has a notice recording statute. Recordable documents include conveyances, transfers, mortgages of real property, and leases for a term of one year or longer. To be recorded, a deed must be acknowledged or proved by a subscribing witness |
| Marketable Title Act | On the UBE, a marketable title provides a cut-off point which limits the time period during which a subsequent purchaser is required to search the records. The cut-off point is fixed by identifying a deed that has been of record for the required period, which is usually 30 or 40 years. Any interest that is not recorded or refiled within the required period is extinguished. | Under Florida's Marketable Title Act, an interest in land is not enforceable if it has not been recorded or refiled within 30 years of the root of title. |
| Extended Search – Deeds from Common Grantor | | Florida does not require a search that extends to deeds from a common grantor. |
| Claim Under Color of Title | On the UBE, the time period required for adverse possession may be shortened when the adverse possessor claims under color of title. | In Florida, if an adverse possessor has color of title, he must show that the land has been cultivated, improved, or enclosed. If the land is not enclosed, the possessor must show that it is used for food, timber, or for the ordinary use of the possessor. The adverse possessor may also satisfy the statute if he shows that the land is partially improved and it is part of a farm. |

| | | |
|---|---|---|
| Claim Not Under Color of Title | On the UBE, color of title is generally not required for adverse possession. | In Florida, if the claimant does not have color of title, the possessor must show that the property has been protected by substantial enclosure or has been usually cultivated or improved. Payment of taxes is also required if the adverse possessor does not have color of title. |
| Mistaken Boundaries | Under the objective majority view for mistaken boundaries, possession is hostile so long as the possessor intends to claim the land as his own, even if the possessor is unsure as to the location of the boundary. Under the subjective minority view for mistaken boundaries, the possessor must actually know that he has crossed over the boundary. | In Florida, adverse possession is established when the occupant takes possession with the belief that the land is up to the mistaken boundary and holds a claim of title to that line. |
| Statute of Limitations for Adverse Possession of Real Property | At common law, occupation for 20 years was required for a claim of adverse possession. | The statute of limitations for adverse possession of real property is seven years. |
| Statute of Limitations for Adverse Possession of Personal Property | | In Florida, the statute of limitations for the recovery of personal property is four years. Florida does not generally apply the discovery rule to causes of action to recover personal property. Thus, the cause must be brought no later than four years after the cause of action accrues. The discovery rule is applied if the cause of action to recover possession of personal property is based on fraud. The 12-year statute of repose, though, applies to all actions based on fraud. |
| Tolling | On the UBE, for the statute of limitations to be tolled, a disability must be in existence at the time of the adverse possessor enters. Disability typically includes of nonage, legal incompetence, and imprisonment. Most states extend the time to bring an action to a certain period after the disability has been removed. | In Florida, the running of time under the statute of limitations is tolled by the adjudicated incapacity, before the cause of action accrued, of the person entitled to sue. However, the action must be begun within 7 years after the act giving rise to the cause of action. The statute of limitations is also tolled by the minority of the person entitled to sue in the absence of a parent or guardian ad litem. However, the action must be begun within seven years after the act, event, or occurrence giving rise to the cause of action. In addition, the statute of limitations is tolled if the person sued is absent from the state or service of process cannot be made on him. |
| Riparian Rights | On the UBE, the reasonable use test for riparian waters is the majority rule. | Florida follows the reasonable use test for riparian rights. |
| Percolating Waters | On the UBE, the rules governing the use of percolating ground water vary from state to state. Under the English absolute ownership doctrine, a possessor of land may take as much of the water percolating under his land as he desires. Some states apply the reasonable use test to percolating underground water. A few states use a correlative rights test, which provides that all owners of land situated over a pool of underground water have equal rights to use the water. In | Under the F... of percolating water by an individual for domestic use does not require a permit. However, a permit may be required for other uses of percolating water. |

Commented [OH7]: Pretty vague.... at least these problems are being identified early....

100

| | some states, prior appropriation statutes have been enacted to govern the use of percolating underground water. | |
|---|---|---|
| Easements in Gross | On the UBE, an easement in gross is personal in nature resulting in a servient but not a dominant estate. | Under Florida law, an easement in gross is considered to be personal to the original holder. |
| Negative Easement of View | On the UBE, four types of negative easements have been recognized: light, air, water, and lateral and subjacent support. | Florida recognizes a negative easement of view for riparian lands. |
| Implied Easements | An affirmative easement may be created by implication if the following elements are met:<br><br>1. Initial unity of ownership;<br>2. Severance of that unity; and<br>3. Requisite degree of necessity | Florida recognizes the common law implied easement |
| Statutory Easement of Way by Necessity | On the UBE, an easement of necessity requires that the grantor convey a portion of her land such that it is necessary to pass over one of the parcels to reach a public road. | Florida recognizes a statutory easement by way of necessity. To gain this easement, a claimant must show that her parcel is located outside a municipality, that she uses her parcel for dwelling or agricultural purposes, and that the land is so hemmed in that there is no reasonable route of entrance or exit available. It does not matter whether a unity of title exists from a common source. The owner of the property on which the easement is imposed is entitled to compensation for that imposition. |
| Prescriptive Easement | On the UBE, the traditional period for prescription is 20 years.<br><br>An affirmative easement may be created by prescription, which requires proof of use of the property that is:<br><br>1. Open and notorious;<br>2. Actual;<br>3. Continuous (usually for 20 years);<br>4. Hostile; and<br>5. Exclusive (here the focus is on whether use of the parcel is shared with the whole 'world') | In Florida, the time period for gaining a prescriptive easement is 20 years. Florida does not require that the prescriptive use be exclusive. |
| Termination of Easement – Abandonment and Estoppel | On the UBE, an easement may be terminated by abandonment or estoppel | In Florida, for the abandonment of an express easement to occur, the elements of both abandonment and equitable estoppel must be proven. |
| Homeowner Association's Standing to Enforce Covenants | On the UBE, a condominium or subdivision association may enforce a benefit if the covenant is to benefit common land conveyed by the developer of the association. | In Florida, a homeowner's association does not have standing to enforce a restrictive covenant or equitable servitude unless the association is a direct successor to the developer's interest or has received an express assignment of the developer's right of enforcement. |

| Taking of Drainage Easements | This topic is not tested on the UBE. | The Florida Constitution expressly permits the taking of an easement for the drainage of the land of one person over or through the land of another. |
|---|---|---|
| Eminent Domain | On the UBE, the public advantage or purpose approach permits a taking when the facility for which the property was taken provides the public with a benefit or advantage such as taking property for urban renewal. | In Florida, private property taken by eminent domain proceedings may not be conveyed to a natural person or private entity except as provided by a general law passed by a three-fifths vote of each house of the Florida legislature. |
| Nuisance Abatement | On the UBE, traditionally, the government is not required to pay just compensation if it takes property for nuisance prevention. | In Florida, abatement or elimination of a public nuisance is not a valid public purpose or use for which private property may be taken by the exercise of the eminent domain power. |
| Slum or Blight Prevention or Elimination and Preservation or Enhancement of Tax Base | See UBE Guide. | In Florida, the prevention or elimination of a slum area or blighted area and the preservation or enhancement of the tax base are not public uses or purposes for which private property may be taken by the exercise of the eminent domain power. |
| Compensation for Taking | The Fifth Amendment of the U.S. Constitution mandates the payment of just compensation. | The Florida Constitution mandates the payment of full compensation – which is generally defined as full market value. |
| Public Nuisance | On the UBE, a public nuisance is an unreasonable interference with a right common to the general public. An action may interfere unreasonably with a public right if it interferes significantly with public health, safety, or convenience or is prohibited by statute or ordinance. | Florida defines a public nuisance as "any building…or place which tends to annoy the community or injure the health of the community." The establishment or maintenance of a place of amusement is not a nuisance per se. However, a place of amusement may constitute a public nuisance in fact if it unreasonably annoys the community. The Attorney General, state attorney, city attorney, or county attorney may sue in the name of the state to enjoin a public nuisance. A citizen of the county affected may maintain an equity proceeding in the name of the state as well. |
| Creation of Condominiums | This subject is not tested on the UBE. | In Florida, to create a condominium, a developer must file a declaration of condominium in the county in which the condominium is located. This declaration must disclose the name, legal description, and survey/plot of the condominium |
| Condominium Prospects | This subject is not tested on the UBE. | In Florida, prior to the execution of the purchase agreement, the developer of a condominium must provide the purchaser with a prospectus circular that contains the condominium units and common elements, the estimated costs of owning and purchasing the unit in question, and a frequently asked questions and answers sheet. |
| Return of Condominium Deposit | This subject is not tested on the UBE. | In Florida, a purchaser may seek return of his deposit if he sends written notice of his intent to cancel within 15 days of the execution of the agreement and his |

| | | receipt of the required disclosure materials. A buyer's right to void the contract terminates on closing. |
|---|---|---|
| Annual Meeting of the Condominium Association | This subject is not tested on the UBE. | In Florida, by statute, members of the condominium association must meet at least annually. At their annual meeting, the association members elect the board to govern its affairs. |
| Homestead Exemptions for Condominiums | This subject is not tested on the UBE. | In Florida, a condominium owner may claim the homestead exemption. |
| Nonbinding Arbitration in the Event of a Dispute between a Unit Owner and the Condominium Association | This subject is not tested on the UBE. | In Florida, before a suit may be filed in a court, a dispute between a unit owner and a condo association must be submitted to nonbinding arbitration conducted by the Florida division of Florida Land Sales, Condos, and Mobile Homes. |
| Termination of Condominium Status | This subject is not tested on the UBE. | In Florida, unless the declaration provides otherwise, condo status may be terminated on written consent of all unit owners and the holders of any recorded liens affecting any of the units. |
| Time-Share Plan | This subject is not tested on the UBE. | In Florida, the purchaser of a time-share plan receives ownership rights in or a right to use accommodations for less than a full year during any given year, but not necessarily for consecutive years. |
| Required Time-Share Public Offering Statement | This subject is not tested on the UBE. | In Florida, the developer of a time-share plan must file a lengthy public offering statement with the Division of Florida Land Sales, Condos, and Mobile Homes of the Department of Business Regulation |
| Required Disclosure in Contract of Time-Share Sale | This subject is not tested on the UBE. | In Florida, a time share contract sale must disclose the developer and any underlying fee owners, the buyer's total financial obligation, the estimated date of closing and completion of construction, and the nature and duration of the buyer's time-share period. |
| Right to Cancel time-Share Purchase | This subject is not tested on the UBE. | In Florida, a purchaser of a time-share estate has a statutory right to cancel within 10 days of the execution of the purchase contract or her receipt of the public offering statement. The statutory right to cancel may not be waived. |
| Time-Share Exchange Program | This subject is not tested on the UBE. | In Florida, a time-share developer may establish an exchange program. In the event a time-share program is established, the developer must make extensive disclosure to the purchaser of the terms and conditions of the program. This information must also be filed with the Division of Florida Land Sales. |
| Intentional Infliction of Emotional Distress | On the UBE, intentional infliction of emotional distress consists of an intentional or reckless act that amounts to extreme and outrageous conduct that causes the plaintiff severe mental distress. | Florida recognizes intentional infliction of emotional distress and has adopted the definition of that tort embodied in Section 46 of the Second Restatement of Torts. Under Section 46, neither physical impact nor physical manifestation is required in a cause of action for intentional infliction of emotional distress. |

| | | |
|---|---|---|
| | | A successful defense of privilege to a defamation suit will prevent the plaintiff from bringing a cause of action for emotional distress arising from the defamation publication. |
| Negligent Infliction of Emotional Distress | On the UBE, physical impact is not required for negligent infliction of emotional distress. | Florida generally does not require physical impact in negligent infliction cases. A few exceptions, though, do exist: the Florida Supreme Court has found that ingestion does constitute impact and that proof of a physical injury is not required to recover for emotional injuries caused by consumption of contaminated food.<br><br>In emotional distress cases involving bystanders, Florida has narrowly modified the general rule requiring impact. In Florida, the bystander-plaintiff need not show an impact where he<br><br>1. Suffered anxiety about the state of another;<br>2. Had an exceptionally close connection to the injured party;<br>3. The other person's injury occurred within his sensory perception and<br>4. He suffered casually connected clearly discernable physical impairment that followed from the psychic trauma.<br><br>The Florida Supreme Court has also found that the impact rule does not apply where the plaintiff alleges that his psychotherapist created a fiduciary relationship with him and breached a statutory duty of confidentiality with him<br><br>Finally, the Florida Supreme Court has found that the impact rule is inapplicable in negligent infliction cases when a special relationship existed between an accused and his attorney, which was coupled with the foreseeability of emotional harm resulting from protracted wrongful incarceration. |
| Civil Theft | This subject is not tested on the UBE. | Florida recognizes a civil action for theft, which may be brought for violation of Florida's criminal theft provisions. A successful civil theft plaintiff may recover damages in an amount three times the actual damages sustained, with minimum damages set at $200 plus attorney's fees and court costs. Fla. Stat. 772.11 |
| Shopkeeper's Privilege | A shopkeeper is privileged to detain a person for investigation if | In Florida, the shopkeeper's defense is available to a law enforcement officer, a merchant, a farmer, or a transit agency's employee or agent who has probable cause to believe that a retail theft, farm theft, transit |

104

| | | |
|---|---|---|
| | 1. He has a reasonable suspicion that the person detained has stolen goods;<br>2. He uses reasonable force to detain the person;<br>3. The detention is for a reasonable period; and<br>4. The detention is accomplished in a reasonable manner on the premises or in the immediate vicinity. | fare evasion, trespass, or unlawful use of an anti-shoplifting or inventory control device countermeasure has been committed by a person. In the case of a retail or farm theft, the detainer must also show that the property may be recovered by taking the offender into custody. The detention, which is made to recover the property or to prosecute, must be made in a reasonable manner and may last for a reasonable time. |
| Good Samaritans | | Florida's Good Samaritan Law gives civil protection to any person, including a licensed medical professional, who gratuitously, in good faith and in the use of ordinary care, aids a victim at the scene of an accident.<br><br>Florida's Good Samaritan statute protects from civil liability physicians, hospitals, and their employees who treat victims in emergency situations in hospitals or trauma centers, unless the conduct is excessive. Under Florida law, a health care provider giving care in an emergency acts recklessly if<br><br>1. He knew or should have known, at the time the services were rendered, that his actions created an unreasonable risk of injury that affects the life or health of another and<br>2. That risk was substantially greater than the risk necessary to make his conduct negligent. |
| Abuse by Clergy | This subject is not tested on the UBE. | In Florida, when a church offers marital counseling services a fiduciary relationship arises between the church and the person being counseled. A cause of action will lie for breach of that relationship if the counselor abuses the relationship by entering into an inappropriate sexual relationship with the person counseled. Also, the church may be sued for negligent hiring and supervision based on its knowledge of its cleric's prior sexual misconduct in similar circumstances. In addition, the First Amendment does not bar consideration of either of these claims. |
| University Liability for Attacks on Students | This subject is not tested on the UBE. | In Florida, a university has a duty to use reasonable care in assigning students to practicum locations. Therefore, the university may be held liable in negligence if it assigns a student to an external internship without giving the student adequate warning that the location was known to be dangerous and the student is subsequently assaulted sexually while participating in the internship. |
| Invited Licensee | This subject is not tested on the UBE. | Florida courts have created a special category called invited licensees. This category encompasses |

| | | |
|---|---|---|
| | | traditional common law invitees and certain common law licensees, such as social guests who have been invited onto the premises by the owner. The duty owed to an invited licensee under Florida law is to inspect and to warn or make safe, which is the duty that is owed to invitees under the common law. |
| Unknown or Undiscovered Trespasser | On the UBE, no duty of care is owed to an unknown trespasser. There is no duty to inspect the land to discover unknown trespassers. | In Florida, an undiscovered trespasser is a person who enters property without invitation and whose presence is not detected by the landowner within 24 hours of the accident in question.<br><br>A landowner owes an undiscovered trespasser a duty to refrain from intentional misconduct that injures the trespasser. However, the landowner has no duty to warn the undiscovered trespasser of dangerous conditions. |
| Known or Discovered Trespasser | On the UBE, a landowner must exercise reasonable care to protect a known trespasser from injuries deriving from activities on the land, and to warn a known trespasser of hidden dangers of which the landowner is aware but the trespasser is unaware.<br><br>There is no duty to protect a known trespasser from injuries due to natural conditions on the land. | In Florida, a discovered trespasser is a person who enters property without invitation and whose presence is detected within 24 hours of the accident in question.<br><br>A landowner owes a discovered trespasser the duty to refrain from gross negligence or intentional misconduct that injures the trespasser.<br><br>The owner must also warn the trespasser of dangerous conditions that are known to the landowner but not to the trespasser. |
| Intoxicated Trespasser | This subject is not tested on the UBE. | In Florida, an owner of real property will not be held liable for the death or injury of a trespasser on the property when the trespasser has a blood-alcohol level of .08 or higher |
| Attractive Nuisance | On the UBE, allurement is not part of the prima facie case for attractive nuisance | In Florida, a possessor of land is subject to liability for physical harm to trespassing children caused by an artificial condition if:<br><br>1. The landowner knows or has reason to know children are likely to trespass;<br>2. The landowner knows or has reason to know the condition will involve an unreasonable risk of death or serious bodily harm;<br>3. The child is not aware of the condition or the risk it poses<br>4. The utility to maintaining the condition is slight compared to the risk to the children<br>5. The landowner fails to exercise reasonable care to protect the children; or |

| | | 6. The property owner entices the children upon the dangerous premises. |
|---|---|---|
| Firefighter's Rule | Under the firefighter's rule, firemen and policemen are treated as licensees | In Florida, policemen and firefighters who are lawfully on the premises are treated as invitees who are owed a twofold duty to inspect and to warn or make safe. |
| Commission of Felony on Premises | This item is not tested on the UBE. | In Florida, a landowner will not be liable for negligence that results in death, injury, or damage to a person who is attempting to commit a felony on the property. |
| Duty to Plaintiffs Not On the Land | On the UBE, a landowner owes no duty to protect those not on the land from natural conditions on his land. | In Florida, general negligence principles apply to a landowner's duty to protect those adjacent to his land from natural and artificial conditions on his land. |
| Lessor Liability | On the UBE, a lessor is required to exercise reasonable care to discover and repair dangerous conditions existing at the time of transfer of possession. | In Florida, if a lessor surrenders possession and control of premises to a lessee, the lessor will not be liable for injuries to third persons that occur on the premises. |
| Lessor Liability for Foreseeable Criminal attacks against Lessees | This item is not tested on the UBE. | In Florida, a lessor does not have a duty to protect his lessees from criminal attack on the premises unless an attack is reasonably foreseeable. |
| Duty to Disclose Defects in the Sale of Homes | This item is not tested on the UBE. | In Florida, when a seller of a new or a used home knows of facts materially affecting the value of the property that are not readily observable and are not known to the buyer, the seller is under a duty to disclose them to the buyer. |
| Effects of Negligence Per Se | This item is not tested on the UBE. | In Florida, a statute must impose an affirmative duty to take certain actions and impose a penalty for failure to do so. The effect of negligence per se depends on the type of statute involved. Some statutes are designed to protect a particular class of people from their inability to protect themselves. In those matters, strict liability is the standard and contributory negligence is not a defense. Violations of other statutes such as traffic regulations are only prima facie evidence of negligence. |
| Health Care Providers | This item is not tested on the UBE. | In Florida, the standard of care for a health care provider is the level of care, skill, and treatment that is acceptable and appropriate for a reasonably prudent similar health care provider in like circumstances. |
| Informed Consent | On the UBE, under the rule if informed consent, before rending treatment a medical professional must inform the patient of his options and their attendant risks. The duty is measured by what a reasonable medical professional would disclose. | The Florida Medical Consent Law protects a medical professional who obtains written consent from his patient according to an accepted standard of medical practice among medical professionals with similar training and experience in the same or similar medical community. This law also protects a medical professional if the reasonable patient would have generally understood the course of treatment, medically acceptable alternatives, and substantial risks of the course of treatment as recognized among other medical professionals in the same or similar |

107

| | | community who perform the similar treatment. The medical professional is also protected if the patient would have reasonably chosen the course of treatment if he had been adequately advised of the risk by the medical professional. |
|---|---|---|
| Medical Malpractice | This item is not tested on the UBE. | In Florida, a plaintiff seeking to bring a claim for medical malpractice must first obtain a written opinion by a medical expert verifying that reasonable grounds for her claim exist.

Before a medical malpractice claim may be filed, the claimant must also serve notice on the defendant by certified mail at least 90 days before filing suit. That notice must include a list of all known health care providers the plaintiff saw concerning the injuries claimed subsequent to the alleged act of negligence by the defendant. The notice must also include all known health care providers who treated or evaluated the plaintiff during the two-year period prior to the defendant's alleged negligence. Moreover, the pre-suit notice must include copies of medical records relied on by the expert who signed the affidavit.

After the plaintiff has notified the defendant, the defendant's insurer evaluates the claim. Within 90 days, the insurer must deliver to the claimant a rejection of the claim, an offer to settle, or an offer to seek arbitration of damages. Following the service of pre-suit notice, the statute of limitations is tolled as to all potential defendants during this 90-day period

If a defendant makes an offer to admit liability and for arbitration on the issue of damages, the plaintiff has 50 days to accept or reject that offer.

Within 120 days of the filing of a suit for medical negligence all parties are required to attend in-person mandatory mediation if arbitration has not been agreed to by the parties. |
| Claims against Nursing Homes | This item is not tested on the UBE. | In Florida, at least 75 days before she files suit, a claimant must notify the nursing home of the claimed violation or negligence and the injuries sustained. At the end of the 75-day notice period, the nursing home must reject the claim or make an offer to settle. Within 30 days of the claimant's receipt of the nursing home's response, the parties must submit to mediation and discuss liability and damages. At the end of mediation, the claimant must file suit within 60 |

| | | |
|---|---|---|
| | | days or by the end of the statute of limitations period, whichever is greater. The statute of limitations is tolled during the pre-suit notice and mediation periods. |
| Transitory Foreign Objects on Business Premises | On the UBE, a plaintiff must present evidence about the condition of the item on which he fell so that a jury could infer that the object was there long enough that the defendant was unreasonable in not discovering and remedying the dangerous condition. | In Florida, there is a statutory duty to use reasonable efforts to keep business premises free from transitory foreign objects, such as grapes and banana peels, which might foreseeably cause damage or injury. In a negligence case brought for injuries caused by such a foreign substance, the claimant must prove the business had actual or constructive knowledge of the dangerous condition.<br><br>Constructive knowledge may be proven by showing the length of time the condition existed, or the reoccurrence of the condition and its foreseeability. |
| Res Ipsa Loquitur | | In Florida, *res ipsa loquitur* does not apply to actions brought to recover damages caused by tire blowout occurred after possession and some significance use by another.<br><br>In medical malpractice cases, if the patient was unconscious at the time the injury occurred, she may rely on the inference of negligence raised by the doctrine of *res ipsa loquitur*. The patient is entitled to rely on the inference even though the patient cannot prove which doctor or doctors caused her injury, and even though the doctors in question did not possess exclusive control of the patient's body at all times during which the patient's injuries may have occurred. |
| Automobile Guest Statute | On the UBE, a driver is not liable to injuries of a passenger unless the driver is guilty of gross negligence or recklessness. | Florida does not have an automobile guest statute. |
| Market Share Theory | On the UBE, the market share theory may be applied when the plaintiff demonstrates that the injury resulted from conduct engaged in by several defendants, each acting independently, but the plaintiff cannot identify which defendant's conduct actually injured her. In that case, each defendant's conduct may be regarded as a cause-in-fact of the plaintiff's injury. Liability is apportioned among the defendants (assuming the other elements of negligence are established) based on the economic benefit each defendant derived from the risk-producing conduct. | In Florida, in a limited set of cases, the state permits plaintiffs to use the market share theory to satisfy the causation requirement and to impose liability based on a manufacturer's market share of a particular product. To take advantage of the market share theory, the plaintiff must bring a cause of action based on negligence. The market share theory does not apply in cases of fraud, strict liability or breach of warranty. To prevail the plaintiff must show that<br><br>1. She cannot identify the specific manufacturer that caused the injury despite a diligent attempt; and<br>2. The risk of harm posed by the various manufacturers of the product is the same |

109

| | | |
|---|---|---|
| | | As of March 2019, the Florida Supreme Court has applied market share theory to DES cases but not blood plasma or asbestos cases. |
| Cause in Fact – But-For Versus Substantial Factor | On the UBE, the but-for test is used when concurrent causes combine to cause injury to the plaintiff none of which acting alone would have caused the plaintiff's injury.<br><br>On the other hand, the substantial factor is used when there are concurrent causes, anyone of which acting alone would have caused the plaintiff's injury. The Second Restatement of Torts uses the substantial factor test in all cases involving multiple causes. | In Florida, the state uses the but-for test to determine cause in fact. However, the substantial factor test should be used when there are concurrent causes, anyone of which acting alone would have caused the plaintiff's injury. |
| Punitive Damages | On the UBE, punitive damages require outrageous or malicious conduct. | To recover punitive damages in Florida, a plaintiff must prove by clear and convincing evidence that the defendant acted intentionally or with willful, wanton, or gross mis conduct. Punitive damages are generally limited to the greater of three times the compensatory award or $500,000<br><br>There is no cap if the defendant had specific intent to harm the plaintiff and the defendant's conduct did in fact harm the plaintiff.<br><br>An employer is subject to punitive damages assessed for an employee's acts only if the employer participated in or consented to intentional or grossly negligent conduct by the employee<br><br>The cap on punitive damages is raised to four times the compensatory award or $2 million if wrongful conduct is motivated solely by unreasonable financial gain.<br><br>For child abuse, abuse of elderly, or abuse of developmentally disabled, punitive damages may exceed three times the amount of compensatory damages if the claimant offers clear and convincing evidence to rebut the presumption that such an award is excessive.<br><br>The punitive damages limitations do not apply to a defendant who was impaired by alcohol or drugs at the time of the incident in question.<br><br>Punitive damages generally may not be awarded if they have already been awarded against the defendant for the same act or conduct. However, punitive damages may be awarded in a subsequent |

| | | |
|---|---|---|
| | | cause if the court determines that the previous award was insufficient to punish the defendant. |
| Damages Available to a Parent of a Permanently Injured Child | This item is not tested on the UBE. | In Florida, a parent whose minor child has been permanently injured may recover:<br><br>1. Pecuniary damages for lost earnings and services of the child;<br>2. Medical expenses paid on behalf of the child; and<br>3. Loss of consortium through the time the child attains majority. |
| Collateral Source Rule | On the UBE, payments made to the plaintiff from other sources will not be credited against the tortfeasor's liability. | In Florida, in all tort or contracts actions, the trial court must reduce a damage award by amounts the plaintiff receives from collateral sources.<br><br>Collateral sources include federal, state, and local disability payments, Social Security (except under Titles XVII and XIX), income disability insurance benefits (except for life insurance benefits), a contract to provide health care services, and an employee wage continuation plan. Benefits received under a health or sickness insurance policy may be deemed collateral sources. However, there is no reduction to the extent that the claimant or a member of his immediate family has paid for the benefit.<br><br>Collateral sources do not include Medicare, workers' compensation, Medicaid, and medical services programs administered by the Florida Department of Health and Rehabilitation Services. In addition, there is no reduction for collateral source for which there is a right of subrogation. |
| Medical Malpractice Caps on Non-Economic Damages | This item is not tested on the UBE. | Caps have been placed on the recovery of non-economic damages in medical malpractice cases.<br><br>If the defendant-practitioner refuses the claimant's offer of voluntary binding arbitration, recovery of non-economic damages are limited to $500,000 per claimant, and attorney's fees of up to 25% of the total award.<br><br>If the claimant rejects voluntary arbitration and elects to proceed to trial, her non-economic damages are limited to $350,000. Voluntary arbitration precludes other remedies and limits damages as follows: |

111

| | | |
|---|---|---|
| | | 1. Net economic damages are limited to past and future medical expenses and 80% of wage loss, offset by any collateral source payments;<br>2. Non-economic damages are limited to a maximum of $250,000 per incident;<br>3. Punitive damages are not permitted; and<br>4. The claimant may also recover attorney's fees, costs up to 15% of the total award, and arbitration costs. |
| Prenatal Injuries | On the UBE, all jurisdictions allow for recovery for prenatal injuries but jurisdictions vary as to the required age of the fetus at the time of injury | In Florida, if a child is born alive after suffering prenatal injuries at any time after conception, the child has a cause of action against the tortfeasor responsible for the injuries. |
| Contributory and Comparative Negligence | On the UBE, in a pure comparative negligence system, apportionment of damages completely matches apportionment of fault. | Florida is a pure comparative negligence state. The defense of comparative negligence applies not only to causes based in negligence but also to those based in strict liability and breach of warranty. |
| Seat Belt Defense | This item is not tested on the UBE. | In Florida, in assessing damages and/or comparative negligence, a jury may consider evidence that a plaintiff failed to use an available and operational seat belt, if that failure substantially contributed to the plaintiff's injuries. The failure to use an available and operational seat belt does not constitute negligence per se, does not make a prima facie case of negligence, and may not be considered in mitigation of damages. |
| Rebuttable Presumption for Rear-End Collusion | This item is not tested on the UBE. | In Florida, there is a rebuttable presumption that the negligence of the rear driver in a rear-end collision was the sole proximate cause of the accident, which may be rebutted when the defendant produces evidence that the rear-end collision was not the result of the rear driver's negligence.<br><br>If the rear-driver defendant overcomes the presumption, the burden of proof on the proximate cause of collision reverts back to the plaintiff who can no longer rely on the presumption to establish the sole proximate cause of the accident. |
| Intoxication | This item is not tested on the UBE. | In Florida civil actions, a plaintiff may not recover any damages if, at the time the plaintiff was injured, the plaintiff was impaired by alcohol or drugs or had a blood or breath alcohol level of .08 or higher, and that impairment caused the plaintiff to be more than 50% at fault for his own harm. |
| Assumption of Risk | This item is not tested on the UBE. | Express assumption of risk is a complete bar to recovery in Florida. |

| | | Implied assumption of risk is viewed as a form of comparative negligence. |
|---|---|---|
| Interspousal Tort Immunity | On the UBE, assume that husband-wife tort immunity has been abolished. | Florida, has abolished husband-wife immunity. |
| Parent-Child Immunity | On the UBE, minor children generally cannot maintain actions against their parents for personal torts | |
| Governmental Immunity | On the UBE, states have immunity from tort actions. | Under Florida's Government Tort Claims Act, the state and its subdivisions are liable for personal injury, death, or property damage caused by the negligence of wrongful conduct of public employees acting within the scope of their employment. Claims based on intentional torts are excluded. The employee who committed the tort is not personally liable under the Florida statute unless the act was intentional or willful.<br><br>The immunity waiver does not apply to discretionary or planning level functions. The exception for discretionary or planning level functions is based on the concept of separation of powers<br><br>In determining whether a governmental function is discretionary or operational, consider the following four factors<br><br>1. Whether the challenged act necessarily involves a basic government program or policy<br>2. Whether the questioned act is essential to the realization or accomplishment of the government program<br>3. Whether the disclosure of the information is an exercise of basic policy evaluation and expertise on the part of the governmental agency involved and<br>4. Whether the governmental conduct in question involves a constitutional, statutory, or other lawful authority and duty<br><br>There is a $200,000 limit on damages per plaintiff and $300,000 limit per accident. To recover in excess of these limits, a plaintiff must seek a legislative bill. However, if the state has insurance coverage in excess of these limits, the state is liable to the extent of the coverage. Punitive damages may not be recovered. |
| Charitable Immunity | On the UBE, charitable immunity has been abolished. | Florida does not recognize charitable immunity. However, the Florida Volunteer Protection Act does provide limited protection for charitable volunteers. Under this statute, a volunteer for a nonprofit organization is immune from civil liability for damage |

| | | |
|---|---|---|
| | | to person or property caused by her acts or omissions if she was acting in good faith within the scope of the official duties of the charitable organization, she acted as a reasonably prudent person would under similar circumstances, and the damage was not caused by her wanton or willful misconduct. |
| Modified No-Fault Auto Insurance | This item is not tested on the UBE. | Florida has adopted a modified no-fault car insurance system for personal injury<br><br>Individuals seeking personal injury protection medical benefits are required to receive initial services and care within 14 days after the motor vehicle accident. An individual may receive up to 10,000 in medical benefits for services and care for an emergency medical condition. An emergency medical condition is defined as a medical condition manifesting itself as acute symptoms of sufficient severity that the absence of immediate medical attention could reasonably be expected to result in serious jeopardy to patient health, serious impairment to bodily functions, or serious dysfunction of a bodily part or organ. If an individual is not diagnosed with an emergency medical condition, the Persona Injury Protection medical benefit limit is $2,500. Personal Injury Protection now also offers $5,000 in death benefits in addition to $10,000 in medical and disability benefits.<br><br>An injured person may recover in tort for pain and suffering, mental anguish, and inconvenience if she has suffered significant and permanent loss of an important bodily function, permanent injury, significant and permanent disfigurement or death.<br><br>An injured person may also sue in tort to recover medical expenses and lost income in excess of the $10,000 in benefits paid by her insurance carrier. |
| Strict Liability – Animals | On the UBE, the possessor of a domestic animal must have known of the animal's dangerous propensity to be held for injuries inflicted by the animal. | In Florida, the owner of a dog is liable regardless of the dog's former viciousness or the owner's knowledge of the dog's propensity. Under the state's one-bite statute, liability is owed to a plaintiff in a public place or lawfully in a private place, including the property of the dog's owner. That strict duty is not owed to a plaintiff who provokes the dog. Additionally, so long as the owner has not been negligent, the posting of a 'Bad Dog' sign is a complete bar to suit unless the victim is six or under. Comparative negligence will reduce owner liability. |

| Straying Livestock | On the UBE, the owner of livestock will not be held strictly liable for harm caused by livestock on the highway or on lands adjacent to the highway during transport. | In Florida, the owner of livestock may be liable for damages caused by her animals if she intentionally, willfully, carelessly or negligently permits the animals to run at large or stray on Florida public roads. |
|---|---|---|
| Commercial Lessors | On the UBE, a commercial lessor may be held strictly liable for injuries caused by new leased goods | In Florida, the doctrine of strict products liability applies to commercial lessors of new goods. However, the doctrine is limited to commercial lessors engaged in the business of leasing the allegedly defective product. |
| Learned Intermediary Rule | On the UBE, under the learned intermediary rule, a drug manufacturer's duty to warn is met when an adequate warning is given to medical professionals who are lawfully authorized to prescribe, dispense, and administer prescription drugs. | Florida follows the learned intermediary rule for the duty to warn of drug side effects. |
| Economic Loss Rule | On the UBE, under the economic loss rule, recovery in tort is not permitted for pure economic loss not coupled with injury to person or property, Economic losses are defined as the disappointed economic expectations of the parties. The economic loss rule does not apply to an independent tort. | In Florida, the economic loss rule applies in matters involving products liability. The economic loss rule does not bar:<br><br>1. Statutory causes of action;<br>2. Well-established tort actions arising from a contact, such as professional negligence actions or<br>3. A cause based on a tort that is independent of the underlying contract |
| Comparative Negligence | On the UBE, the plaintiff's comparative negligence may reduce the amount of damages to which she is entitled. | In Florida, a claim based in strict products liability is subject to the defense of comparative negligence. However, the plaintiff's neglect must be more than mere failure to discover the defect. |
| Plaintiff's Knowledge of Defect | This item is not tested on the UBE. | In Florida, the plaintiff's knowledge of a product's dangerous characteristics does not serve as a complete bar to recovery in negligence or strict liability cases based on a design defect. Instead, the plaintiff's knowledge of the defect is one of several factors used to determine whether the product is unreasonably dangerous. |
| Compliance with Government Regulations | This item is not tested on the UBE. | In Florida, compliance with government regulations may create a rebuttable presumption that a product is not defective or unreasonably dangerous. To raise this presumption, the manufacturer must show that<br><br>1. The product complied with federal or state statutes, rules, or standards<br>2. The statutes or standards were designed to prevent the type of harm that occurred and<br>3. Compliance with the statutes or standards is required as a condition for selling the product. |

| | | There is a rebuttable presumption that the product is defective or unreasonably dangerous if the manufacturer or seller did not comply with the relevant codes or statutes. |
|---|---|---|
| State of the Art Defense | This item is not tested on the UBE. | In Florida, state of the art is determined at the time of manufacture not the time of injury. |
| Horizontal Privity | On the UBE, privity extends to members and guests of the purchaser's household and anyone who may be reasonably expected to use or be affected by the goods. | In Florida, a warranty extends to any member of the purchaser's family household bor any guest who suffers personal injury. |
| Blood Products | This item is not tested on the UBE. | In Florida, the procurement, processing, storage, testing, distribution, or use of whole blood, blood plasma, blood products, human tissue, or human organs does not constitute a sale of goods or products to which the implied warranty or merchantability and fitness for a particular purpose apply. |
| Public Nuisance | On the UBE, a public nuisance is an unreasonable interference with a right common to the general public. | Florida law defines a public nuisance as "any building or place which tends to annoy the community or injure the health of the community." The establishment or maintenance of a place of amusement is not a nuisance per se. The attorney general, state attorney, city attorney, or county attorney may sue in the name of the state to enjoin a public nuisance. A citizen of the county affected may maintain a proceeding in equity in the name of the state to enjoin a public nuisance if the remedy is at law. |
| Private Nuisance | This item is not tested on the UBE. | Florida reco  **Commented [OH8]:** Find out elements here. |
| Defamatory Statement of Fact | On the UBE, expressions of opinion which imply that the speaker knows facts to be true may be defamatory. | In Florida, to be defamatory, the disputed language must be a statement of fact rather than a mere statement of opinion. |
| Defamation by Implication | This item is not tested on the UBE. | Florida recognizes this cause of action – and apparently even true statements can be defamatory here where  **Commented [OH9]:** 1st amend. challenge waiting to happen. |
| Defamation of a Deceased Person | On the UBE, defamation of a deceased person is not actionable. | defamation of a deceased person – however, the personal representative of a decedent may sue if the decedent had a cause of action for defamation while she or he was alive. |
| Libel per se and libel per quod | On the UBE, libel per se is written defamatory language that is defamatory on its face. Libel per quod is written language that becomes defamatory through the use of extrinsic facts. | Florida does not distinguish between libel per se and libel per quod. Actual damages must be proved in any Florida case of libel brought against a medial defendant unless the plaintiff can prove that the defamatory statement was made with actual malice. |
| Unemployment Compensation Proceedings | This item is not tested on the UBE. | In Florida, communications between an employer and employee of the Division of Unemployment Compensation enjoy absolute privilege. |

116

| | | |
|---|---|---|
| Retraction | On the UBE, a retraction may reduce damages, negate the malice element for punitive damages, or evidence the defendant's good intentions to show that a privilege has not been abused. | Florida requires a defamation plaintiff to serve written notice on a media defendant at least five days before filing suit. The plaintiff's retraction notice must specify the alleged false and defamatory article or broadcast. If the media member fully retracts the libel within 10 days of receipt of the notice and if the original publication or broadcast was made in good faith, then only actual damages may be recovered. |
| Absolute Privilege in Judicial Proceedings | On the UBE, there is an absolute privilege for statements made in a judicial proceeding but only if the statement is relevant to an issue in the case. | In Florida, the absolute privilege for judicial proceedings does not apply if someone makes statements to investigating officers or prosecutors before criminal charges are filed. However, a statement made prior to the filing of charges is subject to a qualified privilege if the statement is made in the public interest. The absolute privilege for relevant statements made in the course of a judicial proceeding is lost if the complaint is dismissed for lack of subject matter jurisdiction. |
| Absolute Privilege in Florida Bar Complaints | This item is not tested on the UBE. | In Florida, a person who files a complaint against her lawyer with the state bar is protected by an absolute privilege so long as she does not comment on her complaint publicly outside the grievance process. |
| Qualified Privilege | This item is not tested on the UBE. | Under Florida law, a qualified privilege may be asserted if the communication in question was made in good faith by someone interested in the subject matter, limited to that interest, and made in a proper manner. A report of a public meeting containing a false statement is protected by a qualified privilege, so long as the defendant accurately reports the falsely made statement. |
| Malice Required to Defeat Qualified Privilege | On the UBE, a qualified privilege may be defeated by a showing of actual malice – See New York Times v. Sullivan | Under Florida law, proof of common law express malice is required to defeat a common law privilege. Common law express malice requires a showing that the defendant's primary motive was to injure the plaintiff. |
| Proof of Malice | On the UBE, actual malice must be proved by clear and convincing evidence. | In Florida, common law express malice must be proved by a preponderance of the evidence. |
| Commercial Misappropriation | UBE jurisdictions are split on whether a cause of action for commercial misappropriation may be maintained on behalf of the decedent or the decedent's survivors. | Florida recognizes that tort of commercial misappropriation. An action for commercial misappropriation may be maintained for a deceased person by the surviving spouse and surviving children or any person or entity licensed in writing to use the name or likeness of the deceased person.<br><br>However, no such action may be brought more than 40 years after the death of that person. |

| | | |
|---|---|---|
| False Light Invasion of Privacy | This item is not tested on the UBE. | Florida does not recognize a cause of action for false light invasion of privacy. |
| Intentional Interference with a Business Relationship | This item is not tested on the UBE. | In Florida, intentional interference with a business relationship requires an existing business relationship. The plaintiff must show an actual agreement that would have been completed had the defendant not interfered. Damages cannot be recovered based on speculation regarding future sales to past customers. |
| Respondeat Superior – Background Check | This item is not tested on the UBE. | In a civil action for the death of, or injury or damage to, a third person cause by an intentional tort of an employee, the employer is presumed to have been negligent in hiring the employee if, before hiring the employee, the employer conducted a background investigation of the prospective employee and the investigation did not reveal any information that reasonably demonstrated the unsuitability of the prospective employee for the particular work to be performed or for the employment in general. |
| Dangerous Instrumentality | On the UBE, a person entrustment of her car to another driver merely creates a bailment and does not subject the car owner to liability for the driver's negligence | Under the dangerous instrumentality doctrine, the owner of an instrumentality that is capable of causing death or destruction must answer for its misuse by anyone operating the instrumentality with the owner's knowledge and consent. |
| Negligent Entrustment | On the UBE, this cause of action may lie against an owner or possessor who entrusts a dangerous instrumentality to a third person knowing or having reason to know that due to youth or inexperience the person entrusted is likely to use the instrument in a manner that might cause risk of serious harm to the person entrusted or others. | Florida law recognizes the theory of negligent entrustment. That doctrine imposes liability on a supplier of a chattel who furnishes the chattel to another person for use by that other person and who knows or has reason to know that the person supplied is likely because of youth or inexperience or otherwise to use the chattel in a manner involving unreasonable risk of physical harm to the user or other foreseeable persons. Actual or constructive notice of a dangerous condition is irrelevant if the premises are operated in a negligent mode that could reasonably cause the business owner or possessor to anticipate that dangerous conditions would arise from the mode of operation. |
| Workers' Compensation | This item is not tested on the UBE. | Florida employers are required to obtain workers' compensation insurance to cover employee injuries arising out of, and in the course of, employment.<br><br>Workers' compensation insurance does not cover independent contractors<br><br>If workers' compensation insurance does cover an employee's injury, the employee generally may not |

| | | |
|---|---|---|
| | | sue her employer or fellow employees for damages arising out of the injury. Even if a claim is covered by workers'' compensation insurance, an injured employee may sue a third party, such as a product manufacturer for the injury |
| Service of Alcohol | On the UBE, a tavernkeeper historically was not vicariously liable for injuries inflicted by an intoxicated patron whether the person injured was a third person or was the intoxicated patron himself. | In Florida, a person who knowingly serves alcohol to a person habitually addicted to the use of alcohol may become liable for injury or damage caused by or resulting from the intoxication of that person. Further, if a person willfully and unlawfully sells or furnishes alcohol to a minor, the severed may become liable for injury resulting from intoxication. |
| Joint and Several Liability | On the UBE, joint and several liability applies when two or more independent tortfeasors combine to produce one indivisible harm or when two or more tortfeasors act in concert to produce an indivisible harm. Under joint and several liability, each defendant is liable for the entire loss suffered by the plaintiff. The plaintiff may obtain a judgment against each defendant. However, the plaintiff is entitled to only one full recovery. | Florida has abolished joint and several liability. Liability is now based on relative fault. |
| Crashworthiness Doctrine | The crashworthiness doctrine addresses cases where a person involved in a car collision suffers enhanced injuries as a result of a secondary collision with the interior of the vehicle. Here, the manufacturer has a duty to use reasonable care in the design of its vehicle to avoid subjecting the user to an unreasonable risk of injury in the event of a collision. The manufacturer is not, though, liable for injuries caused by the initial accident. Instead, it is liable in negligence for design defects that enhance injuries. | Florida has adopted the crashworthiness doctrine for negligence and strict liability cases. Under Florida law, principles of comparative fault involving the causes of the first collision do not apply in crashworthiness cases. Because the manufacturer is not liable for injuries caused by the initial accident, the fault of the manufacturer may not be compared or apportioned with the fault of others who caused the initial crash. |
| Survival of Actions | On the UBE, under a survival statute, a person's torts and contract causes survive his death. The action may be maintained by the decedent's personal representative on behalf of his estate. Damages may be recovered for the decedent's estate for medical expenses, funeral expenses, lost wages, pain and suffering, and punitive damages. | Florida permits causes of action to survive the death of the plaintiff. The applicable statute here also permits the survival of intangible personal torts. However, if the injury that would be the basis for a survival action results in the victim's death, the cause of action must be brought under the wrongful death statute. |
| Release of Covenant Not to Sue Executed to One Joint Tortfeasor | On the UBE, at common law, release of one joint tortfeasor was a complete surrender of any cause of action against other joint tortfeasors. | In Florida, a release or a covenant not to sue executed to one joint tortfeasor does not release other joint tortfeasors unless its terms provide for such a release. However, the release does reduce the claim against the other tortfeasors to the extent of any amount stipulated by the covenant or release, or in the amount of the consideration paid for the covenant or release, whichever is greater. |
| Wrongful Death | On the UBE, a wrongful death action may be brought on behalf of the decedent's survivors for losses they suffer as a result of the decedent's death. Survivors generally include | In Florida, a wrongful death action is instituted by the personal representative for the benefit of the decedent's survivors and his estate. The personal |

| | | |
|---|---|---|
| | the spouse, children, and parents. A wrongful death action may be brought for pecuniary losses such as lost wages. A wrongful death action may also be brought be loss of companionship or consortium | representative may recover for the decedent's survivors the value of lost support, loss of the decedent's companionship and protection, and mental pain and suffering. Survivors here include the spouse, children, parents, and other dependent relatives. However, adult children 25 or older may not bring a wrongful death action for the death of a parent caused by medical r̶̶̶̶̶̶ bring a wron̶̶ child 25 years or older caused by medical malpractice. In addition, the personal representative may also recover for the decedent's estate loss of earnings and funeral and medical expenses if the estate paid such expenses. |
| Wrongful Birth | On the UBE, claimants cannot recover damages for the costs of raising a healthy child, but can recover for additional expenses of raising an impaired child. | In Florida, no duty is breached if a healthy child is born. However, the state does recognize a cause of action for the wrongful birth of a deformed child. In such a case, the parents may recover special upbringing expenses associated with a deformed child but not ordinary child rearing expenses. |
| Negotiable Instruments: Introduction | On the UBE, a negotiable instrument is a signed writing that orders or promises payment of money. Negotiability determines the rights and obligations of the various parties involved with commercial paper. For the most, part Article 3 of the UCC deals with negotiable instruments. Article 3, however, does not apply to money payment orders or securities | Same – presumably. |
| Types of Negotiable Instruments | • A note is a two party instrument in which one party (the maker) promises to pay a second party (the payee) a sum of money<br>• A draft is a three-party instrument in which one party (the drawer) orders a second party (the drawee or payor) to pay a sum of money to a third party (the payee).<br>• A check is a draft upon a bank and payable on demand. An instrument may be a check even though it is described on its face by another term. | Same – presumably. |
| Requirements of a Negotiable Instrument | Whether an instrument is negotiable is a matter of form, and the determination must be made from the four corners of the instrument. A promise or order other than a check is not an instrument if it contains a conspicuous statement that it is not negotiable or not governed by Article 3. | Same – presumably. |
| Signed Writing | A signature may be made manually or mechanically, and it may be made by the use of any name, including a trade or assumed name, or by a word, mark, or symbol executed or adopted by a party with the present intent to authenticate a writing. The signature may be typewritten or printed | Same – presumably. |

Commented [OH10]: Damn…doctors and nursing homes jacked the legislature here….

| | Writing the name of another person constitutes the signature of the writer if the writer lacks authority to use the other's name, as long as the person who pays the instrument or takes it for value acts in good faith.<br><br>The terms written or writing including printing, typewriting, or any other intentional reduction to tangible form. | |
|---|---|---|
| Promise or Order | An order is a written instruction to pay money signed by the person giving the instruction. A promise is a written undertaking to pay money signed by the person undertaking to pay. The negotiable instrument must be payable in all events. | Same – presumably. |
| Conditional Promises or Orders | A promise or order is conditional if it: contains an express condition to payment; states that it is subject to or governed by another writing; or states that rights or obligations with respect to it are stated in another writing. | Same – presumably. |
| Unconditional Promises or Orders | Reference to another writing does not itself make a promise or order conditional. Reference to another writing that states rights with respect to collateral, prepayment, or acceleration does not make a promise or order conditional.<br><br>A promise or order is not conditional because payment is to be made from a particular fund. | Same – presumably. |
| Payment of a Fixed Amount | An instrument is not payable with interest unless it specifies otherwise. Interest may be stated as a fixed or variable amount of money, or as a fixed or variable rate. Reference to information not contained in the instrument is acceptable.<br><br>If an instrument provides for interest, but the amount cannot be ascertained from the description, interest is payable at the rate payable on judgments at the place and time interest first accrues. | Same – presumably. |
| Payable to Order or Bearer | A check that is not payable to bearer or order, but that otherwise satisfies all the requirements for negotiability is negotiable.<br><br>An instrument is payable to the bearer if it states it is payable to the bearer or order of bearer; does not state a payee; states it is payable in cash; or indicates it is not payable to an identified person.<br><br>An instrument is payable to order if it is payable to the order of an identified person or to an identified person or order<br><br>If an instrument contains both order and bearer language the bearer language controls. | Same – presumably. |

| Multiple Payees | If an instrument is made payable to two or more persons alternatively, it is payable to any of them; and it may be negotiated, discharged, or enforced by any or all of them in possession of the instrument.<br><br>If an instrument is made payable to or more persons jointly, it is payable to all of them; and it may be negotiated, discharged, or enforced only by all of them; neither, acting alone, can be the holder of the instrument.<br><br>If an instrument is ambiguous as to whether it is payable to the persons alternatively or jointly, the instrument is payable to the persons alternatively. | Same – presumably. |
| Payable in Money | The instrument must be payable in money, and only money, and the amount due must be ascertainable from the instrument. Money means a medium of exchange authorized or adopted by a domestic or foreign government as part of its currency. An instrument is rendered non-negotiable if the obligor agrees to pay in goods to services even as an alternative option. | Same – presumably. |
| Payable to Order or Bearer | A check that is not payable to bearer or order, but that otherwise satisfies the other requirements for negotiability, is negotiable<br><br>An instrument is payable to bearer if it states that it is payable to bearer or order of bearer; does not state a payee; states it is payable to cash; or indicates that it is not payable to an identified person<br><br>An instrument is payable to order if it is payable to the order of an identified person or to an identified person or order<br><br>If an instrument contains both order and bearer language, the bearer language controls. | Same – presumably. |
| Multiple Payees | If an instrument is made payable to two or more persons alternatively, it is payable to any of them; and it may be negotiated, discharged, or enforced by any or all of them in possession of the instrument<br><br>If an instrument is made payable to two or more persons jointly, it is payable to all of them; and it may be negotiated, discharged, or enforced only by all of them; neither, acting alone, can be the holder of the instrument.<br><br>If an instrument is ambiguous as to whether it is payable to the persons alternatively or jointly the instrument is payable to the person alternatively | Same – presumably. |

| Payable on Demand or at a Definite Time | An instrument is payable on demand if it states that it is payable on demand or at sight, it otherwise indicates that it is payable at the will of the holder, or it does not state any time for payment.

An instrument is payable at a definite time if it is payable at the end of a definite time; at a fixed date; or at a time readily ascertainable at the time of issue even if it is subject to rights of prepayment, acceleration, extension at the holder's option, or extension to a further definite time at the maker's option or automatically upon or after a specific act or event

If an instrument is payable at a fixed date and payable on demand before the fixed date, the instrument is payable on demand until the fixed date, and if no demand has yet been made, becomes payable at a definite time on the fixed date.

An instrument that is payable only upon the happening of an event is non-negotiable even if that event is certain to happen so long as the time is uncertain | Same – presumably. |
| Contain No Undertaking or Instruction | A negotiable instrument may not state any other undertaking or instruction by the person promising or ordering payment to do anything besides pay money. However, the following other undertakings do not eliminate negotiability

• An undertaking or power to maintain or protect collateral to secure payment
• An authorization or power to confess judgment or realize on or dispose of collateral;
• A promise or provision waiving benefit of any law intended for the obligor's protection | Same – presumably. |
| Negotiation | Negotiation means a voluntary or involuntary transfer of possession of an instrument by a person other than the issuer to a person who thereby becomes its holder

If an instrument is payable to an identified person negotiation requires transfer of possession of the instrument and indorsement by the holder

If an instrument is payable to bearer it may be negotiated by transfer of possession alone | Same – presumably. |
| Transfer | The transfer of an instrument occurs when it is delivered by a person other than its issuer for the purpose of giving the right to enforce the instrument to the person receiving delivery. If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not | Same – presumably. |

| | | |
|---|---|---|
| | An indorsement limiting payment to a particular person or otherwise prohibiting further transfer or negotiation of the instrument, will not prevent further transfer or negotiation of the instrument<br><br>Signature in both names may be required by a person paying or taking the instrument for value or collection. | |
| Presentment | To obtain payment of a negotiable instrument, demand is generally made upon the person expected to pay (the maker of the note or the drawee of a draft)<br><br>A party paying the instrument upon presentment, such as a bank does not take by negotiation and cannot become a holder in due course. Moreover, its rights against the presenting party are different from the rights of the transferee against her transferor after a negotiation | Same – presumably. |
| Persons Entitled to Enforce the Instrument | In general, the holder; the holder in due course; a non-holder in possession of the instrument who has the rights of a holder; and a person not in possession who is nonetheless entitled to enforce the instrument may enforce the instrument. | Same – presumably. |
| Holder | A holder is a person who is in possession of an instrument if the instrument is payable to the bearer or the instrument is payable to an identified person and the identified persons is in possession of the instrument.<br><br>The holder has both possession of and rights to the instrument<br><br>Parties subsequent to the payee become holders if they are in possession of bearer paper or of order paper that has been properly endorsed<br><br>When an instrument is negotiated the transferee becomes a holder. For the possessor of the instrument to be a holder, all necessary endorsements must be valid; the necessary endorsements are those of all parties who took the paper as order paper. | Same – presumably. |
| Typical Problems with Holder Status | • A forged necessary indorsement prevents the possessor of an instrument from being a holder. A forged indorsement by someone whose indorsement is not necessary will not prevent later possessors from being holders<br>• Under the fictitious payee rule, if the person identified as the payee is not intended to have any interest in the instrument, or is a fictitious person, an | Same – presumably. |

| | | |
|---|---|---|
| | indorsement of the instrument by any person in the name of the payee is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.<br>• When a person impersonates the payee and induces the drawer or maker to issue an instrument to the imposter payable to the name of the impersonated person, an indorsement by anyone in the name of the payee is effective in favor of a person who, in good faith, pays the instrument or takes it for value or for collection. | |
| Possession Rules for Holders | • A holder has possession of a bearer instrument merely through possession of the instrument<br>• A holder has possession of an order instrument when he has possession of an instrument identifying the holder as payee | Same – presumably. |
| Holder in Due Course | • A holder in due course is a holder of a negotiable instrument that does not bear apparent evidence of forgery, alternation, or other irregularity that calls its authenticity into question, who takes the instrument for value; in good faith; and without notice that the instrument is overdue, has been dishonored, bears an unauthorized signature or alteration, or of any defense or claim against the instrument.<br>• A holder does not acquire the rights of a holder in due course of an instrument taken by legal process or by purchase in an execution, bankruptcy, or creditor's sale; by purchase as part of a bulk transaction not in the transferor's ordinary course of business; or as the successor in interest to an estate or other organization | Same – presumably. |
| Value | Value is given for the instrument when the instrument is issued or transferred:<br><br>• For a promise of performance, to the extent the promise has been performed;<br>• As payment of, or as security for, an existing claim against any person, whether or not the claim is due;<br>• In exchange for a negotiable instrument; or<br>• In exchange for the incurring of an irrevocable obligation to a third party by the person taking the instrument<br><br>Value is also given when the transferee acquires a security interest or other lien in the instrument, other than a lien obtained by judicial proceeding | Same – presumably. |

| | | |
|---|---|---|
| | The holder may pay less than the face value of an instrument – but will still be considered to have paid the full value if the full amount agreed to is paid | |
| Good Faith | Good faith is deined as honesty in fact and the observance of reasonable commercial standards of fair dealing<br><br>A person who takes an instrument without actual knowledge of a defect cannot attain holder in due course status if a reasonable person would have notice of the defect. | Same – presumably. |
| Without Notice | To be a holder in due course, a person must take an instrument without notice that is overdue or has been dishonored or that there is an uncured default of payment on an instrument in the same series. | Same – presumably. |
| 'Test for Notice | A person has notice of a fact when she has actual knowledge of it; has received a notice or notification of it; or based on all the facts and circumstances known to her at the time in question, has reason to know it exists.<br><br>For notice to be effective, it must be received at a time and in a manner that gives a reasonable opportunity to act. | Same – presumably. |
| Defense or Claim | A claim to an instrument is a claim of property or possessory rights in the instrument or its proceeds including a claim to rescind the negotiation and to recover the instrument or its proceeds. | Same – presumably. |
| Payable at a Definite Time | An instrument is payable at a definite time it becomes overdue: if the principal is payable in installments upon default under the instrument for nonpayment of an installment; if the principal is not payable in installments, the day after the due date; or if a due date for principal has been accelerated, on the day after the acceleration due date. | Same – presumably. |
| Unauthorized Signature | A person has notice of an unauthorized signature or alteration if the instrument bears such apparent evidence of forgery or alteration or is otherwise so irregular or incomplete as to call into question its authenticity. | Same – presumably. |
| Payable on a Demand | An instrument payable on demand becomes overdue at the earliest of (1) the day after the day demand for payment is made; (2) 90 days after the instrument's date, if it is a check; or (3) if the instrument is not a check, when it has been outstanding for an unreasonably long period after its date based on the nature of the instrument and usage of the trade. | |
| Umbrella Doctrine | Under the umbrella doctrine, a transferee of an instrument obtains any right of the transferor to enforce it including any right as a holder in due course. A transferee who engaged in fraud or illegality affecting the instrument cannot obtain the rights of a holder in due course from his transferor | |

| | | |
|---|---|---|
| Persons Not In Possession | Another type of non-holder who may enforce an instrument is a person who is not in possession of an instrument but who is enforcing a lost or stolen instrument. This person is entitled to enforce the instrument if: <br> • The person was in possession of the instrument and entitled to enforce it when loss of possession occurred; <br> • The loss of possession was not the result of a voluntary transfer by the person or a lawful seizure; and <br> • The person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its location cannot be determined, or it is in the wrongful possession of an unknown person or a person who cannot be found or is not amendable to service of process | |
| Signature Liability | A person is not liable on an instrument unless the person signed it or is represented by an agent who signed it in such a manner to bind the person. | |
| Principal Liability | When a representative or purported representative signs either her name or the represented person's name on an instrument, the represented person is bound to the extent she would be bound if the signature were on a simple contract. <br><br> If a representative signs the instrument but it not authorized to do so, the signature may nonetheless be effective if the representative person has ratified it. <br><br> More than that, if the represented person['s negligence substantially contributed to the unauthorized signature, the represented person may be estopped from raising the unauthorized signature as a defense against a holder in due course or a person who pays the instrument in good faith. | |
| Representative Liability | If a representative signs her name to an instrument and it is an authorized signature of the represented person: <br><br> If the form of the signature unambiguously shows it is made on behalf of the represented person and the represented person is identified in the instrument, the representative is not liable; and <br><br> If the form of the signature does not unambiguously show that it is made in a representative capacity or clearly identify the represented person then the representative is liable to the holder in due course who took the instrument  without | |

| | | |
|---|---|---|
| | notice that the representative was not intended to be liable, and the representative is liable to any other person unless the representative process that the original parties did not intend her to be liable. | |
| Unauthorized Signatures | Where a person signs someone else's name without authority, the signature does not operate as the signature of the person whose name was signed, but does operate as the signature of the unauthorized signer as long as the person who pays the instrument or takes it for value acts in good faith. | |
| Liability to the Drawee of a Draft | The drawee on a draft has no liability to the payee or a subsequent holder. The instrument is simply an order to the drawee. The drawee's liability, if any, for wrongfully dishonoring the instrument runs only to the drawer and must be based on some contract between the drawer and the drawee.<br><br>If the drawee accepts the draft, it becomes liable as an acceptor. Acceptance is a promise by the drawee to pay the instrument when it becomes due and payment is demanded.<br><br>Acceptance is made on the instrument and may be made simply by the drawee's signature. The instrument becomes effective when it, with the acceptance, is delivered. The most familiar type of acceptance is the certification of a check. | |
| Liability to the Maker of a Note | The maker or issuer of a note must pay the amount promised when the instrument becomes due, unless she has a defense. The maker or issuer is obliged to pay the instrument according its terms at the time it was issued, or, if not issued, at the time it first came into possession of a holder.<br><br>The liability of the maker is generally called primary liability which means there are no conditions to her liability.<br><br>Suit may be installed even when no demand for payment has been made. However, where the note is payable on a particular date, the payee's cause of action does not accrue until the day after the due date. | |
| Liability to the Drawer of a Draft | Although the drawer occupies the same position as the maker of a note, the drawer does not make any express promise to do anything; she simply orders the drawee to pay<br><br>The drawer does not have primary liability. Liability is imposed on the drawer, though, when he fails to pay<br><br>The liability of a drawer is secondary liability – which means that the drawer becomes liable only if there has been | |

| | |
|---|---|
| | presentment to the drawee; dishonor by the drawee; and notice of dishonor to the drawer |
| Liability of the Drawee of a Draft/Acceptor | The draw has no initial liability to the payee or a subsequent holder. The instrument is simply an order to the drawee. The drawee's liability, if any, for wrongfully dishonoring the instrument runs only to the drawer and must be based on some contract between the drawer and the drawee. |
| | If the drawee accepts the draft, it becomes liable as an acceptor. Acceptance is a promise by the drawee to pay the instrument when it becomes due and payment is demanded |
| | Acceptance is made on the instrument and may be made simply by the drawee's signature. The instrument becomes effective when it, with the acceptance, is delivered. The most familiar type of acceptance is the certification of a check. |
| Transferors – Warranties | The transferor of a negotiable instrument who receives consideration warrants to her immediate transferee that: <br><br> • The transferor is entitled to enforce the instrument <br> • All signatures are authentic and authorized <br> • The instrument has not been altered <br> • The instrument is not subject to a defense or claim in recoupment of any party against the transferor and <br> • The transferor has no knowledge of any insolvency proceeding commenced with respect to the maker, acceptor, or drawer of an unaccepted draft <br><br> If the transferor does not indorse the instrument, then the warranties run only to the immediate transferee. If the transferor does indorse, then the warranties run to all subsequent holders who take the instrument in good faith |
| Joint and Several Liability | Except as otherwise provided in the instrument, two or more persons who have the same liability on an instrument as makers, drawers, acceptors, indorses who indorse as joint payees, or anomalous indorses are jointly and severally liable in the capacity in which they sign. |
| Endorsers | If the transferor of an instrument endorses, whether or not the indorsement is necessary for negotiation, the endorser becomes liable to pay the instrument if, upon demand, the maker or drawer does not pay and the endorser is given notice of the refusal to pay <br><br> The endorser is secondarily liable and will be discharged from her obligation unless there is presentment, dishonor, and notice of dishonor. |

130

| | | |
|---|---|---|
| | An endorser may disclaim liability on her endorsement by giving a qualified endorsement. This is normally done by endorsing the instrument without recourse. The endorser, however, may remain liable on transfer warranties. | |
| Accommodation Parties | An accommodation party is one who signs commercial paper that is issued for value simply to lend her credit to some other party to the instrument, and who does not directly receive any of the value given.<br><br>An accommodation party is liable on the instrument in the capacity in which she signs even though the one taking the instrument knows that she is an accommodation party. However, an accommodation endorser has no liability on the warranties of a transferor for two reasons: the accommodation endorser does not transferor the instrument and the accommodation endorser does not usually receive consideration.<br><br>An endorsement which shows that it is not in the chain of title, serves as notice to all subsequent takers that the endorsement is for accommodation. | |
| Presentment and Dishonor – Conditions Precedent | Conditions precedent to a party's liability on the instrument may include presentment and, for certain parties with secondary liability, dishonor of the instrument and notice of dishonor. | |
| Presentment | Presentment for payment is a particular type of demand on the party who ought to pay the instrument – the maker of a note or the drawee of a draft. Unless the demand for payment is made on time, it does not constitute a presentment.<br><br>Presentment must be made on or after the date stated in the instrument, if the date is stated; or within a reasonable time after the person to be charged becomes liable on the instrument. | |
| Excuse of Presentment | Presentment for payment or acceptance is excused if<br><br>• The person entitled to present the instrument cannot with reasonable diligence make presentment;<br>• The maker or acceptor has repudiated an obligation to pay the instrument or is dead or in insolvency proceedings<br>• By the terms of the instrument, presentment is not required to enforce the obligation of endorsers or the drawer; | |

| | | |
|---|---|---|
| | • The drawer or endorser whose obligation is being enforced has waived presentment or otherwise has no reason to expect, or right to require, that the instrument be paid or accepted; or<br>• The drawer instructed the drawee not to pay or accept the draft, or the drawee was not obligated to the drawer to pay the draft. | |
| Presentment Warranties | If an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, the person who presented and obtained payment, as well as any previous transferor of the draft, warrants to the drawee that:<br><br>• The warrantor is, or was at the time of transfer, a person entitled to enforce the draft (or authorized to on behalf of one who was entitled to enforce the draft);<br>• The draft has not been altered; and<br>• She has no knowledge that the signature of the drawer of the draft is unauthorized | |
| Dishonor and Notice of Dishonor | Dishonor occurs when a proper presentment for payment is made and payment is refused. It also occurs when a required or optional presentment for acceptance is made and acceptance is refused<br><br>A dishonor does not occur when payment is refused because the instrument lacks a necessary endorsement | |
| Checks | A check that is duly presented for payment to the payor bank other than for immediate payment over the counter is dishonored if the payor bank: makes timely return of the check; sends timely notice of dishonor or nonpayment; or becomes accountable for the amount of the check<br><br>The check must be returned before the bank has made final payment and before the midnight deadline | |
| Demand Instruments Other than Checks | A note payable on demand is dishonored if presentment is duly made to the maker and the note is not paid on the day of presentment.<br><br>A draft payable on demand is dishonored if presentment is duly made to the drawee and the draft is not paid on the day of presentment. | |
| Notice of Dishonor | Notice of dishonor may be given by any commercially reasonable means, such as a phone call, letter, or electronic communication | |

| | Notice of dishonor must be given by a collecting bank before the midnight deadline and by any person within 30 days on which the person receives notice of dishonor<br><br>Delay in giving notice here is excused if the delay was caused by circumstances beyond the control of the person giving the notice; and the person giving the notice exercised reasonable diligence after the cause of the delay ended. | |
|---|---|---|
| Instruments Payable at a Definite Time | • A note that is not payable on demand and is payable at or through a bank is dishonored if presentment is duly made and the note is not paid on the day it becomes payable or the day of presentment, whichever is later<br>• A note that is not payable on demand and is not payable at or through a bank is dishonored if it is not paid on the day it becomes payable.<br>• A draft payable on a date stated in the draft is dishonored if presentment for payment is duly made to the drawee and payment is not made on the day the draft becomes payable or the day of presentment, whichever is later. | |
| Adverse Claims | • A person taking an instrument is subject to claims of property or possessory rights in the instrument or its proceeds, including a claim to rescind the negotiation and to recover the instrument or its proceeds<br>• A holder in due course takes the instrument free from all claims to it by others | |
| Real Defenses | • The defenses that an obligor on an instrument may raise depend on the status of the plaintiff.<br>• The minority age of the defendant is always a real defense and is available even as against a holder in due course. The extent to which the defenses is available is the same as under contract law. The effect is to render the instrument voidable, but not void<br>• Duress, lack of legal capacity, and illegality of the transaction are real defenses only when they can be said to render the contract a nullity (void). If the effect is merely to render the obligation voidable at the election of the obligor, the defense is cut off against a holder in due course and is only a personal defense.<br>• Fraud in the factum is fraud that induced the party to sign the instrument with neither knowledge of nor reasonable opportunity to learn of the instrument's character or its essential terms. | |

|  | | |
|---|---|---|
|  | • Insolvency proceedings are any assignment for the benefit of creditors or other proceedings intended to liquidate or rehabilitate the estate of the person involved. A discharge in an insolvency proceeding is a real defense available against a holder in due course<br>• A discharge of a party's obligation is not a defense to a holder in due course unless the holder has notice of the discharge when she takes the instrument. |  |
| Discharge | • Discharge is a personal defense. A party's obligation on a negotiable instrument may be discharged in a number of ways. As noted above, discharge is only effective against a holder in due course if the holder has notice of the discharge.<br>• A discharge may be effected by an act or engagement that would effect a discharge of an obligation to pay money under a simple contract; payment by or on behalf of a party obliged to pay the instrument to a person entitled to enforce the instrument; by tender of an instrument in satisfaction of a claim; by tender of payment; by cancellation or renunciation; by impairment, extension, or modification, as applied to an accommodation party; by reacquisition; by delay in presentment; by acceptance varying the terms of the draft; by failure to give notice of dishonor; by acceptance of a draft by a bank; or by alteration. |  |
| Alterations | • An alteration is an unauthorized change in an instrument that purports to modify a party's obligation or an unauthorized addition in an incomplete instrument relating to a party's obligation<br>• When the alteration is fraudulent, a party whose obligation is affected by the alteration is discharged, except as to holders in due course, unless the party raising the defense is estopped from raising it. Even where the alteration is fraudulent, a holder in due course may enforce it to its original tenor<br>• When the alteration is not fraudulent, no person is discharged and the instrument may be enforced as to its original tenor even by a non-holder in due course<br>• Where the alteration consists of an unauthorized competition, a holder in due course may enforce it as completed<br>• A person whose negligence substantially contributed to an alteration is precluded from raising the alteration as a defense against a person who, in good |  |

134

| | | |
|---|---|---|
| | faith, paid the instrument or took it for value or for collection. | |
| Forgery | • Forgery is available as a defense even as against a person who in good faith pays the instrument or takes it for value; hence, it is of the nature of a real defense<br>• However, where a forgery exists, or where an agent signs without an authority, the forger or agent becomes liable, just as though she had signed her own name, to a holder in due course<br>• If the party's negligence substantially contributed to the unauthorized signature, she is estopped from raising it as against a holder in due course. | |
| Defenses of Accommodation Parties | • In an action to enforce the obligation of an accommodation party to pay an instrument, the accommodation party may assert against the person entitled to enforce the instrument any defense or claim in recoupment that the accommodated party could assert against such person, except the defenses of discharge in insolvency, infancy, and lack of legal capacity<br>• If the due date of an instrument is extended, the instrument is modified, or the value of collateral is impaired by a person entitled to enforce the instrument and, as a result, an accommodation party suffers a loss with respect to its right of recourse against an accommodated party, the accommodation party's obligation is discharged to the extent of the loss.<br>• An accommodation party is not discharged if the person entitled to enforce the instrument did not know of or have notice of the accommodation; the accommodation party consents to the event or conduct that is the basis of the discharge; or the accommodation party has waived any defenses that could be the basis of discharge | |
| Corporate Taxation | • Corporations (except for S corporations) are taxed as an entity separate and apart from their shareholders<br>• With the exception of returns on capital investment, shareholders also pay tax on any distributions the corporation makes to them. Contrast this situation that the state of affairs for partnerships where the distributions are passed through to the owners and taxed only at the owner level. | |
| C Corporations | • For federal income tax purposes, the default presumption is that a corporation elects its status as | |

|  | a C corporation (and is taxed as such) unless it indicates otherwise in its incorporation papers |  |
| --- | --- | --- |
| S Corporations | • An S corporation is taxed as a partnership or conduit entity. More specifically, all corporate income is deemed to be earned by the shareholders who, based on the number of shares they own, pay taxes on a proportional amount of the corporation's income.<br>• To successfully elect S corporation status, the corporation must be closely held; have no more than 100 individual shareholders who are not non-resident aliens; and not have issued more than one class of stock |  |
| Corporate Powers | • Unless the articles of incorporation provide otherwise, all corporations may sue and be sued, and purchase, own, lease, mortgage, and sell real or personal property or any interest therein |  |
| Articles of Incorporation | • A corporation is ordinarily created by delivering a properly completed set of articles of incorporation to the State Secretary along with the required filing fee<br>• The articles of incorporation must include the corporation's name; its street and mailing address; the number of shares the corporation is authorized to issue, or authorized shares; any preemptive rights granted to shareholders; the street address of the corporation's initial registered office and the name of its initial registered agent; and the name and address of each incorporator |  |
| Organizational Meeting | • Following incorporation, the initial directors must hold an organizational meeting to complete organization by appointing officers and adopting bylaws |  |
| Bylaws | • Bylaws must be consistent with the articles of incorporation and federal law<br>• Unless the articles of incorporation provide to the contrary, the board of directors has the right to alter, amend, or repeal the bylaws without shareholder approval, although any alteration is subject to repeal or change by shareholder action<br>• Bylaws may include any provisions for the regulation and management of the affairs of the incorporation that are not inconsistent with the articles of incorporation |  |
| Ultra Vires Acts | • The board of directors is not permitted to undertake any ultra vires act, or acts that are beyond the corporation's authority or beyond limitations as set forth in the articles of incorporation or bylaws |  |

| | |
|---|---|
| Piercing the Corporate Veil | • Despite adequate formation of a corporation, courts will disregard the corporate entity and hold the individual shareholders personally liable for corporate obligations when necessary to prevent fraud or injustice<br>• To pierce the corporate veil, it must be proven that the shareholder controlled the corporation to such an extent that the corporation's independent existence was in fact non-existence and the shareholder was in fact the alter ego of the corporation; the corporate form must have been used frequently or for an improper purpose; and the fraudulent or improper use of the corporate form caused injury to the claimant |
| Debt Securities | • Corporate debt security holders typically do not have any voting rights in the corporation<br>• Upon liquidation of the corporation, debt security holders will have priority of repayment over holders of equity securities. Secured debt holders have first priority |
| Equity Securities | • Shareholders, of course, are paid only after at other creditors have been paid<br>• Shareholders have voting rights to elect directors and to approve major corporate transactions<br>• A corporation's articles of incorporation must set forth the classes of equity securities the corporation is authorized to issue and set forth the number of shares, as well as the rights, preferences, privileges, and limitations of each class of securities authorized for issuance. |
| Imperfect Formation | • Persons acting on behalf of the corporation under the mistaken assumption or belief that the company is properly incorporated have no personal liability. Personal liability occurs only if there is actual knowledge that there is no incorporation<br>• Where a would-be corporation is neither de jure nor de facto, and where there is no corporation by estoppel, there is personal liability only against those owners who actively participated in the management of the enterprise under agency or partnership theories of liability and had actual knowledge that there was no incorporation. |
| De Jure Corporations | • A jure corporation exists where there has been complete compliance with the statutory requirements for formation |

| | | |
|---|---|---|
| | • A de jure corporation may also exist where there has been substantial, but not complete, compliance with the statutory requirements for formation<br>• In most cases, articles of incorporation must have been filed for the existence of a de jure corporation | |
| De Facto Corporations | • A de facto corporation exists where there has been a good faith attempt to comply with the statutory requirements for formation and there has been some actual use of the purported corporate existence<br>• Although a de facto corporation may protect shareholders from personal liability for corporate obligations, the state may still challenge its existence by means of a quo warranto proceeding in which the ability of the entity to engage in business as a corporation is determined. | |
| Contracts Made on Behalf of the Corporation Prior to Incorporation | • A corporation is not liable for contracts made on its behalf by promoters prior to incorporation unless the corporation expressly or impliedly ratifies the contract after formation<br>• Express ratification occurs when the contract is explicitly approved or adopted by the board of directors<br>• Implied ratification occurs where the corporation accepts or acknowledges the benefits of the contract in some manner.<br>• A corporation may be liable under quasi contract or unjust enrichment principles where it derives a benefit from a contract that it ultimately rejects or refuses to ratify<br>• A promoter's personal responsibility under a contract that is not later ratified depends on the intentions of the promoter and the other party to the contract. Absent a contrary intent, the promoter is typically held personally liable for pre-incorporation contracts she enters into on behalf of a corporation | |
| Promoter's Profits on Sales to the Corporation | • A promoter owes a fiduciary duty of loyalty, good faith, fair dealing, and full disclosure to the corporation she has caused to be formed. Consequently, she may not personally profit from a sale without fully and fairly disclosing to the initial, independent board of directors, or, if, an independent board does not exist, to all the shareholders, any profit she has made on the sale. | **Commented [OH11]:** A promoter is a person who, prior to the corporation's formation, prepares the corporation for commencing business and supervises compliance with the requisites necessary for it to come into existence<br><br>Unlike incorporators, promoters bear significant responsibility, particularly to creditors, for transactions entered into on behalf of the corporation prior to formation<br><br>Prior to formation, promoters are, in effect, partners. Thus, they owe a fiduciary obligation of full disclosure to the corporation and may not engage in self-dealing to the detriment of the corporation. |
| Stock Subscription Agreements | • Stock subscription agreements are contracts that contain a promise to purchase a specific number of | |

| | |
|---|---|
| | shares at a set amount after the corporation is formed.<br>• If a subscriber defaults under a subscription agreement, the corporation may collect the amount owed as it would any other debt, or, unless the subscription agreement provides otherwise, rescind the agreement and sell the shares if the debt remains unpaid more than 20 days after the corporation sends written demand for payment to the subscriber. |
| Election of Directors | • The original board of directors is usually chosen by the incorporators at the initial organizational meeting, with the number of directors being prescribed by the articles of incorporation or bylaws<br>• Thereafter, directors are ordinarily elected by the shareholders at their annual meeting<br>• If an interim vacancy occurs, the position is usually filled by a vote of a majority of the board of directors |
| Tenure of Directors | • Directors usually hold their positions for one year and are elected at annual meetings of the shareholders<br>• A corporation's articles of incorporation or bylaws may provide for staggered terms for directors. Under this system, the board is classified into different groups of directors, with each group elected for a multiyear term and only one group up for re-election in any given year. |
| Removal of Directors | • The shareholders may remove one or more directors, with or without cause unless the articles of incorporation require removal for cause only |
| Management Vested in Board of Directors | • Management of a corporation's affairs is vested exclusively in its board of directors, with a few exceptions which ordinarily require shareholder approval including: fundamental changes such as the sale of all or substantially all of the corporate assets; mergers' liquidations; and changes in the articles of incorporation or bylaws of the corporation |
| Rule 10b-5 | • Most insider trading is litigated under Rule 10b-5 of the 1934 Exchange Act, which prohibits insiders from use of any fraudulent or manipulative conduct in connection with the sale or purchase of securities by any means or instrumentality of interstate commerce<br>• An insider is anyone who learns of material, non-public information as a consequence of her corporate position or had a fiduciary relationship to the corporation or the plaintiff |

**Commented [OH12]:** In FL, a subscription for shares must be in writing and signed by the subscriber to be enforceable

A subscription for shares entered into before incorporation is irrevocable for six months, unless the subscription agreement provides a longer or shorter period or all the subscribers agree to revocation.

**Commented [OH13]:** FL protects minority shareholders by prohibiting removal of a director elected under cumulative voting if the number of cumulative votes sufficient to elect the director is cast against her removal.

**Commented [OH14]:** In FL, a closely held corporation is a firm with 100 or fewer shareholders at the time of the shareholder agreement. Close corporations may eliminate or restrict the discretion or powers of the board of directors.

**Commented [OH15]:** For the UBE merger stuff, look at the treatise you read over Winter break. ...

| | | |
|---|---|---|
| | • Tippers, or those who capitalize on a corporate tip, may be liable if their purpose in transmitting the information is to realize, directly, or indirectly, some type of personal benefit or gain.<br>• A tippee is liable only if the tipper is liable for making the disclosure and the tippee is, or should have been, aware that the information should not have been disclosed | Commented [OH16]: Kinda similar to the 2012 UK act in the other PE treatise… |
| Sale of Majority or Controlling Interest | • A shareholder who obtains a premium for selling a majority or controlling portion of a corporation's stock does not have to account to minority shareholders for the premium unless the seller knows or has reason to believe, that the transfer will result in prejudice to the minority shareholders | |
| Duties of Shareholders in Close Corporations | • In a close corporation, all shareholders owe each other an even stricter duty that that which is owed by controlling shareholders in a publicly held corporation – this duty of utmost faith and loyalty has been held to mean that there must be equal treatment of all shareholders | |
| Fiduciary Duties | • Majority or controlling shareholders of a corporation have a fiduciary duty to refrain from exercising their position in a manner that takes undue advantage of the minority shareholders | |
| Derivative Actions – Settlement or Dismissal | • Settlement or dismissal of a derivative shareholder action must be approved by the court<br>• Notice of the proposed dismissal or settlement must be given to affected shareholders<br>• Dismissal or settlement of a derivative action is ordinarily res judicata as to the claims asserted in that suit. Thus, other shareholders of the corporation are barred from commencing similar litigation | |
| Requirements for Filing a Derivative Action | • The plaintiff must have been a shareholder when the harm to the corporation allegedly occurred<br>• A plaintiff who was not a shareholder at the time of the alleged wrong may commence a derivative action if she or he acquired the shares through operation of law; the action is premised on SEC Rule 16(b); or a substantial injustice would occur unless the action were permitted | |
| Shareholder Inspections: Improper Purposes | • Shareholders may not use inspections to furnish information to a business competitor or promote their personal, social, or political concerns. | |
| Shareholder Preemptive Rights | • Under the Florida Business Corporation Act, a shareholder has no preemptive rights unless the articles of incorporation or bylaws so provide | Under the F Commented [OH17]: Find UBE Rule<br>shareholder has no preemptive rights unless the<br>articles of incorporation or bylaws so provide |

| Voting Agreements | <ul><li>Under a pooling agreement, 2 or more shareholders agree to vote their shares as all of them decide.</li><li>Pooling agreements are ordinarily used by minority shareholders to accumulate the number of votes necessary to veto corporate actions</li><li>In pooling agreements, the participants retain legal title to their shares even though they have promised to vote in a certain manner</li><li>Under a voting trust, shareholders assign their legal interest in the shares to a trustee, for which the shareholders receive a trust certificate as evidence of the interest assigned.</li><li>In the context of a pooling agreement, if a proxy has not been issued to an agent for the purpose of voting the group's shares, the arrangement can be enforced through a specific performance decree.</li></ul> | |
|---|---|---|
| Shareholder Inspection of Corporate Books and Records | <ul><li>Shareholders are entitled to inspect and copy the corporation's books and records during normal business hours provided that: the shareholder's demand is made in good faith and for a proper purpose; the shareholder describes with reasonable particularity the purpose and the records to be inspected; and the records are directly connected with the shareholder's purpose.</li></ul> | |
| Shareholder Inspection: Proper Purpose | <ul><li>Shareholder inspections may be conducted, for among other reasons, to investigate possible mismanagement where evidence justifies that concern; determine the reason for non-payment of dividends; obtain the necessary data to determine the proper price per share where the shareholder is considering selling her stock; and obtain stockholder names and addresses to solicit proxies where the shareholder believes in good faith that the policies of the present board are ineffective</li></ul> | |
| Affiliated Transactions | <ul><li>Affiliated transactions are transactions between the corporation and an interested shareholder. Affiliated transactions may be approved by a vote of the majority of disinterested shareholders or by a vote of the holders of 2/3rds of the corporation's voting shares. Affiliated voting requirements do not apply if the corporation has not had more than 300 shareholders of record at any time during the preceding 3 years; the interested shareholder has been the beneficial owner of at least 80% of the corporation's outstanding voting shares for at least the previous 5 years; the interested shareholder is the beneficial owner of at least 90% of the</li></ul> | **Commented [OH18]:** An interested shareholder here is any shareholder who owns more than 10% of the outstanding voting shares of the corporation.<br><br>**Commented [OH19]:** The interested shareholder's shares are not counted in determining the number of voting shares required for approval of an affiliate transaction. |

| | | |
|---|---|---|
| | corporation's of the outstanding voting shares of the corporation; the corporation is a registered company' or the consideration paid to each shareholder is the affiliated transaction meets certain conditions regarding share price. | |
| Voting by Proxy | • | **Commented [OH20]:** In FL, proxies must be in writing; a shareholder who has granted a proxy may revoke the grant by notifying the person given the proxy; giving the proxy to another person; or personally voting at the shareholder meeting.<br><br>See Fla. Stat. 607.0722(5). |
| Direct/Derivative Actions | • In a direct action, the shareholder may sue the corporate fiduciaries either as individuals or as part of a class action, with the recovery going to the suing shareholders<br>• In a derivative action, the shareholder sues on behalf of the corporation. A derivative action is appropriate where the harm complained of was done primarily to the corporation rather than the individual shareholder. If the action is successful, the recovery must be paid directly to the corporation | |
| Federal Regulation of Tender Offers | • A party that directly or indirectly acquires more than 5% ownership of a corporation must disclose within 10 days of passing the 5% threshold, certain information including the party's identity and the number of shares held; the source and amount of funds for making share purchases; any arrangements the party has with others concerning shares of the target; and the party's purposes in acquiring the shares and her intentions regarding the target<br>• On the day it commences the tender offer, the bidder must disclose the information required by 5% owners and the purpose of the tender offer; the bidder's plans for the target; past negotiations between the bidder and the target; the bidder's material financial statements; regulatory approvals that may be necessary; and any other material information<br>• The SEC requires tender offers to be kept open for at least 20 business days. If the offeror increases the price, it must keep the offer open for at least 10 days after the announcement of the increase<br>• Anyone who has tendered her shares before the end of the offer period may withdraw her tendered shares within the first 15 days of the tender offer or 10 days following the commencement of a competing bid<br>• During the offer period, shares can only be bought through the offer. The buyer must make the same price offer to everyone and take the shares pro rate if there are to many sellers | **Commented [OH21]:** If the defendants are successful, further litigation based on the underlying action is typically barred under res judicata principles and the plaintiff must pay for the defendant's cost of litigation if the court finds that the proceeding was commenced without reasonable cause.<br><br>**Commented [OH22]:** The recovery may not be sent to the corporation where transmission would benefit shareholders who ought not to be permitted to share in the recovery. |

| | |
|---|---|
| | • Section 14 (e) of the 1934 Exchange Act prohibits any false or misleading statements or omissions as well as any fraudulent, deceptive, or manipulative acts in connection with any tender offers |
| Poison Pill Variations – Rights Plans | • Rights plans allow the target's common shareholders to receive, as a dividend on their shares, rights or warrants that entitle the shareholders, but not the bidder, to purchase the target's stock for a specified period at a low price |
| Poison Pills - Greenmail | • Greenmail refers to the repurchase by the target corporation of a potential bidder's stock – usually at a substantial premium – with the understanding that the bidder will stop the takeover attempt.<br>• For the most part, courts have refused to find that the board's decision to pay greenmail violates the board's fiduciary duties to its shareholders |
| Appraisal Rights of Dissenting Shareholders | • Shareholders who object to fundamental corporate changes are entitled to an appraisal and payment of fair value for their shares<br>• For a corporation with 10 or fewer shareholders, the calculation of fair market value does not consider lack of marketability or minority status<br>• To assert appraisal rights, the shareholder must file a written objection to the sale before the shareholders' meeting to consider the corporate action; vote against the sale; give prompt notice of their desire to assert the appraisal remedy; and surrender their shares to the corporation. |
| Voluntary Dissolution | • A corporation's board of director may propose dissolution for submission to the corporation's shareholders except where a corporation has not issued shares and has not commenced business<br>• The proposal to dissolve must be approved by a majority of the votes entitled to be cast, unless otherwise provided in the articles of incorporation<br>• After the dissolution is authorized, the corporation may dissolve at any time by filing articles of dissolution with the Secretary of State |
| B/Special Purpose Corporations | • B corporations are organized for the purpose of lawfully pursuing the economic interests of their shareholders and creating a general public benefit<br>• Special purpose corporations are similar to B corporations with the exception that they need not provide a benefit that is general in scope or nature<br>• Directors of these firms have a fiduciary duty to consider the best interests of the corporation, the shareholders, and their ability to achieve their |

**Commented [OH23]:** Kinda similar to the 2012 UK Financial Services Act, huh?

| | |
|---|---|
| | benefit objectives and must usually prepare an annual benefit report that highlights how the corporation attempted to benefit the public and the obstacles it faced.<br>• Directors and officers of these firms are also protected against claims of corporate waste when pursuing non-profitmaking activities that would not otherwise exist in a traditional corporation. |
| Partnership by Estoppel | • If a person represents herself as a partner in a partnership – whether actual or fictional – to a third party who enters into a transaction with the actual or purported partnership in reliance on the representation, that person is liable to the third party<br>• The following circumstances operate as notice to, or knowledge of, the partnership: notice to any partner of any matter relating to partnership affairs; the partner acting in a particular matter acquires knowledge relevant to the matter during her tenure as a partner or some other time, and the knowledge is still present in her mind at the time she acts for the partnership; and any partner who is not acting for the partnership in the particular matter has relevant knowledge that she could or should have communicated to the acting partner.<br>• If the person who had the relevant notice or knowledge participates in or consents to a fraud on the partnership, then such notice or knowledge is not imputed to the partnership |
| Tort Liability | • The partnership and its members are jointly liable and severally liable for any loss or injury to a third party, or for any penalty incurred, as a result of any wrongful act or omission of any partner |
| Contractual Liability | • All partners are jointly and severally liable for the contractual obligations of the partnership |
| Assignment of Partnership Interest | • A partner may assign her economic interest in the partnership or the right to income from the partnership, but may not transfer her status as a partner without the unanimous agreement of the other partners. A transfer of the partner's economic interest or right to income does not, in and of itself, cause the dissolution of the partnership<br>• The partnership does not necessarily dissolve when a partner transfers the income attributable to her partnership interest to someone else. Unless the other partners agree, the transferee will not obtain management or control rights or the right to an |

| | | |
|---|---|---|
| | accounting, but will receive only the profits attributable to the transferring partner's share. | |
| Dissociation | <ul><li>A partner is dissociated from a partnership once: the partnership receives notice of the partner's express intent to withdraw; the partner is expelled through the partnership agreement; the partner transfers all or substantially all of her transferrable interest; it becomes unlawful to carry on business with the partner; the partner dies; the partner enters bankruptcy; or the partner is dissociated via judicial determination.</li><li>Partners retain the right to dissociate at any time by expressly stating their intention to do so</li><li>In the event of a willful dissociation, a partner's action is wrongful only if it is in breach of an express provision of the partnership agreement or it occurs before the expiration of the term or the completion of the undertaking</li><li>Upon a partner's dissociation, the partner's right to participate in the management and conduct of the partnership business terminates; duty of loyalty for future events terminates; and duty of loyalty and duty of care continue only with regard to matters arising before the partner's dissociation.</li><li>If the partner is dissociated from a partnership without a dissolution of the partnership occurring, the partnership will cause the dissociated partner's interest in the partnership to be purchased for a buyout price</li><li>Damages for wrongful dissociation and all other amounts owed by the dissociating partner must be offset against the buyout price</li><li>For a period of one year after a partner dissociates without resulting in a dissolution and winding up of the partnership business, the partnership is bound by an act of the dissociated partner that would have bound the partnership before dissociation only if, at the time of entering into the transaction, the other party reasonably believed that the dissociated partner was then a partner and is deemed not to have knowledge or notice of the dissociation.</li></ul> | |
| | <ul><li></li></ul> | |
| | <ul><li></li></ul> | |
| | <ul><li></li></ul> | |
| | <ul><li></li></ul> | |
| | <ul><li></li></ul> | |
| | <ul><li></li></ul> | |

| | • | |
| | • | |
| | • | |

146